## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

AMERICAN TRUCKING
ASSOCIATIONS, INC.; CUMBERLAND
FARMS, INC.; M&M TRANSPORT
SERVICES, INC.; and NEW ENGLAND
MOTOR FREIGHT, INC.

        *Plaintiffs*,

    v.

PETER ALVITI, JR., in his official capacity
as Director of the Rhode Island Department
of Transportation,

        *Defendant*.

Civil Action No. 1:18-cv-00378-WES-PAS

CHIEF JUDGE WILLIAM E. SMITH

WES

## PLAINTIFFS' OPPOSITION TO GOVERNOR RAIMONDO'S,
## SPEAKER MATTIELLO'S, AND REPRESENTATIVE UCCI'S
## MOTIONS TO QUASH SUBPOENAS

Charles Rothfeld (pro hac vice)
Evan M. Tager (pro hac vice)
Reginald R. Goeke (pro hac vice)
Colleen Campbell (pro hac vice)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000

Gerald C. DeMaria
James Ruggieri
Higgins, Cavanagh & Cooney
10 Dorrance Street
Suite 400
Providence, RI 02903-3907
(401) 272-3500

*Counsel for Plaintiffs*

August 24, 2020

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

I.   The Legislative Privilege Against Disclosure Of Materials Relating To
     Legislative Intent Is Limited. ..................................................................... 3

     A.   There is limited need for application of the legislative privilege when the
          legislator does not face personal liability............................................ 4

     B.   Legislative privilege does not bar discovery from state officials regarding
          their intent when necessary to establish a federal constitutional claim. ............... 5

          1.   Legislative discovery may be permissible in all categories of cases. ........ 5

          2.   The legislative privilege is not absolute in dormant Commerce
               Clause cases. ..................................................................... 7

II.  Plaintiffs Are Entitled To Take Discovery To Establish State Officials'
     Discriminatory Intent. ................................................................ 9

     A.   The evidence sought is highly relevant to Plaintiffs' claims. ............................ 11

          1.   Evidence of discriminatory intent is relevant to a Commerce
               Clause claim. ..................................................................... 11

          2.   Evidence establishing modifications made to RhodeWorks is
               relevant to establishing legislative intent. ................................. 14

     B.   The documents and testimony of legislators and Executive Branch
          officials involved in enactment of RhodeWorks are the most probative
          evidence of legislative intent. ........................................................ 16

     C.   The federal constitutional issues in this litigation are of the utmost
          seriousness. ....................................................................... 17

     D.   The officials whose evidence would be sought played a direct, central, and
          essential role in the constitutional violations here. ............................ 18

     E.   Compelling disclosure of the evidence sought would not conflict with the
          purposes of the privilege. ........................................................ 19

III. Compliance with the document and deposition requests would not impose an
     undue burden on state officials. .................................................. 21

CONCLUSION................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACORN v. County of Nassau*,
2009 WL 2923435 (E.D.N.Y. Sept. 10, 2009) ...........................................................................6

*Apel v. Murphy*,
70 F.R.D. 651 (D.R.I. 1976) .................................................................................................14

*Baldus v. Brennan*,
2011 WL 6122542 (E.D. Wis. Dec. 8, 2011) .........................................................................20

*Benisek v. Lamone*,
241 F. Supp. 3d 566 (D. Md. 2017) ......................................................................................10

*Bethune-Hill v. Va. State Bd. of Elections*,
114 F. Supp. 3d 323 (E.D. Va. 2015) ............................................................................. *passim*

*Bogan v. City of Boston*,
489 F.3d 417 (1st Cir. 2007) ................................................................................................21

*Bogan v. Scott-Harris*,
523 U.S. 44 (1988) ................................................................................................................1

*Carver v. Foerster*,
102 F.3d 96 (3d Cir. 1996) ...................................................................................................20

*Citizens Union of City of New York v. Attorney Gen. of New York*,
269 F. Supp. 3d 124 (S.D.N.Y. 2017) ....................................................................................13

*Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*,
2011 WL 4837508 (N.D. Ill. Oct. 12, 2011) ...........................................................10, 12, 18

*E.E.O.C. v. Wash. Suburban Sanitary Comm'n*,
631 F.3d 174 (4th Cir. 2011) ...............................................................................................12

*Family Winemakers of Cal. v. Jenkins*,
2011 WL 2312534 (D. Mass. Jan. 8, 2011) .............................................................................7

*Favors v. Cuomo*,
285 F.R.D. 187 (E.D.N.Y. 2012) ....................................................................................17, 18

*Gilby v. Hughs*,
___ F. Supp. 3d ___, 2020 WL 3958479 (W.D. Tex. July 10, 2020) ...................................5, 8

**TABLE OF AUTHORITIES—continued**

Page(s)

*Government Suppliers Consolidating Services, Inc. v. Bayh*,
  133 F.R.D. 531 (S.D. Ind. 1990)............................................................................14

*H.P. Hood & Sons, Inc. v. DuMond*,
  336 U.S. 525 (1949)............................................................................................17

*Harris v. Arizona Indep. Redistricting Comm'n*,
  993 F. Supp. 2d 1042 (D. Ariz. 2014), *aff'd*, 136 S. Ct. 1301 (2016) ..............12, 17

*Healey v. Bendick*,
  628 F. Supp. 681 (D.R.I. 1986)......................................................8, 9, 20, 21

*Hobart v. City of Stafford*,
  784 F. Supp. 2d 732 (S.D. Tex. 2011) ...............................................................10

*Hubbard v. Bentley*,
  803 F.3d 1298 (11th Cir. 2015) ..........................................................................6

*Jackson Mun. Airport Auth. v. Bryant*,
  2017 WL 6520967 (S.D. Miss. Dec. 19, 2017) ....................................................5

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*,
  849 F.3d 615 (5th Cir. 2017) ..........................................................................5, 8

*Kay v. City of Rancho Palos Verdes*,
  2003 WL 25294710 (C.D. Cal. Oct. 10, 2003)....................................................7

*Marylanders for Fair Representation, Inc. v. Schaefer*,
  144 F.R.D. 292 (D. Md. 1992)............................................................................7

*McDonough v. City of Portland*,
  2015 WL 12683663 (D. Me. Dec. 31, 2015) ............................................9, 10, 19

*Michigan State A. Randolph Inst. v. Johnson*,
  2018 WL 1465767 (E.D. Mich. Jan. 4, 2018)........................................5, 6, 13

*Miles-un-Ltd. v. Town of New Shoreham*,
  917 F. Supp. 91 (D.N.H. 1996)......................................................8, 9, 10, 14

*N. Carolina State Conference of the NAACP v. McCrory*,
  2014 WL 12526799 (M.D.N.C. Nov. 20, 2014), *objections overruled*, 2015
  WL 12683665 (M.D.N.C. Feb. 4, 2015).............................................5, 6, 13

*N.L.R.B. v. Interbake Foods, LLC*,
  637 F.3d 492 (4th Cir. 2011) ..............................................................................10

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Nashville Student Organizing Comm. v. Hargett*,
    123 F. Supp. 3d 967 (M.D. Tenn. 2015)....................................................5, 6, 10

*Owen v. City of Independence*,
    445 U.S. 622 (1980)....................................................................................4, 19

*Page v. Va. State Bd. of Elections*,
    15 F. Supp. 3d 657 (E.D. Va. 2014) .......................................................2, 3, 10

*Perez v. Perry*,
    2014 WL 106927 (W.D. Tex. 2014).........................................................3, 5, 10

*Plain Local Sch. Dist. Bd. of Educ. v. DeWine*,
    2020 WL 4679015 (S.D. Ohio June 2, 2020) ...............................................6

*Puente Arizona v. Arpaio*,
    314 F.R.D. 664 (D. Ariz. 2016) ...................................................................6

*RLI Ins. v. Conseco, Inc.*,
    477 F. Supp. 2d 741 (E.D. Va. 2007) ........................................................10

*Rodriguez v. Pataki*,
    280 F. Supp. 2d 89 (S.D.N.Y. 2003)....................................................5, 6, 8

*S.C. Educ. Ass'n v. Campbell*,
    883 F.2d 1251 (4th Cir.1989) ....................................................................7

*South Carolina Educ. Ass'n v. Campbell*,
    992 F.3d 1251 (4th Cir. 1989) ...................................................................13

*South Dakota Farm Bureau v. Hazeltine*,
    340 F.3d 583 (8th Cir. 2003) .....................................................................11

*Sweeney v. Bond*,
    669 F.2d 542 (8th Cir. 1982) .....................................................................22

*Trailer Marine Transp. Corp. v. Rivera Vazquez*,
    977 F.2d 1 (1st Cir. 1992)...........................................................................18

*Trammel v. United States*,
    445 U.S. 40 (1980)......................................................................................3

*In re United States*,
    985 F.2d 510 (11th Cir. 1993) ...................................................................22

## TABLE OF AUTHORITIES—continued

**Page(s)**

*United States v. Gillock*,
    445 U.S. 360 (1980)......................................................................................4, 19, 20

*United States v. Irvin*,
    127 F.R.D. 169 (C.D. Cal. 1989) ..............................................................................20

*United States v. O'Brien*,
    391 U.S. 367 (1968)......................................................................................7, 13

*Veasey v. Perry*,
    2014 WL 1340077 (S.D. Tex. Apr. 3, 2014), *aff'd in part and rev'd in part*,
    796 F.3d 487 (5th Cir. 2015) ..............................................................................6, 17

*Wal-Mart Stores, Inc. v. Texas Alcohol Beverage Comm'n*,
    2016 WL 5922315 (W.D. Tex. Oct. 11, 2016) ..........................................................7

*Wal-Mart Stores, Inc. v. Texas Alcoholic Bev. Comm'n*,
    945 F.3d 206 (5th Cir. 2019) ..............................................................................11, 12

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ..............................................................................11

## OTHER AUTHORITIES

26A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 5675 (1969) ......................10

Rhode Island, Press Release, *Raimondo, Mattiello, Paiva Weed Announce 10-year
    RhodeWorks Plan to Invest in State's Highways and Other Transportation
    Infrastructure* (May 27, 2015), https://www.ri.gov/press/view/24912....................................18

Three non-party witnesses—Governor Gina M. Raimondo, Speaker Nicholas Mattiello, and Representative Stephen R. Ucci (referred to jointly here as "the State")—have filed motions to quash subpoenas seeking documents and deposition testimony bearing on the development, enactment, and impact of the RhodeWorks tolls.[1] The State argues that the materials sought are protected by the legislative and deliberative-process privileges. We do not dispute that materials of this sort potentially *could* be protected by those privileges.[2] But the privileges are not available to quash the subpoenas here. The State's arguments in support of applying the privileges misstate or disregard the controlling rules; ignore the relevance of the requested materials to the proper disposition of the issues in this case; and rest on boilerplate arguments that make almost no attempt to show that particular discovery requests are overbroad, burdensome, or otherwise unwarranted.

Notably, in the context of addressing the publicly reported statements of Rhode Island officials, this Court already has recognized that material relating to the intent of those officials in promulgating the RhodeWorks tolls is relevant to the disposition of this litigation. July 20, 2020 Order (EFC 72) at 7-8 ("July 20 Order"). The Court indicated that, if those officials are not available to testify about their intent, the Court would be inclined to admit the reported statements into evidence. *Id.* at 11-12 n.8. Yet the State has made no attempt to narrow the categories of materials requested by the subpoenas in a manner that could address the State's concerns while still making essential evidence available. Rather than seek to meet and confer

---

[1]    Because the motions are substantially duplicative of one another (down to the same typographical error in the spelling of Judge Selya's name, which appears in each), this brief focuses on the motion submitted by Governor Raimondo. The motions submitted by the other witnesses are addressed separately only when they differ from Governor Raimondo's motion.

[2]    Legislative privilege may apply to the acts of Executive Branch officials, like the Governor, that relate to the enactment of legislation. *See*, *e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1988).

with Plaintiffs to limit the scope of any of the subpoena requests prior to filing its motions to quash, the State has taken the position that *no* discovery is available from these state officials. With one minor exception that is the result of its own misreading of the subpoenas,[3] the State has not identified any particular request that it contends should be narrowed. Nor did the State seek to meet and confer with Plaintiffs after filing the motions to quash in an effort to limit the requests. Plaintiffs would be willing to discuss reasonable narrowing of requests that truly would be unduly burdensome in practice.[4] To date, however, the State has not identified any such category of documents.

As the Court has recognized, the claims of privilege here are governed by federal common law. July 20 Order at 12-13. Under that law, "[t]estimonial and evidentiary privileges" like the common-law legislative and deliberative-process privileges "exist against the backdrop of the general principle that all reasonable and reliable measures should be employed to ascertain the truth of a disputed matter." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 660 (E.D. Va. 2014) (three-judge district court). "Privileges are therefore strictly construed" and will be deemed to apply "only where the public good associated with the exclusion of relevant evidence overrides the

---

[3]     The State's complaint that the subpoenas improperly seek evidence concerning bills that were proposed and failed *after* the RhodeWorks legislation passed (Mot. at 33) is based on its own typographical error. The subpoenas do *not* refer to tolling bills filed in 2016 after enactment of the law; as the subpoenas properly indicated, the bills in which Plaintiffs are interested were introduced in 2015. Accordingly, no narrowing is required.

[4]     For example, if the State is willing to stipulate that the press reports are accurate and complete, drops its hearsay objections to those statements, and does not plan to offer testimony by the declarants to contradict the statements, Plaintiffs would be willing to withdraw the subpoena requests relating to the reported statements. The statement in the motions that "[t]here is no reason for Plaintiffs to burden the [State] with reproducing public statements they already have" (*e.g.*, Non-Party Governor Gina M. Raimondo's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (ECF 85) at 10 n.12) suggests that the State should be willing to stipulate to the accuracy and authenticity of the statements. And the State's unwillingness to produce the three officials for depositions suggests that it should be willing to withdraw its hearsay objection, given the Court's indication that the residual exception would be satisfied if the testimony of these witnesses is unavailable.

general principle in favor of admission." *Id.*; *accord, e.g.*, *Perez v. Perry*, 2014 WL 106927, at *1 (W.D. Tex. 2014) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)). Thus, "[t]estimonial exclusionary rules" may be applied "'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel*, 445 U.S. at 50 (citation omitted) (addressing spousal privilege). The State has not come close to overcoming this presumption that favors the production of probative evidence.

## I.    The Legislative Privilege Against Disclosure Of Materials Relating To Legislative Intent Is Limited.

The State's initial argument in support of the motions to quash is that the legislative privilege is absolute in all private civil suits, or perhaps in all suits except for those involving racial gerrymanders or federal criminal prosecutions, or, in any event, in all dormant Commerce Clause cases. Mot. at 13-18. These contentions are inconsistent with the great weight of authority and run counter to the policies that underlie the legislative privilege. In fact, as this Court recognized, "[s]hould state officials assert an evidentiary privilege, 'the court must balance the extent to which the production of the disputed evidence would have a chilling effect on the [state official] against those factors favoring disclosure.'" July 20 Order 14 (citation omitted; bracketed material added by the Court). Accordingly, "a judicially crafted evidentiary privilege based on federal common law" does not "trump the need for direct evidence that is highly relevant to the adjudication of public rights guaranteed by ... the [federal] Constitution, especially where no threat to legislative immunity itself is presented." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015) (three-judge district court). The State's argument for an absolute legislative privilege in ***any*** category of suit therefore is wrong.

### A.   There is limited need for application of the legislative privilege when the legislator does not face personal liability.

"Because 'legislators bear significant responsibility for many of our toughest decisions,'" the legislative privilege "'provides legislators with the breathing room necessary to make these choices in the public's interest' without fear of undue judicial interference or personal liability." *Bethune-Hill*, 114 F. Supp. 3d at 332-33 (citation omitted). But state legislative privilege—which, as noted above, is a product of federal common law when invoked in federal court—necessarily "yields" when a plaintiff "seeks evidence to vindicate important *public* rights [that are themselves] guaranteed by federal law." *Id.* at 336 (quoting *United States v. Gillock*, 445 U.S. 360, 370 (1980)).

The manner in which the state legislative privilege applies in federal litigation "depends upon the nature [not only] of the claim [but also of] the defendant." *Bethune-Hill*, 114 F. Supp. 3d at 335. The privilege is at its apex in the context of "civil action[s] brought by ... private plaintiff[s] to vindicate *private* rights" against individual lawmakers, in which "'the threat of *personal* monetary liability will introduce an unwarranted and unconscionable consideration into the decisionmaking process.'" *Id.* at 333-35 (quoting *Owen v. City of Independence*, 445 U.S. 622, 655 (1980), citing *Gillock*, 445 U.S. at 372) (first emphasis added). In such cases, "the legislative privilege prevents compelled testimony or documentary disclosure in support of such claims." *Id.* at 335.

Conversely, when the person asserting privilege is not himself or herself a defendant in the action, "[t]he inhibiting effect [of the threat of liability] is significantly reduced, if not eliminated." *Owen*, 445 U.S. at 656. "In other words, there is little to no threat to the 'public good' of legislative independence when a legislator is not threatened with individual liability." *Bethune-Hill*, 114 F. Supp. 3d at 335. Indeed, the state legislative privilege is at its nadir when, as in this case, individual officials are not themselves named as defendants and thus face no threat of personal liability, the

request for relief is injunctive only, and the privilege "stands as a barrier to the vindication of important federal interests and insulates against effective redress of public rights." *Id*. at 334.

> **B.      Legislative privilege does not bar discovery from state officials regarding their intent when necessary to establish a federal constitutional claim.**

> **1.      *Legislative discovery may be permissible in all categories of cases*.**

Against the background of these principles, the State is mistaken in contending that courts treat legislative privilege as absolute except in redistricting cases and in federal criminal cases brought against legislators. Mot. at 13-18. The decisions relied upon by the State for this proposition are outliers that are inconsistent with the great weight of authority. In fact, there is a "litany of recent federal decisions in which, in cases involving federal constitutional challenges premised on [discriminatory state intent], federal courts have found that the [state legislative] privilege did not (at least in part) shield state legislators from producing responsive records or testifying at deposition." *Nashville Student Organizing Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015) (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95–96 (S.D.N.Y. 2003).

Most courts recognize that, "[w]hile the common-law *legislative immunity* for state legislators is absolute, the ***legislative privilege*** for state lawmakers is, at best, one which is qualified." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez,* 2014 WL 106917, at *1 (emphasis added)).[5] And courts have made clear that this

---

[5]      *See also, e.g., Gilby v. Hughs*, ___ F. Supp. 3d ___, 2020 WL 3958479, at *2 (W.D. Tex. July 10, 2020) ("Although the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is qualified."); *Michigan State A. Randolph Inst. v. Johnson*, 2018 WL 1465767, at *4 (E.D. Mich. Jan. 4, 2018) ("[T]he precedent suggests that state legislators enjoy only a qualified legislative privilege against having to provide records or testimony concerning their legislative activity, which can be overcome in extraordinary circumstances, *i.e.*, where important federal interests are at stake."); *Jackson Mun. Airport Auth. v. Bryant*, 2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) ("because the privilege is qualified, it may be overcome, and production of the document compelled"); *N. Carolina State Conference of the NAACP v. McCrory*, 2014 WL 12526799, at *2 (M.D.N.C. Nov. 20, 2014) ("[L]egislative privilege is not absolute, but rather requires a flexible approach that considers the need for the information while still protecting

5

principle is not limited to the very restricted categories of gerrymandering and criminal cases identified by the State. Thus, for example, in *Michigan State A. Philip Randolph Institute v. Johnson*—a decision upon which the State relies elsewhere in its motion (*see* Mot. at 22-23)—the court noted that "a majority of sister courts" had concluded that state legislators enjoy only a qualified privilege "in cases involving constitutional challenges to legislation under the Equal Protection Clause or Voting Rights Act." 2018 WL 1465767, at \*4. And just few months ago, a federal district court flatly rejected the argument "that courts determine whether the privilege is absolute or qualified according to the type of claim at issue." *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 2020 WL 4679015, at \*3 n.6 (S.D. Ohio June 2, 2020). It observed that "courts have routinely found the privilege to be a qualified one—*regardless of the claim brought*—and have then determined on a case-by-case basis whether the qualified privilege should be overcome based, in part, on the issues under review." *Id.* (emphasis added). Courts routinely apply that rule in cases that involve neither racial gerrymanders nor federal criminal prosecutions.[6]

---

legislative sovereignty and minimizing any direct intrusion into the legislative process."), *objections overruled*, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015); *Rodriguez v. Pataki*, 280 F. Supp.2d 89, 95 (S.D.N.Y 2003) (explaining that a "key difference" between legislative immunity and legislative privilege is that the latter is "not absolute").

[6]    *See*, *e.g., Hubbard v. Bentley*, 803 F.3d 1298, 1311-12 (11th Cir. 2015) (observing that "a state lawmaker's legislative privilege must yield in some circumstances where necessary to vindicate important federal interests" and recognizing that "enforcing the First Amendment is … an important federal interest"); *Puente Arizona v. Arpaio*, 314 F.R.D. 664 (D. Ariz. 2016) (holding that the privilege is qualified in constitutional challenge to identity-theft statute); *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 969 (describing a "litany of recent federal decisions in which, in cases involving federal constitutional challenges premised on the right to vote, federal courts have found that the qualified privilege did not (at least in part) shield state legislators from producing responsive records or testifying at deposition"); *Veasey v. Perry*, 2014 WL 1340077, at \*1 (S.D. Tex. Apr. 3, 2014) (discussing "the qualified nature of the legislative privilege" and allowing discovery in suit alleging that voter-identification law had a discriminatory purpose), *aff'd in part and rev'd in part*, 796 F.3d 487 (5th Cir. 2015); *ACORN v. County of Nassau*, 2009 WL 2923435, at \*4 (E.D.N.Y. Sept. 10, 2009) (holding that legislative privilege was qualified in litigation involving exclusionary-zoning claim and that "the factors regarding legislative privilege would warrant production" of any documents that "reveal[ed] that racial considerations played any role in the legislative deliberations"

### 2.   *The legislative privilege is not absolute in dormant Commerce Clause cases.*

Falling back on a narrower argument, the State also maintains that courts hold that "the legislative privilege is absolute in dormant Commerce Clause cases" (Mot. at 18)—"even when a discriminatory purpose was claimed." Mot. at 17. But that contention is wholly without support, in either the case law or in legal principle.

As a general matter, legislative privilege does not "prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992). Under this principle, "judicial inquiry into legislative motive is appropriate where 'the very nature of the constitutional question requires an inquiry into legislative purpose.'" *Id*. (quoting *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir.1989), in turn quoting *United States v. O'Brien*, 391 U.S. 367, 383 n.30 (1968)). That is the situation here; as we elsewhere have explained, resolution of a dormant Commerce Clause claim often turns on legislative intent, as it does in this case. Pl. Aug. 17, 2020 Letter Br. (ECF 95) at 1-4; Pl. Supp. Reply Br. (ECF 70) at 7-13 (citing cases). It therefore is not surprising that courts repeatedly have permitted discovery into legislative motive in dormant Commerce Clause disputes.[7]

---

regarding re-zoning decisions); *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *14 (C.D. Cal. Oct. 10, 2003) (holding, in challenge to ordinance restricting operation of telecommunications antennae for commercial use, that "cases applying a qualified privilege represent the better, and controlling, legal rule").

[7]     *See, e.g.*, *Wal-Mart Stores, Inc. v. Texas Alcohol Beverage Comm'n*, 2016 WL 5922315, at *6 (W.D. Tex. Oct. 11, 2016) (allowing discovery regarding communications with legislators and noting that "the weight of authority supports the proposition that legislators' statements to lobbyists or constituents are relevant to determining legislative purpose"); *Family Winemakers of Cal. v. Jenkins*, 2011 WL 2312534, at *1 (D. Mass. Jan. 8, 2011) (explaining that plaintiffs who successfully challenged a winery licensing statute under the dormant Commerce Clause pursued "informal discovery with Commonwealth legislators and their staffs, regarding the alleged discriminatory intent, and with wineries, to establish the impact of the 30,000 gallon limit" and

In arguing to the contrary, the State points to two decisions— *Healey v. Bendick*, 628 F. Supp. 681 (D.R.I. 1986) (Selya, J.), and *Miles-un-Ltd. v. Town of New Shoreham*, 917 F. Supp. 91 (D.N.H. 1996). Mot. at 16-18. Neither supports the absolute privilege for which the State advocates.

In *Healey*, the court did not address the evidentiary privilege at all, holding instead that state legislators were absolutely immune from **liability** for money damages. *See* 628 F. Supp. at 697 ("National, state and regional legislators have absolute federal common law immunity from liability for damages occasioned by their legislative acts."). As discussed above, however, it is widely understood that, although state legislators enjoy absolute immunity from liability, the **evidentiary** legislative privilege is "at best, … qualified." *Jefferson Cmty. Health Care Ctrs.*, 849 F.3d at 624; *see also, e.g., Gilby*, 2020 WL 3958479, at *2; *Rodriguez*, 280 F. Supp. 2d at 95. Only the evidentiary privilege is at issue here, so *Healey* is wholly inapposite.

And in *Miles-un-Ltd.*, the court likewise described legislative **immunity** as "absolute," but recognized that the availability of the **testimonial** privilege depended on "whether infringement of the immunity rises to a level of public need, *i.e.* whether disclosure is required in order to fully develop the relevant facts." 917 F. Supp. at 100. Furthermore, although the plaintiffs in *Miles-un-Ltd* brought a Commerce Clause claim (among others), they did not seek to depose town lawmakers to show that the challenged ordinance (a moped regulation) was motivated by the intent to discriminate against interstate commerce. Rather, the plaintiffs hoped to explore "whether the enactment and enforcement of the moped reduction ordinance is nothing more than the continuation of a consistent custom, policy, practice and usage of the town to restrict, ban or make commercially impractical the rental of mopeds on Block Island." *Id.* at 101. In that setting, the court did not allow deposition testimony regarding the intent behind adoption of the ordinance in the absence of any

---

that "[t]his discovery was essential to demonstrate the discriminatory purpose and effect" of the statute).

indication that the challenged rule "infringed on 'an overriding, free-standing public policy'" (*id.*)—an indication that *is* provided here by the discriminatory public statements made by Rhode Island officials, which give substantial reason to believe that RhodeWorks infringes "overriding" Commerce Clause policy. But significantly, the court nevertheless held that the plaintiffs *were* entitled to receive "actual records or documentation pertaining to the ordinance at issue." *Id.* at 102; *see also id.* at 100 (holding that legislative immunity "does not extend to certain types of documentation requests" and that "a defendant will be required to produce, at the request of a plaintiff, any documents that were prepared by a committee during the course of its deliberations").

Thus, neither *Healey* nor *Miles-un-Ltd* even hints, let alone holds, that the legislative privilege is absolute in cases involving the Commerce Clause.

## II.   Plaintiffs Are Entitled To Take Discovery To Establish State Officials' Discriminatory Intent.

Falling back even further, the State argues in the alternative that, if the privilege is not absolute, courts strongly disfavor inquiry into legislative motives (Mot. at 20-32) and—again—that such inquiry is "specifically prohibited in dormant commerce clause cases, except in rare circumstances not present here " *Id.* at 25. But here, too, the State misstates the law while also disregarding the factual circumstances of this case.

As noted above, this Court has recognized that, when "state officials assert an evidentiary privilege, 'the court must balance the extent to which the production of the disputed evidence would have a chilling effect on the [state official] against those factors favoring disclosure.'" July 20 Order at 14 (quoting *McDonough v. City of Portland*, 2015 WL 12683663, at *2 (D. Me. Dec. 31, 2015)). "In making this determination, the Court looks to the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future

> timidity by government employees who will be forced to recognize that their
> secrets are violable.

*Id.* (quoting *McDonough*, 2015 WL 12683663, at *2).[8] The party asserting privilege "has the

burden of demonstrating its applicability" (*N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th

Cir. 2011)) and thus the burden of satisfying this balancing test. *See Bethune-Hill*, 114 F. Supp. 3d at

344 (quoting 26A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 5675 (1969)).

Given these principles, it is insufficient to offer "[a] conclusory assertion of privilege"

without more. *Page*, 15 F. Supp. 3d at 661. Instead, "the proponent of a privilege must 'demonstrate

specific facts showing that the [documents or deposition answers] were privileged.'" *Bethune-Hill*,

114 F. Supp. 3d at 344 (quoting *RLI Ins. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 751 (E.D. Va.

2007)). Against this background, "one does not prove entitlement to legislative (or, indeed, any)

privilege simply by asserting it." *Id.* at 344. To the contrary, entitlement to the privilege "must be

proved." *Id.*

The circumstances in this case do not come close to overcoming the presumption favoring

disclosure: (i) Evidence of Rhode Island officials' intent in adopting RhodeWorks is highly

relevant; (ii) no other evidence would be as probative of unlawful motive as documents related to

the development of RhodeWorks' discriminatory features and the testimony of the officials

---

[8]    Courts commonly apply this five-factor test. *See*, *e.g.*, *Benisek v. Lamone*, 241 F. Supp.
3d 566, 575 (D. Md. 2017) (applying the five-factor test to affirm discovery order permitting
depositions of members of a Governor's Redistricting Advisory Committee); *Nashville Student
Org. Comm.*, 123 F. Supp. 3d at 970 (permitting depositions of state legislators under five-factor
test); *Bethune-Hill*, 114 F. Supp. 3d at 337; *Perez*, 2014 WL 106927, at *2; *Comm. for a Fair &
Balanced Map v. Illinois State Bd. of Elections*, 2011 WL 4837508, at *5 (N.D. Ill. Oct. 12,
2011); *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 766 (S.D. Tex. 2011) (permitting
depositions because "the balance of the competing interests in this case decidedly shows that the
state legislators' interests must yield to important federal interests, and the depositions may go
forward"); *see also Miles-Un-Ltd.*, 917 F. Supp. at 100 (in applying common-law immunity to
determine whether inquiry into intent is permissible, "a court should consider whether there is a
chain of events or objective evidence from the outset supporting invidious intent behind the
legislative action").

involved in formulating RhodeWorks who have publicly acknowledged their discriminatory intent; (iii) the federal constitutional issues in this litigation are of the utmost seriousness; (iv) the state officials whose documents and testimony would be at issue played a direct, central, and essential role in the constitutional violation here; and (v) compelling disclosure of the evidence and testimony sought would not conflict with the purposes of the privilege.

### A.      The evidence sought is highly relevant to Plaintiffs' claims.

#### 1.      *Evidence of discriminatory intent is relevant to a Commerce Clause claim.*

The relevance of the material at issue here is not subject to serious dispute. Plaintiffs allege that the RhodeWorks tolls violate the Commerce Clause by discriminating against out-of-staters and interstate commerce in both their intent and their effect. As we have explained in prior briefing, the Supreme Court, the First Circuit, and numerous other courts have identified discriminatory intent on the part of state decisionmakers as an independent basis for invalidating a state law under the Commerce Clause, and in any event such invidious intent can play a significant role in establishing an effects-based Commerce Clause violation. Pl. Aug. 17, 2020 Letter Br.  (ECF 95) at 2-4; Pl. Supp. Reply Br. (ECF 70) at 7-14.[9] Thus, testimonial and

---

[9]      In such cases, evidence that the governor or state legislators were motivated by a discriminatory purpose may be highly probative. For example, homing in on statements made by the governor and legislative officials when introducing legislation regulating solid-waste disposal, the Fourth Circuit held that "no reasonable juror could find that in enacting the statutory provisions at issue" the legislature or governor "acted without a discriminatory purpose." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 336 (4th Cir. 2001). The Eighth Circuit similarly invalidated a state constitutional amendment under the dormant Commerce Clause based in part on "direct evidence that the drafters" of the challenged referendum "intended to discriminate against out-of-state businesses," including statements compiled and disseminated by the drafters and notes of drafting meetings. *South Dakota Farm Bureau v. Hazeltine*, 340 F.3d 583, 593-94 (8th Cir. 2003). And more recently, the Fifth Circuit explained that "contemporary statements by decisionmakers" may demonstrate that a statute was adopted for a discriminatory purpose. *Wal-Mart Stores, Inc. v. Texas Alcoholic Bev. Comm'n*, 945 F.3d 206, 214 (5th Cir. 2019). The court of appeals accordingly remanded the case so that the district

documentary evidence regarding the intent of the Executive Branch and legislative officials who drafted and enacted the RhodeWorks legislation is central to this case.

Consequently, this is not a situation in which "'the government's decision-making process [may be] swept up unnecessarily into the public domain'" as part of a dispute that is only tangentially related to legislative motive. *Bethune-Hill*, 114 F. Supp. 3d at 339 (alterations omitted) (quoting *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8). Nor is this a case in which compulsory process would be sought in aid of an action seeking damages against an individual state official or agency. *See E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 177-78 (4th Cir. 2011). Rather, at least to some degree, this is a case "where the decisionmaking process *is* the case." *Bethune-Hill*, 114 F. Supp. 3d at 339 (internal citation and quotation marks omitted; emphasis added). "[W]hat motivated the [Governor and General Assembly] ... is at the heart of this litigation," and "evidence bearing on what justifies [their actions] is [therefore] highly relevant." *Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1070 (D. Ariz. 2014), *aff'd*, 136 S. Ct. 1301 (2016). As noted above, this Court has recognized as much: "Here, Plaintiffs point to statements made by certain state officials who were allegedly key players in the crafting and/or passing of this legislation. These statements clearly could be relevant to the issue of discriminatory intent and therefore admissible, if not excluded for other reasons."[10] July 20 Order at 8.

Indeed, the State concedes, and its own authorities hold, that inquiry into legislative motive is permissible when proof of the legislature's discriminatory purpose is central to the

---

court could reweigh evidence that the challenged statute, although "facially neutral," "was enacted with the purpose to discriminate against interstate commerce." *Id.* at 212.

[10]    The Court also noted that, "should this evidence be introduced at trial, the Court will need to decide how much weight to afford it in relation to the text of the statute, which offers the best evidence of the legislature's intent." July 20 Order at 8. But that caveat has no bearing here.

claim. *See* Mot. 20 & n.17; *United States v. O'Brien*, 391 U.S. 367, 383 n.30 (1968) (explaining that statements of legislators may be relevant in "cases where the very nature of the constitutional question requires an inquiry into legislative purpose"); *South Carolina Educ. Ass'n v. Campbell*, 992 F.3d 1251, 1259 (4th Cir. 1989) (acknowledging an "exception[] to the principle that judicial inquiry into legislative motive is to be avoided" when "the Courts have expressly deemed it a substantive element of the test of constitutionality"); *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 145 (S.D.N.Y. 2017) (noting that evidence of legislative motive "may be relevant in cases where the government is accused of engaging in discriminatory conduct"); *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *5 (acknowledging that "testimony and other communications reflecting a legislator's stated motivation might be the most direct form of evidence of discriminatory intent"). That is the case here.[11]

The older district-court decisions cited by the State for the proposition that evidence of motive is not relevant to Commerce Clause claims (Mot. 26-30) do not alter the conclusion that

---

[11]     The State's purported contrary authority (Mot. at 20-25) is inapposite. Three of the four decisions cited by the State in support of its contention that inquiry into legislative motive is disfavored involved First Amendment claims, as to which the courts concluded that evidence of intent simply was not essential to establishing the claim. *See O'Brien*, 391 U.S. at 383 (holding that "the purpose of Congress … is not a basis for declaring this legislation unconstitutional" under the First amendment); *South Carolina Educ. Ass'n*, 992 F.3d at 1259 (denying discovery because proof of legislative motive was not essential to the plaintiff's First Amendment claim); *Citizens Union of City of New York*, 269 F. Supp. 3d at 145, 148 (S.D.N.Y. 2017) (Governor's statements had "no bearing" on whether the challenged laws "impermissibly infringe upon Plaintiffs' First Amendment rights"). In the fourth case, which involved an Equal Protection claim, the court applied the five-part balancing test to assess the legislators' assertion of privilege and concluded that the relevant factors favored recognizing the privilege because, among other reasons, the plaintiffs had "a considerable amount of direct and circumstantial evidence available to them that they may rely (and have relied) upon to support their claims." *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767 , at *6. None of the decisions holds that inquiry into legislative motive is improper when the evidence sought is central to the claim and the plaintiffs demonstrate that they need the information.

discovery regarding legislative intent is appropriate here. We explain elsewhere that statements to that effect in *Apel v. Murphy*, 70 F.R.D. 651 (D.R.I. 1976)—a 44-year-old decision invoked at length by the State (Mot. at 26-28)—are irreconcilable with more recent decisions of the Supreme Court and First Circuit. *See* Pl. Aug. 17, 2020 Letter Br. (ECF 95) at 2 & n.1. The same goes for similar statements in *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531 (S.D. Ind. 1990). And in *Miles-un-Ltd.*, which we have already discussed above, the plaintiffs did not seek to depose lawmakers for the purpose of demonstrating an intent to discriminate against interstate commerce (917 F. Supp. at 101)—and the Court ***allowed*** discovery of the legislators' documents. And as we also explain above (at 11-12 & n.9), courts generally acknowledge the relevance of discriminatory intent to a Commerce Clause claim and that, in particular, courts permit discovery to establish that intent.

Accordingly, the State is simply wrong that evidence of discriminatory intent is categorically irrelevant in Commerce Clause cases.

### 2. *Evidence establishing modifications made to RhodeWorks is relevant to establishing legislative intent.*

The State also argues in conclusory fashion that draft documents (relating both to officials' publicly reported statements and to the RhodeWorks legislation more generally) are not relevant because (a) "Plaintiffs already have final versions of the statements they allege support their claim of discrimination and the RhodeWorks Act itself," and (b) the requested documents relate to bills that "predate both the introduction and passage of the RhodeWorks Act." Mot. at 32-33. This argument lacks force. It should be obvious that changes made to proposed tolling legislation that predated the ultimate enactment of RhodeWorks to address objections and attract support (as well as changes to contemplated public statements about that legislation, made as the tolling proposal moved through the legislative process) can shed considerable light on the thinking and

14

intentions of the drafters. As we previously have explained, that is precisely what happened here, as state officials structured RhodeWorks so as to foist Rhode Island's revenue-raising burden on out-of-staters and then modified the tolls to reduce the charges' impact on various categories of in-staters. *See* Pl. Reply Mem. of Law in Support of Pl. Mot. for Preliminary Injunction (ECF 55) at 16 n.9; Pl. Mem. of Law in Support of Mot. for Preliminary Injunction (ECF 38) at 10-13 & n.6.

This Court recognized as much when it rejected the State's argument that officials' public statements are not relevant because (in the State's view) "(1) the words of the statute and legislative findings provide clear evidence that the statute was not enacted with a discriminatory purpose; (2) many of the statements were published prior to the introduction of the bill that became law; and (3) statements by individual legislators or officials have no probative value where the legislature has clearly expressed a purpose within the text of the statute." July 20 Order at 7-8. The State's repackaging of that contention here is no more persuasive.

Indeed, elsewhere in its motion the State concedes that "a discriminatory purpose could be established based on the impact of the official action, *the historical background or specific sequence of events leading up to the challenged action and the legislative history of the action.*" Mot. at 23 (emphasis added). Documents relating to bills predating the version of the legislation that was actually enacted are manifestly "historical background," "specific sequence of events leading up to the challenged action," and "legislative history"—whether or not the State chooses to maintain an official record of such history.

Finally, the State previously has told the Court that, if state officials' public statements are admitted, context would have to be provided to clarify the officials' meaning in making the statements. But if the Governor or other state officials testify or otherwise seek to elaborate upon

15

their intentions in offering the statements—or simply to deny making the statements as reported—the requested discovery will be essential for purposes of impeachment and cross-examination. It would be fundamentally unfair for these officials to deny having made the reported statements, or to submit that the statements do not mean what they appear to say, while withholding documents that help establish the accuracy of the reports and the meaning of the reported statements.

> **B.** **The documents and testimony of legislators and Executive Branch officials involved in enactment of RhodeWorks are the most probative evidence of legislative intent.**

The State is equally incorrect—for some of the same reasons—when it argues that discovery is not necessary because Plaintiffs may receive other evidence that could establish the claim of discriminatory intent. Mot. at 33-34. Although Plaintiffs hope to establish discriminatory motive by pointing to the structure and evolution of the RhodeWorks legislation, there is no doubt that direct evidence of what the relevant state officials were thinking, both in the form of documents and through testimony, will be important to Plaintiffs' case (at least unless and until the State stipulates to the accuracy and admissibility of the public statements quoted in the complaint). In arguing to the contrary, the State maintains that Plaintiffs should rely for proof of intent exclusively on the General Assembly's statutory findings and formal reports. Mot. 34. But this Court already has rejected the argument that legislative findings dispositively establish intent (July 20 Order at 7-8), as has the U.S. Supreme Court. *See* Pl. Reply Mem. of Law in Support of Pl. Mot. for Preliminary Injunction (ECF 55) at 12-13 (citing cases). And for good reason: A state may not insulate itself from liability for a constitutional violation through the simple expedient of attaching an innocuous statement of purpose to discriminatory legislation. After all, "[i]n the event that plaintiffs' claims have merit, and that the [officials] were motivated by an impermissible purpose, the [officials] would likely have kept out of the [official] record evidence making that purpose

16

apparent." *Harris*, 993 F. Supp. 2d at 1070-71; *see also Favors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012) (even when there already is some evidence of motive in the public record, "such evidence may provide only part of the story," so the second balancing factor "militate[d] in favor of disclosure"); *Bethune-Hill*, 114 F. Supp. 3d at 341 (plaintiffs "need not confine their proof to circumstantial evidence") (internal citation and quotation marks omitted); *Veasey*, 2014 WL 1340077, at *3.

Curiously, the State also maintains that discovery is not necessary because Plaintiffs have the newspaper accounts of the officials' statement of discriminatory intent—even as the State also argues that these statements are inadmissible as hearsay. Mot. at 34-35. But there is an obvious failure of logic here: The existence of the public statements cannot make discovery unnecessary if those statements are inadmissible and therefore effectively unavailable to Plaintiffs. Those statements, moreover, are significant here for another reason: Plaintiffs cannot plausibly be accused of engaging in a fishing expedition into the intent of state officials, as the State asserts (Mot. at 34), when it is those officials who themselves have publicly declared their discriminatory purpose. It is hard to imagine a case in which there is a more substantial basis for inquiring into legislative intent.

### C.    The federal constitutional issues in this litigation are of the utmost seriousness.

There can be no doubt about the seriousness of the federal constitutional issues at stake in this case, as the State acknowledges. Mot. at 35-36. The Supreme Court has explained that the economic balkanization of the United States that would follow from discrimination by one state against the residents of another was one of the primary considerations that led to adoption of the Constitution. *See*, *e.g.*, *H.P. Hood & Sons, Inc. v. DuMond,* 336 U.S. 525 (1949). The First Circuit has added that the Commerce Clause rule against discrimination "reflect[s] the importance of the

national interest in a unified economy, [and] the lack of power of affected non-residents of the state to protect themselves through the State's political process." *Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 10 (1st Cir. 1992). These fundamental concerns are directly at stake in this litigation. The State's only response is that the requested evidence is not relevant because intent doesn't matter under the Commerce Clause—an argument that is wrong for the reasons already discussed.

> ### D.   The officials whose evidence would be sought played a direct, central, and essential role in the constitutional violations here.

The state officials whose evidence would be sought—those who spoke publicly about the discriminatory intent underlying RhodeWorks—were directly responsible for drafting and enacting the RhodeWorks legislation. In arguing that this factor nevertheless weighs against disclosure, the State observes that the state officials are not parties to the litigation and maintains that the Governor was not directly involved in development of the law. Mot. at 36-37. But as we have elsewhere explained, Governor Raimondo's administration formulated and took the lead role in advancing the enactment of RhodeWorks. Pl. Mem. of Law in Support of Mot. for Preliminary Injunction (ECF 38) at 12-13 & n.6. Moreover, House Speaker Mattiello was sufficiently central to the formulation and enactment of the toll regime that he was quoted in the State's press release announcing the RhodeWorks plan,[12] and the Speaker necessarily was essential to the plan's enactment. In such circumstances, when these officials' subjective "decision-making process [is] at the core of the plaintiffs' claims," their direct role in enactment of the legislation "supports overcoming the privilege" and disclosing evidence going to their intent in approving the RhodeWorks plan. *See Bethune-Hill*, 114 F. Supp. 3d at 341 (quoting *Favors*, 285 F.R.D. at 220); *see also, e.g., Comm. for*

---

[12]    Office of the Governor of the State of Rhode Island, Press Release, *Raimondo, Mattiello, Paiva Weed Announce 10-year RhodeWorks Plan to Invest in State's Highways and Other Transportation Infrastructure* (May 27, 2015), https://www.ri.gov/press/view/24912.

*a Fair & Balanced Map*, 2011 WL 4837508, at *8 (explaining that because "the legislators' role in the allegedly unlawful conduct is direct," and the legislators' actions were the very actions "under scrutiny," this factor favored disclosure).[13]

> **E.     Compelling disclosure of the evidence sought would not conflict with the purposes of the privilege.**

The final balancing factor, which looks to "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable" (*McDonough*, 2015 WL 12683663, at *2), likewise favors disclosure. In arguing to the contrary, the State maintains that permitting discovery would chill intra-government discussion. Mot. at 37-38. But the officials whose evidence would be sought—most notably, the Governor—*already* have spoken publicly about their motives or the rationale underlying the RhodeWorks legislation. Having chosen to publicly disclose their intent when they believed that course to be to their benefit, these officials should not now be heard to object that further disclosure will chill their future actions. Moreover, numerous courts have recognized that when legislators are not themselves defendants, the threat to legislative independence is minimal or nonexistent. *See, e.g.*, *Owen*, 445 U.S. at 656 (noting that the concern about legislative independence is "significantly reduced, if not eliminated, ... when the threat of personal liability is removed"); *Gillock*, 445 U.S. at 372 (suggesting that legislative independence is implicated only in a "civil action brought by a private plaintiff to vindicate private rights"); *Bethune-Hill*, 114 F. Supp. 3d at 342 ("[T]he threat to [the legislative-independence] interest is substantially lowered when individual legislators are not subject to liability."). That is the situation here.

---

[13]     The State's argument that the depositions should be quashed because the recipients are not parties is inconsistent with this Court's finding that "the state is effectively the party in interest in this case, and Governor Raimondo is clearly an agent of the state." July 20 Order at 10.

And as courts also have held, "the occasional instance in which disclosure may be ordered in a civil context will [not] add measurably to the inhibitions already attending legislative deliberations." *United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989). Even if there were "some minimal impact on the exercise of [the official's] legislative function," it would be offset by the importance of preventing "impair[ment of] the legitimate interest of the Federal Government" in seeing federal constitutional rights vindicated. *Gillock*, 445 U.S. at 373; *see also Baldus v. Brennan*, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) ("Allowing the plaintiffs access to these items may have some minimal future 'chilling effect' on the Legislature, but that fact is outweighed by the highly relevant and potentially unique nature of the evidence."). "For better or worse, lawsuits concerning constitutional matters such as equal protection, the First Amendment, and substantive due process all require judicial inquiry of the legislator's motive." *Carver v. Foerster*, 102 F.3d 96, 104 (3d Cir. 1996). That is equally true of the Commerce Clause. In such cases, "the balance of interests calls for the legislative privilege to yield." *Bethune-Hill*, 114 F. Supp. 3d at 343.

The State gets no further in contending that compliance with the subpoena duces tecum should be precluded because providing the requested documents would force the Governor's office "to shift its attention from pressing other business, including the State's response to the COVID-19 pandemic and its efforts to restart Rhode Island's economy," an outcome that, the State continues, "would eviscerate the legislative and deliberative process privileges in every dormant Commerce Clause case in which a discriminatory purpose is alleged" and "would be in direct conflict with Judge Seyla's [*sic*] decision in *Healey*." Mot. at 38. We certainly do not denigrate the significance of the Governor's responsibilities in addressing the Covid-19 pandemic and current difficult economic circumstances. But beyond the State's conclusory,

boilerplate assertions about the difficulty of compliance, it offers no reason to believe that assembling responsive documents—a task that doubtless would not be performed by the Governor herself—would be unmanageable. And the State is wrong in asserting that requiring compliance here would lead to the blanket enforcement of subpoenas in "every dormant Commerce Clause case in which discriminatory purpose is alleged"; to the contrary, it is the very rare case in which, as in this one, the Governor publicly announces the State's discriminatory intent, making the need for further inquiry here especially compelling. And as for *Healey*, we already have explained why Judge Selya's decision has no relevance in this case at all.

### III.   Compliance with the document and deposition requests would not impose an undue burden on state officials.

Finally, the State is incorrect when it maintains that seeking documentary evidence or deposition testimony from the Governor would subject her to an undue burden. Mot. at 39-42. The State recognizes that discovery may be required even from high-ranking government officials when the party seeking the deposition shows "(1) that the official has direct personal information pertaining to the material issues in the action and (2) that the information sought is not available through any other source." *Id*. at 40 (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). Regarding the Governor, those standards are satisfied here.

As we have explained, this case turns in significant part on the Governor's intent, as the drafter and chief advocate for RhodeWorks. Insofar as other officials are familiar with and have possession of the relevant documents, it may be that it would be sufficient for the State to provide such documents through those sources. But ultimately, it is the Governor's personal state of mind that is central here; so far as deposition testimony and documents bearing on her intent that are uniquely in the Governor's possession are concerned, no other source of information is an adequate substitute. The State's vague and carefully worded pronouncement that "[a]ny areas

of questioning are likely to be covered by the legislative and/or deliberative process privileges or would seek information that is available from other sources" (Mot. at 41) does not identify any other source that actually could speak to the Governor's intent. *Compare*, *e.g.*, *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (testimony of FDA Commissioner was not required because he was not in office at the relevant time and the necessary testimony could be provided by the former Director of the FDA's Office of Compliance and the then-sitting Director of the FDA's Office of AIDS Coordination); *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) (district court did not err in refusing to permit deposition of governor absent "a showing by plaintiffs of specific need"; plaintiffs failed to make that showing because they could depose the state director of revenue, who likely possessed the same information that the governor could provide).

Again, we recognize the Governor's significant responsibilities at this time.[14] But there is no basis to believe that a properly circumscribed and time-limited deposition, scheduled with sensitivity to the Governor's schedule, would be unmanageable. And in that regard, the State's accusation that "Plaintiffs have chosen to move this case forward in the middle of a global pandemic" (Mot. at 41) is especially dubious. As we previously have noted in response to a similar argument, the case is moving forward now only because the State filed an ultimately unsuccessful motion under the Tax Injunction Act that had the effect of delaying the litigation for almost two years. Pl. Reply Mem. in Support of Pl. Mot. for a Preliminary Injunction (ECF 55) at 5-6. Had it not done so, this suit likely would have reached final judgment long ago.

---

[14]   The State makes a very similar argument concerning the subpoenas directed to Speaker Mattiello and Representative Ucci, changing only the boilerplate descriptions of their duties. *See* Non-Party Speaker Nicholas Mattiello's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (ECF 87) at 34-36; Non-Party Representative Stephen R. Ucci's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (ECF 89) at 34-35.

And, of course, if the State would stipulate to a preliminary injunction, Plaintiffs would be happy to put the litigation on hold until the end of the coronavirus crisis. Instead, the State wants to continue to collect tolls and limit Plaintiffs' ability to make their case by denying them access to essential evidence, all while still litigating the merits during the crisis. At bare minimum, the State's resistance to providing any information in response to the subpoenas should result in an order admitting the public statements quoted in the complaint and barring the State from calling witnesses to refute those statements or otherwise put them "in context."

## CONCLUSION

The Motions to Quash should be denied.

Dated:  August 24, 2020

By: */s/ James A. Ruggieri*
_____

Gerald C. DeMaria #637
James A. Ruggieri #2828
HIGGINS, CAVANAGH & COONEY, LLP
10 Dorrance Street, Suite 400
Suite 400
Providence, RI  02903
Telephone: (401) 272-3500
Facsimile: (401) 273-8780
Email: gdemaria@hcc-law.com
        jruggieri@hcc-law.com

Charles Rothfeld (*pro hac vice*)
Evan M. Tager (*pro hac vice*)
Reginald R. Goeke (*pro hac vice*)
Colleen M. Campbell (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, District of Columbia 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
Email: CRothfeld@mayerbrown.com
        ETager@mayerbrown.com
        Rgoeke@mayerbrown.com
        ccampbell@mayerbrown.com

Attorneys for Plaintiffs

24

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 24th day of August, 2020, a true copy of the within document was filed electronically and it is available for viewing and downloading from the ECF system by all counsel of record.


          By: <u>*/s/ James A. Ruggieri*</u>
          James A. Ruggieri

25