UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN TRUCKING | : | |
| ASSOCIATIONS, INC.; CUMBERLAND | : | |
| FARMS, INC.; M&M TRANSPORT | : | |
| SERVICES, INC.; and NEW ENGLAND | : | |
| MOTOR FREIGHT, INC., | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | C.A. No.:  1:18-cv-00378-WES-PAS |
| | : | |
| PETER ALVITI, JR., in his official | : | |
| capacity as Director of the Rhode Island | : | |
| Department of Transportation; Rhode | : | |
| Island Turnpike and Bridge Authority | : | |
| *Defendants.* | : | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTIONS TO QUASH SUBPOENA DUCES TECUM AND
SUBPOENA FOR DEPOSITION TESTIMONY FILED BY
NON-PARTY GOVERNOR GINA M. RAIMONDO, NON-PARTY SPEAKER
NICHOLAS MATTIELLO AND NON-PARTY REPRESENTATIVE STEPHEN R. UCCI**

NON-PARTY GOVERNOR GINA M. RAIMONDO
NON-PARTY SPEAKER NICHOLAS MATTIELLO
NON-PARTY REPRESENTATIVE STEPHEN R. UCCI

By their attorneys,

PETER F. NERONHA
ATTORNEY GENERAL

/s/ Michael W. Field
Michael W. Field, (#5809)
Keith David Hoffmann (#9874)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400, Extension 2380
Fax:  (401) 222-3016
mfield@riag.ri.gov
khoffmann@riag.ri.gov

/s/ John A. Tarantino
John A. Tarantino (#2586)
jtarantino@apslaw.com
Patricia K. Rocha (#2793)
procha@aplslaw.com
R. Bart Totten (#5095)
btotten@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN PC
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 274-7200
Fax (401) 351-4607

## <u>TABLE OF CONTENTS</u>

                                                                                    **Page**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.  The Legislative Privilege is Absolute in Dormant Commerce Clause Cases;
    Plaintiffs' Reliance on Redistricting and Other Voting Rights Cases is
    Misplaced. ................................................................................................. 3

    A.  Courts Have Recognized a Narrow Exception to the Absolute Legislative
        Privilege in Redistricting and Other Voting Rights Cases, Which Turns on the
        Self-Interest of Legislators. .............................................................. 3

    B.  The Legislative Privilege is Absolute in Dormant Commerce Clause Cases. ..... 9

II. Even if the Legislative Privilege is Qualified, There Is No Reason to Invade the
    Privilege. ................................................................................................. 14

    A.  The Evidence Sought is Not Relevant. .................................................. 14

    B.  Plaintiffs Already Have Access to Legislative Materials.................................. 19

    C.  The Seriousness of the Constitutional Claim is Insufficient to Overcome the
        Privilege.................................................................................... 20

    D.  The Non-Parties Did Not Have a Direct Role in the Allegedly Unlawful
        Conduct...................................................................................... 21

    E.  Public Policy Reasons Strongly Counsel Against Production. ........................... 22

III. The Non-Parties Have Sufficiently Demonstrated that the Subpoenas Would
     Subject them to an Undue Burden. ........................................................... 23

**Page**

IV.    Plaintiffs Do Not Contest the Governor's Assertion of the Deliberative Process
       Privilege. ................................................................................................................    25

CONCLUSION ........................................................................................................................    26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*2BD Assocs. Ltd. P'ship. v. City Comm'rs*,
   896 F. Supp. 528 (D. Md. 1995)...................................................... 11, 12

*ACORN v. Cty. of Nassau*,
   No. CV05-2301(JFB)(WDW), 2007 WL 2815810
   (E.D.N.Y. Sept. 25, 2007) ............................................................... 20

*All. of Auto. Mfrs. v. Gwadosky*,
   430 F.3d 30 (1st Cir. 2005)............................................................. 18, 20

*Almonte v. City of Long Beach*,
   478 F.3d 100 (2d Cir. 2007) ........................................................... 5

*Apel v. Murphy*,
   70 F.R.D. 651 (D.R.I. 1976) (Day, J.) ............................................ 1, 18, 19

*Baldus v. Brennan*,
   No. 11-CV-562, 2011 WL 6122542
   (E.D. Wisc. Dec. 8, 2011).............................................................. 23

*Benisek v. Lamone*,
   241 F. Supp. 3d 566 (D. Md. 2017)................................................ 7

*Berkley v. Common Council*,
   63 F.3d 295 (4th Cir. 1995) ........................................................... 11

*Bethune-Hill v. State Bd. of Elections*,
   114 F. Supp. 3d 323 (E.D. Va. 2015) ............................................. 9, 15, 20,
                                                                                          21, 23

*Canaan Christian Church v. Montgomery Cty., Md.*,
   335 F. Supp. 3d 758 (D. Md. 2018)................................................ 7

*Citizens Union of City of New York v. Attorney Gen. of New York*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) ............................................ 16, 17, 21,
                                                                                          22, 23

*Clayland Farm Enterprises, LLC. v. Talbot Cty., Md.*,
   No. GLR-14-03412, 2018 WL 4700191
   (D. Md. Oct. 1, 2018) .................................................................... 6

**Page(s)**

*Committee for a Fair and Balanced Map v. Illinois State Bd. Of Elections*,
  No. 11-C-5065, 2011 WL 4837508
  (N.D. Ill. Oct. 12, 2011).................................................................... 4, 7, 21

*Family Winemakers of California v. Jenkins*,
  592 F.3d 1 (1st Cir. 2010)................................................................ 20

*Family Winemakers of California v. Jenkins*,
  No. 06-11682-RWZ, 2011 WL 2312534
  (D. Mass. Jan. 8, 2011)................................................................... 11

*Favors v. Cuomo*,
  285 F.R.D. 187 (E.D.N.Y. 2012) .................................................... 20, 21

*Gilby v. Hughes*,
  C.A. No. 1:19-cv-01063-LY, 2020 WL 3958479
  (W.D. Tex. July 10, 2020) .............................................................. 7, 12

*Government Suppliers Consolidating Services, Inc. v. Bayh*,
  133 F.R.D. 531 (S.D. Ind. 1990) .................................................... 18, 19

*Harris v. Arizona Indep. Redistricting Comm'n*,
  993 F. Supp. 2d 1042 (D. Ariz. 2014),
  *aff'd* 136 S. Ct. 1301 (2016) ......................................................... 15, 20

*Healey v. Bendick*,
  628 F. Supp. 681 (D.R.I. 1986) (Selya, J.) .................................... 1, 11, 12

*In re Hubbard*,
  803 F.3d 1298 (11th Cir. 2015) ...................................................... 8, 10

*Jackson Mun. Airport Auth. v. Bryant*,
  Civil Action No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967
  (S.D. Miss. Dec. 19, 2017) ............................................................ 8

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*,
  849 F.3d 615 (5th Cir. 2017) .......................................................... 7, 8, 12

*Lee v. Va. State Bd. of Elections*,
  No. 3:15CV357 (HEH-RCY),
  2015 WL 9461505 (E.D. Va. Dec. 23, 2015)................................. 6, 11

*Marylanders for Fair Representation Inc. v. Schaefer*,
  144 F.R.D. 292 (D. Md. 1992) ....................................................... 7

**Page(s)**

*McDonough v. City of Portland*,
No. 2:15-cv-153-JDL, 2015 WL 12683663
(D. Me. Dec. 31, 2015) ..................................................... 10

*Michigan State A. Philip Randolph Inst. v. Johnson*,
Civil Action No. 16-cv-11844, 2018 WL 1465767
(E.D. Mich. Jan. 4, 2018) ................................................. 7, 17, 18

*Miles-Un-Ltd. v. Town of New Shoreham*,
917 F. Supp. 91 (D.N.H. 1996) ......................................... 1, 11, 12, 13, 14, 18, 19

*Miles-un-Ltd., Inc. v. Town of New Shoreham*,
No. 95-356-JM Order (July 29, 1996) .............................. 19

*Nashville Student Organizing Comm. v. Hargett*,
123 F. Supp. 3d 967 (M.D. Tenn. 2015) ........................... 3, 4

*Nkihtaqmikon v. Impson*,
251 F.R.D. 64 (D. Me. 2008) ............................................. 23

*N. Carolina State Conference of the NAACP v. McCrory*,
No. 1:13CV658, 2014 WL 12526799 (M.D.N.C. Nov. 20, 2014)
*objections overruled*, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015) ............ 7

*Owen v. Independence*,
445 U.S. 622 (1980) .......................................................... 23

*Page v. Va. State Bd. of Elections*,
15 F. Supp. 3d 657 (E.D. Va. 2014) ................................. 7

*Perez v. Perry*,
No. SA-11-CV-360-OLG, 2014 WL 106927
(W.D. Tex. Jan. 8, 2014) ................................................... 4

*Plain Local Sch. Dist. Bd. of Educ. v. DeWine*,
2020 WL 4679015 (S.D. Ohio June 2, 2020) .................... 8, 20

*Puente Arizona v. Arpaio*,
314 F.R.D. 664 (D. Ariz. May 5, 2016) ........................... 5

*Pulte Home Corp. v. Montgomery Cty.*,
No. GJH-14-3955, 2017 WL 2361167
(D. Md. May 31, 2017) ...................................................... 6

**Page(s)**

*Rodriguez v. Pataki,*
    280 F. Supp. 2d 89 (S.D.N.Y. 2003) ................................................. 4, 5, 12

*Schiltz v. Virginia,*
    854 F.2d 43 (4th Cir. 1988) ........................................................ 11

*Searingtown Corp. v. Incorporated Village of North Hills,*
    575 F. Supp. 1295 (E.D.N.Y. 1981) .................................................. 13

*South Carolina Educ. Ass'n. v. Campbell,*
    883 F.2d 1251 (4th Cir. 1989) ...................................................... 16

*United States v. Gillock,*
    445 U.S. 360 (1980)........................................................... 6, 8, 23

*United States v. Irvin,*
    127 F.R.D 169 (C.D. Cal. 1989)..................................................... 23

*United States v. O'Brien,*
    391 U.S. 367 (1968)............................................................... 17

*Veasey v. Perry,*
    No. 2:13-CV-193, 2014 WL 1340077
    (S.D. Tex. Apr. 3, 2014) .......................................................... 7

*Wal-Mart Stores, Inc. v. Texas Alcohol Beverage Comm'n,*
    No. A-15-CV-134-RP, 2016 WL 5922315
    (W.D. Tex. Oct. 11, 2016)..................................................... 5, 9, 10

*Whitford v. Gill,*
    331 F.R.D. 375 (W.D. Wisc. 2019),
    *vacated on other grounds* No. 19-2066, 2019 WL 4571109
    (7th Cir. July 11, 2019).......................................................... 6, 7

## OTHER AUTHORITIES

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................... 25

J. Pierce Lamberson,
    *Drawing the Line on Legislative Privilege:*
    *Interpreting State Speech or Debate Clauses in Redistricting Litigation,*
    95 Wash. U. L. Rev. 203 (2017)................................................... 21

Non-Party Governor Gina M. Raimondo, Non-Party Speaker Nicholas Mattiello and Non-Party Representative Stephen Ucci (collectively, the "Non-Parties") submit this Reply Memorandum in further support of Non-Party Governor Gina M. Raimondo's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 85); Non-Party Speaker Nicholas Mattiello's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 87); and Non-Party Representative Stephen R. Ucci's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 89).

## **INTRODUCTION**

In their Motions to Quash, the Non-Parties demonstrated that cases originating in this Court have recognized an absolute legislative privilege in dormant Commerce Clause cases.  *See Healey v. Bendick*, 628 F. Supp. 681, 697 (D.R.I. 1986) (Selya, J.); *Miles-un-Ltd., Inc. v. Town of New Shoreham*, 917 F. Supp. 91, 97-98 (D.N.H. 1996).[1]  The Non-Parties further demonstrated that this Court has expressly held that inquiry into legislative motive and purpose should not be made, even in a dormant Commerce Clause case, and that inquiry into public statements of state officials concerning their reasons for supporting certain legislation has no place in a dormant Commerce Clause case.  *See Apel v. Murphy*, 70 F.R.D. 651 (D.R.I. 1976) (Day, J.).

Plaintiffs' Opposition (Doc. 103) rejects those cases out of hand, claiming that one is old and wrongly decided, another does not mean what it says, and one is inapplicable (based on Plaintiffs' misreading of the case).  Then, because cases decided by courts in the First Circuit do not serve their position, Plaintiffs resort to reliance on out-of-jurisdiction redistricting and voting

---

[1] *Miles-un-Ltd.* originally was filed in the District of Rhode Island and assigned to Judge Lisi, but because Attorney Mark J. Hagopian (son of Magistrate Judge Hagopian) was counsel of record, the judges of this Court recused and the case was heard by the District of New Hampshire.

1

rights cases.  But as the Non-Parties explained in their moving papers, the legislative privilege is absolute in civil cases, except in cases such as redistricting and voting rights cases where the corrective mechanisms built into our republican system of government are ill-suited to address the threat of legislative self-entrenchment.  As demonstrated herein, Plaintiffs misstate the holdings of certain of those decisions, omitting unfavorable language and inserting bracketed language that does not appear anywhere in the court's decision.  Plaintiffs cherry pick language from others, but, when examined in context, the court's actual language does not support Plaintiffs' position.  And, because courts treat the legislative privilege as absolute except in rare cases, such as redistricting and voting rights cases, nearly all of the decisions upon which Plaintiffs rely for purposes of the balancing test they argue should be applied here are redistricting and voting rights cases.

At bottom, Plaintiffs have come forth with nothing to support their extraordinary request that this Court invade the legislative and deliberative process privileges and require the Non-Parties to search for documents that Plaintiffs hope will suggest that some participant at some stage in the deliberative and legislative processes had some improper or discriminatory purpose in mind.  Such discovery would serve no purpose other than to invite speculation about the actual intentions of the General Assembly as a whole in enacting RhodeWorks.  Nor have Plaintiffs come forth with anything to support their request to depose the Governor, the Speaker and Rep. Ucci in the middle of a global pandemic that requires their utmost attention to the public's health, safety and welfare.

Plaintiffs instead assert that if the State withdraws its opposition to Plaintiffs' Motion for a Preliminary Injunction, they will not move forward with burdening the Non-Parties at this time. The State has a right to defend this litigation and the constitutionality of the RhodeWorks Act,

which was enacted by the elected representatives of the people of Rhode Island, and is presumed to be constitutional.  Plaintiffs' offer cannot be viewed as genuine.

## ARGUMENT

**I.    The Legislative Privilege is Absolute in Dormant Commerce Clause Cases; Plaintiffs' Reliance on Redistricting and Other Voting Rights Cases is Misplaced.**

If there is one thing that the parties agree on, it is that this is not a redistricting or voter rights case.  No matter the number of redistricting and voting rights cases Plaintiffs cite in their Opposition, Plaintiffs cannot turn this case into a redistricting or voter rights case.  This is a dormant Commerce Clause case, and the legislative privilege in dormant Commerce Clause cases is absolute.

### A.    Courts Have Recognized a Narrow Exception to the Absolute Legislative Privilege in Redistricting and Other Voting Rights Cases, Which Turns on the Self-Interest of Legislators.

While the legislative privilege is generally absolute, it is treated as a qualified privilege in criminal cases and in those cases that turn on the self-interest of legislators such as redistricting and other voting rights cases.  Courts have drawn this distinction based on the fact that the narrow class of redistricting and voting rights cases present important federal interests and implicate public rights that the ballot box may not adequately protect.  In that sense, courts have likened redistricting and voting rights cases brought by private parties for the purpose of vindicating public rights to criminal prosecutions where a qualified privilege applies.  Plaintiffs dismiss all of the cases the Non-Parties cite as "outliers" but even the cases on which Plaintiffs rely recognize this distinction.

Plaintiffs first rely on the Middle District of Tennessee's decision in *Nashville Student Organizing Comm. v. Hargett*, 123 F. Supp. 3d 967 (M.D. Tenn. 2015) to support their claim that

the legislative privilege is always qualified.  But because that decision does not stand for the broad proposition that Plaintiffs suggest, Plaintiffs intentionally omit language in the decision stating that the legislative privilege is qualified in "constitutional challenges premised on the *right to vote*," *id*. at 969 (emphasis added), and substitute that language for the broader proposition that the legislative privilege is qualified in "constitutional challenges premised on [*discriminatory state intent*.]"  Opp. at 5 (emphasis added).  The decision does not in any way suggest, let alone hold, that the legislative privilege is qualified in all cases involving claims of discriminatory intent.  Rather, the court expressly limited its conclusion, stating that "[i]n cases involving constitutional challenges *related to voting rights*, the vast majority of federal courts have found that the federal common law also affords state legislators only a qualified (*i.e.*, not absolute) legislative privilege against having to provide records or testimony concerning their legislative activity."  *Nashville Student Organizing Comm.*, 123 F. Supp. 3d at 969 (emphasis added).[2]

Next, Plaintiffs rely on *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003), a redistricting case.  Opp. at 5 n.5.  As noted *supra*, federal courts have recognized a qualified privilege in voting and redistricting cases, but even ignoring this legal distinction, *Rodriguez* concerned a redistricting committee made up of both legislators and non-legislators, thus, its records were not protected by legislative privilege and were subject to discovery.  *Rodriguez*, 280 F. Supp. 2d at 101 (concluding that the redistricting committee's session was one "for which

---

[2] Every case cited by the Middle District of Tennessee for this proposition is a redistricting or voter rights case.  *See Perez v. Perry*, No. SA-11-CV-360-OLG, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014); *Committee for a Fair and Balanced Map v. Illinois State Bd. Of Elections*, No. 11-C-5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003).  While the court treated the privilege as qualified, the court did not determine that the plaintiffs' interest in the matter was sufficient to overcome the legislative privilege.  *Nashville Student Organizing Comm.*, 123 F. Supp. 3d at 969, 971.

4

no one could seriously claim privilege"); *see also Wal-Mart Stores, Inc. v. Texas Alcohol Beverage Comm'n*, No. A-15-CV-134-RP, 2016 WL 5922315, at *5 (W.D. Tex. Oct. 11, 2016) (distinguishing *Rodriguez* on the basis that it concerned a redistricting committee, not the legislature itself).[3]   Significantly, in *Rodriguez*, the court denied the plaintiffs' motion to compel information concerning the deliberations of the legislature or individual legislators (outside the context of the redistricting committee), concluding that such information was protected by the legislative privilege.  *Rodriguez*, 280 F. Supp. 2d at 102-03.

Here, unlike in *Rodriguez*, none of the information Plaintiffs seek originated in any committee made up of legislators and non-legislators.  Rather, the information at issue, which has been subpoenaed from the Governor, the Speaker, and Rep. Ucci is squarely legislative and protected from disclosure by the legislative privilege.

Plaintiffs proceed to dismiss as "outliers" every decision the Non-Parties cite for the proposition that the legislative privilege is absolute except in federal criminal cases and in redistricting and other voting rights matters.  In doing so, Plaintiffs assert that "the State is mistaken in contending that courts treat legislative privilege as absolute except in redistricting cases and in federal criminal cases brought against legislators."  Opp. at 5.  But this is not a line

---

[3] The *Rodriguez* decision also likened the redistricting commission's communications to communications between legislators and lobbyists, which it concluded would not be protected by the legislative privilege.  However, as other cases (also cited in Plaintiffs' Opposition) have observed, that aspect of the *Rodriguez* decision was abrogated by a subsequent Second Circuit decision, which held that legislative immunity protects such communications.  *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007) (holding that "legislative immunity is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process, including . . . [m]eeting with persons outside the legislature—such as executive officers, partisans, political interest groups, or constituents—to discuss issues that bear on potential legislation"); *see also Puente Arizona v. Arpaio,* 314 F.R.D. 664, 670 (D. Ariz. May 5, 2016) (rejecting the decision in *Rodriguez* as unhelpful on the basis that it was abrogated, at least in part, by *Almonte*).

that the Non-Parties have drawn.  It is a line drawn by the cases cited by the Non-Parties, which recognize that the legislative privilege should be treated as qualified in redistricting and voting rights cases because such cases present important federal interests and implicate public rights that the ballot box may not adequately protect.  *See, e.g.*, *Clayland Farm Enterprises, LLC v. Talbot Cty., Md.*, No. GLR-14-03412, 2018 WL 4700191, at *2 (D. Md. Oct. 1, 2018) (recognizing that the legislative privilege is absolute except "in federal criminal cases brought against individual legislators, or where important federal interests cause comity to yield . . . such as in voter redistricting litigation"); *Pulte Home Corp. v. Montgomery Cty.*, No. GJH-14-3955, 2017 WL 2361167, at *3 n.6 (D. Md. May 31, 2017) (recognizing that while the legislative privilege is generally absolute, "[n]umerous courts have held that the legislative privilege must yield to discovery in redistricting litigation"); *Lee v. Va. State Bd. of Elections*, No. 3:15CV357 (HEH-RCY), 2015 WL 9461505, at *5 (E.D. Va. Dec. 23, 2015) (explaining that the United States Supreme Court recognized an exception to the doctrine of legislative privilege in *United States v. Gillock*, 445 U.S. 360, 361-62, 374 (1980), for criminal cases, and that, in reliance on *Gillock*, "some in-circuit district courts have found a limited exception to legislative privilege in cases involving legislative redistricting").

Other cases stand for the same unremarkable proposition.  *See Whitford v. Gill*, 331 F.R.D. 375, 378 (W.D. Wisc. 2019), *vacated on other grounds* No. 19-2066, 2019 WL 4571109 (7th Cir. July 11, 2019) (stating that it is "persuaded by the reasoning of the many courts concluding that there is a qualified rather than absolute legislative privilege from complying with discovery requests in the context of a claim regarding unconstitutional gerrymandering[,]" and recognizing that "many courts, including two in the Seventh Circuit, have concluded that gerrymandering claims raise sufficiently important federal interests to overcome legislative

6

privilege, reasoning that such claims involve public rights and that the ballot box may not provide adequate protection of those rights"); *Canaan Christian Church v. Montgomery Cty., Md.*, 335 F. Supp. 3d 758, 766 (D. Md. 2018) ("Redistricting, voting rights and criminal cases are considered 'important federal interest' cases which do not allow for absolute immunity."); *Benisek v. Lamone*, 241 F. Supp. 3d 566, 572 (D. Md. 2017) (holding that the federal common law doctrine of legislative privilege "is *qualified*, not absolute, in a context such as this redistricting litigation" (emphasis in original)); *Committee for a Fair and Balanced Map v. Illinois State Bd. Of Elections*, No. 11-C-5065, 2011 WL 4837508, at *6 (N.D. Ill. Oct. 12, 2011) ("Voting rights cases, although brought by private parties, seek to vindicate public rights.  In this respect, they are akin to criminal prosecutions," where the privilege is qualified).

The cases Plaintiffs cite similarly recognize this distinction.  Plaintiffs list a number of cases to purportedly support their claim that most courts recognize that the legislative privilege is qualified but not a single one of those cases is a dormant Commerce Clause case and most are voting rights act cases.  Opp. at 2, 5, 5 n.5, 6, 7 (citing *Gilby v. Hughs*, C.A. No. 1:19-cv-01063-LY, 2020 WL 3958479 (W.D. Tex. July 10, 2020) (voting rights case); *Michigan State A. Philip Randolph Inst. v. Johnson*, Civil Action No. 16-cv-11844, 2018 WL 1465767 (E.D. Mich. Jan. 4, 2018) (voting rights case); *N. Carolina State Conference of the NAACP v. McCrory*, No. 1:13CV658, 2014 WL 12526799 (M.D.N.C. Nov. 20, 2014) (voting rights case), *objections overruled*, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015); *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014) (redistricting); *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077 (S.D. Tex. Apr. 3, 2014) (voting rights case); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D. Md. 1992) (redistricting case); *cf. Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (relying on redistricting

case in addressing the legislative privilege in a Medicaid Act case); *Jackson Mun. Airport Auth. v. Bryant*, Civil Action No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967 (S.D. Miss. Dec. 19, 2017) (equal protection claim)).

Plaintiffs next suggest that the Eleventh Circuit in *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), recognized that the legislative privilege is qualified in First Amendment cases because the First Amendment is an important federal interest. *See* Opp. at 6 n.6. The Eleventh Circuit, however, reached no such conclusion. Rather, in that case, which concerned political contributions, the court recognized (as certain of the Non-Parties' decisions similarly recognize) that the legislative privilege must yield in some circumstances "where necessary to vindicate important federal interests such as 'the enforcement of federal criminal statutes.'" *In re Hubbard*, 803 F.3d at 1311 (quoting *Gillock*, 445 U.S. at 373). But the court proceeded to conclude that the subpoenas did "*not* serve an important federal interest." *Id.* at 1312 (emphasis added). In doing so, the court explained:

> We are not saying that enforcing the First Amendment is not an important federal interest or that it does not protect important constitutional values. Obviously it is and does. What we are saying is that, as a matter of law, the First Amendment does not support the kind of claim [Plaintiff] makes here: a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it. *And because the specific claim asserted does not legitimately further an important federal interest in this context, the legislative privileges must be honored and the subpoenas quashed*.

*Id.* (emphasis added).

Finally, Plaintiffs argue that courts do not look to the type of claim at issue to determine whether the privilege is absolute or qualified, pointing to a recent decision from the Southern District of Ohio. Opp. at 6 (citing *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 2020 WL 4679015, at *3 n.6 (S.D. Ohio June 2, 2020)). But this notion cannot be reconciled with the

many redistricting and voting rights cases that find an exception to the absolute legislative privilege, and it is contrary to the express holdings of other cases upon which Plaintiffs rely. *See Bethune-Hill v. State Bd. of Elections*, 114 F. Supp. 3d 323, 334 (E.D. Va. 2015) ("The state legislative privilege—like state legislative immunity—likewise *may become qualified based on the nature of the claim at issue*." (emphasis added)).

None of the cases Plaintiffs cite compel the conclusion that the legislative privilege is always qualified or, minimally, qualified in those cases where claims of discriminatory intent are at issue.

**B.     The Legislative Privilege is Absolute in Dormant Commerce Clause Cases.**

Plaintiffs fare no better in their attempt to demonstrate that the legislative privilege is not absolute in dormant Commerce Clause cases. Neither of the dormant Commerce Clause cases Plaintiffs cite hold that the legislative privilege is qualified, and Plaintiffs' attempt to distinguish the Non-Parties' dormant Commerce Clause cases is unavailing.

Plaintiffs first point to *Wal-Mart Stores, Inc.* Far from holding that the legislative privilege is qualified, in *Wal-Mart Stores, Inc.*, the court determined that the legislative privilege *did not apply at all*. 2016 WL 5922315, at *9 n.7. The court's decision is clear: "Federal common law does recognize a legislative privilege, which has its source in the absolute immunity granted to federal legislators in the Speech and Debate Clause of the Constitution, a privilege which has been extended to state legislators. . . . That privilege, however, *has no applicability to communications between legislators and lobbyists or constituents*, but rather only protects legislator's internal communications." *Id.* (emphasis added).[4]

---

[4] Courts are not in agreement on this point. *See, e.g.*, fn. 3 *supra*.

9

In that case, the plaintiff Wal-Mart challenged the constitutionality of Texas statutes regulating permits for retail sales of distilled spirits.  *Id.* at *1.  During discovery, Wal-Mart subpoenaed documents and testimony from two non-party businesses that held liquor licenses, and the Texas Package Stores Association seeking, *inter alia*, their communications with the Texas legislature concerning the statutes.  *Id.*  In ruling on motions to quash those subpoenas, the court concluded that statements between the liquor license holders and the trade association on the one hand, and the legislature on the other, were relevant.  *Id.* at *6 (observing that statements by the license holders regarding their views of the effects of the statutes governing retail liquor permits were potentially relevant to determining the effects of the challenged statutes).  Plaintiffs argue that the court in *Wal-Mart Stores Inc.* allowed discovery regarding communications with legislators and noted that "the weight of authority supports the proposition that legislators' statements to lobbyists or constituents are relevant to determining legislative purpose," but Plaintiffs omit that the court allowed the discovery after concluding it was relevant and the legislative privilege *was inapplicable* to such communications. *Id.* at *9 n.7.

Importantly, Wal-Mart did not subpoena the records of any legislator but, rather, the records of the trade association and liquor license holders.  Thus, one of the principle policy reasons behind the legislative privilege had no application in that case – "'shield[ing] legislators from civil proceedings which disrupt and question their performance of legislative duties to enable them to devote their best efforts and full attention to the public good.'"  *McDonough v. City of Portland*, No. 2:15-cv-153-JDL, 2015 WL 12683663, at *2 (D. Me. Dec. 31, 2015) (quoting *In re Hubbard*, 803 F.3d at 1310).  Here, however, the policies behind the legislative privilege are prominently at issue as Plaintiffs have subpoenaed the Governor, the Speaker and Rep. Ucci, not a trade association or lobbyist, for both documents and testimony.

The only other dormant Commerce Clause case upon which Plaintiffs rely is equally

inapplicable.  While Plaintiffs note that in *Family Winemakers of California v. Jenkins*, No. 06-

11682-RWZ, 2011 WL 2312534, at *1 (D. Mass. Jan. 8, 2011), the plaintiffs pursued *informal*

*discovery* with Commonwealth legislators and their staffs regarding alleged discriminatory

intent, there is nothing in that case (or the documents available in the court's electronic docket)

that suggests that the legislators or their staff ever invoked the legislative privilege, and it is clear

that the court never addressed any such claim, let alone determined that the privilege is qualified

as Plaintiffs suggest.

By contrast, this Court's decision in *Healey*, and the District of New Hampshire's

decision in *Miles-un-Ltd.*, both support the Non-Parties' view that the legislative privilege in this

context is absolute.  *Healey*, 628 F. Supp. at 697; *Miles-Un-Ltd.*, 917 F. Supp. at 97-98.

Contrary to Plaintiffs' claim that *Healey* did not address legislative privilege and, instead,

addressed legislative immunity, this Court's opinion (as many other court's opinions have)

addressed both doctrines interchangeably.  *See Healey*, 628 F. Supp. at 697 (describing the

circumstances where "[a] party loses the *absolute legislative privilege*").  Many other courts have

similarly treated the two doctrines interchangeably, recognizing that, because the legislative

privilege derives from legislative immunity, if immunity from civil liability attaches to a given

action, then testimonial immunity should apply as well.  *Lee*, 2015 WL 9461505, at *3; *see also*

*Schiltz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988), *overruled on other grounds*, *Berkley v.*

*Common Council*, 63 F.3d 295, 303 (4th Cir. 1995) ("The purpose of the doctrine is to prevent

legislators from having to testify regarding matters of legislative conduct, whether or not they are

testifying to defend themselves."); *2BD Assocs. Ltd. P'ship. v. City Comm'rs*, 896 F. Supp. 528,

531 (D. Md. 1995) ("[T]he effect of the doctrine [of federal common law legislative privilege] is

11

twofold; it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege"). Neither the two redistricting cases nor the Medicaid Act case, which was decided in reliance on a redistricting case, that Plaintiffs cite compel any different interpretation of *Healey*. Opp. at 8 (citing *Jefferson Cmty. Health Care Ctrs. Inc.*, 849 F.3d at 624 (Medicaid Act case, decided in reliance on redistricting case); *Gilby*, 2020 WL 3958479, at *2 (redistricting); *Rodriguez*, 280 F. Supp. 2d at 95 (redistricting)).

Plaintiffs next attempt to distinguish the decision in *Miles-un-Ltd.*, claiming that it recognized that legislative immunity is generally absolute but that legislative privilege is qualified in dormant Commerce Clause cases. Opp. at 8. The decision made no such distinction. Rather, after explaining that "[a]bsolute immunity enables legislators to be free, not only from the 'consequences of litigation's results but also from the burden of defending themselves,'" the court recognized that legislative privilege is an extension of such absolute immunity. *Miles-un-Ltd.*, 917 F. Supp. at 98. The court explained:

> *The rationale for affording state, regional, and local legislators a testimonial privilege is as compelling as the rationale for providing immunity from civil liability.* Effectuating the intentions of the legislative immunity doctrine, legislators acting within the realm of legitimate legislative activity, should not be required to be a party to a civil action concerning legislative activities, nor should they be required to testify regarding those actions.

*Id.* (emphasis added).

Although the court recognized in *dicta* an exception to the absolute nature of the federal common law legislative immunity in those circumstances where "traditionally legislative actions of officials [are] taken . . . in bad faith, because of corruption, or primarily in furtherance of *personal* interests instead of public interests"—the same distinction drawn in redistricting and voting rights cases—it in no way suggested that the privilege is qualified in any other

circumstances, as Plaintiffs suggest. *Id.* at 100. And notably, it did not determine that those circumstances were present based on the plaintiffs' dormant Commerce Clause claim. *Id.* at 102.

Plaintiffs argue that the court in *Miles-un-Ltd*. held that the availability of the privilege depended on "whether infringement of the immunity rises to a level of public need," but, as the Court's decision makes clear, that inquiry applies only in those cases "where the immunity is challenged on bad faith, corruption, or personal interests grounds." *Id.* at 100. In those circumstances, "a court should consider whether there is a chain of events or objective evidence from the outset supporting invidious intent behind the legislative action." *Id.* Further underscoring the limited nature of the exception to the general principle that the legislative privilege is absolute, the court explained that "generally speaking, the motivation of . . . legislators in passing regulations is protected from disclosure." *Id.* Indeed, "if an inquest into legislative motive would command the testifying of legislators, pertaining to their conduct in a legislative capacity, the doctrine of legislative immunity [would have] omnipotent weight." *Id.* (citing *Searingtown Corp. v. Incorporated Village of North Hills*, 575 F. Supp. 1295, 1299 (E.D.N.Y. 1981)).

Thus, after concluding that the legislative privilege applied, the court barred plaintiffs from inquiring about specific legislative actions taken and the reasons behind such actions. *Id.* at 100-01. The court, however, concluded that plaintiffs could proceed with discovery on matters that were not protected by the privilege, including seeking deposition testimony regarding actions that are administrative in nature and documents pertaining to the ordinance. *Id.* at 102.[5]

---

[5] Similarly, here, the Non-Parties have not asserted privilege over documents pertaining to the final enacted RhodeWorks Act.

13

Notably, the exception recognized in *Miles-un-Ltd.* for circumstances where "bad faith, corruption, or personal interests" are at stake is in accord with all of the other courts that have held that an exception to the legislative privilege lies for redistricting and voting rights cases—both circumstances where the personal interests of the legislators themselves (i.e., their interest in their political office) are at stake.  Here, however, Plaintiffs do not advance any claim that bad faith, corruption, or personal interests of legislators motivated the General Assembly's passage of the RhodeWorks Act.

Thus, both of the dormant Commerce Clause cases the Non-Parties have cited (including one from this Court) support the Non-Parties' view that the legislative privilege is absolute, even in dormant Commerce Clause cases.  Plaintiffs have come forth with no authority to support their contrary position.

## II.     Even if the Legislative Privilege is Qualified, There Is No Reason to Invade the Privilege.

Even if this Court departs from all the foregoing authority and determines the legislative privilege is qualified in this dormant Commerce Clause case, Plaintiffs do not have a need for disclosure that outweighs the State's interest in confidentiality sufficient to overcome either privilege.

### A.     The Evidence Sought is Not Relevant.

It is difficult to understand how Plaintiffs can claim that "the relevance of the material at issue here *is not subject to serious dispute*."  Opp. at 11 (emphasis added).  The Non-Parties each devoted 13 pages of their respective moving papers to demonstrating that judicial inquiry into legislative motives not only is unlikely to lead to the discovery of relevant evidence but also is specifically prohibited in dormant Commerce Clause cases, except in rare circumstances (such as when the statute is facially discriminatory), which are not present here.

14

Similar to their arguments concerning whether the legislative privilege is absolute, Plaintiffs rely heavily on redistricting and voting rights cases but again, this is a dormant Commerce Clause case, not a redistricting case. *See* Opp. at 12 (citing *Bethune-Hill*, 114 F. Supp. 3d at 339 (redistricting); *Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1070 (D. Ariz. 2014), *aff'd* 136 S. Ct. 1301 (2016) (redistricting)). Plaintiffs cite *Harris*, for example, as standing for the proposition that "'[W]hat motivated the [Governor and General Assembly] . . . is at the heart of this litigation,' and 'evidence bearing on what justifies [their actions] is [therefore] highly relevant.'" Opp. at 12 (quoting *Harris*, 993 F. Supp. 2d at 1070). As with other quotations in Plaintiffs' Opposition, what is most important about that quotation is the language Plaintiffs omitted from it. *Harris* did not concern the actions of a Governor or a General Assembly. Rather *Harris* concerned the actions of a redistricting commission. *Harris*, 993 F. Supp. 2d at 1046. The quote from *Harris* is: "what motivated *the Commission* to deviate from equal district populations is at the heart of this litigation, evidence bearing on what justifies these deviations is highly relevant." *Id.* at 1070. Although recognizing that courts have held that the legislative privilege does not extend to redistricting commissions, the court proceeded to address the balancing test applied to legislative privilege claims in redistricting cases. *Id.* Ultimately, however, because the actions at issue were those of the redistricting commission and not the legislature, the court did not need to decide whether any claimed relevancy was sufficient to invade the privilege. *Id.* at 1071.

Plaintiffs next argue that "the State concedes . . . that inquiry into legislative motive is permissible when proof of the legislature's discriminatory purpose is central to the claim." Opp. at 12-13 (citing Mot. 20 & n.17). The Non-Parties have made no such concession. Rather, in their moving papers, the Non-Parties explained that courts have recognized limited exceptions to

the principle that judicial inquiry into legislative motive is to be avoided, and that this case is not one of them.  The cases in which the limited exceptions apply involve challenges to statutes that, on their face, directly inhibit or have the inevitable effect of inhibiting a constitutional right. *South Carolina Educ. Ass'n. v. Campbell*, 883 F.2d 1251, 1259 (4th Cir. 1989).  The Non-Parties further explained that, although there are undoubtedly a wide variety of constitutional claims that may be proven through a demonstration of discriminatory purpose, courts have been reluctant to expand the category of cases for which they will delve into legislative motive.  This is by no means a concession that inquiry into legislative motive is permissible when proof of the legislature's discriminatory purpose is central to the claim.

To further their inaccurate view of the law, Plaintiffs cherry pick passages from the cases the Non-Parties rely on.  For example, Plaintiffs argue that, in *South Carolina Education Association*, the court acknowledged an exception to the principle that judicial inquiry into legislative motive is to be avoided when courts have deemed it a substantive element of the test of constitutionality.  Opp. at 13 (citing *South Carolina Educ. Ass'n*, 883 F.2d at 1259).  The court made no such broad statement.  Rather, as the Non-Parties explained, the court recognized an exception for "cases challenging statutes which *on their face* directly inhibit or have the inevitable effect of inhibiting freedom of speech or related constitutional rights.  *South Carolina Educ. Ass'n*, 883 F.2d at 1259.  Motive is thus relevant in these cases only insofar as the Courts have expressly deemed it a substantive element of the test of constitutionality."  *Id.* (emphasis added).

Similarly, Plaintiffs rely on *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 145 (S.D.N.Y. 2017) for the proposition that "evidence of legislative motive 'may be relevant in cases where the government is accused of engaging in discriminatory

16

conduct.'"  Opp. at 13 (quoting *Citizens Union of City of New York*, 269 F. Supp. 3d at 145).  But Plaintiffs have lifted that language from a paragraph of the court's decision addressing "discriminatory redistricting or other Equal Protection cases," which the court refused to follow and deemed "unhelpful."  *Citizens Union of City of New York*, 269 F. Supp. 3d at 145.  As explained above, courts have treated redistricting and voting rights cases differently because those cases not only concern the improper intent of legislators but also turn on the self-interest of legislators, which cannot be remedied through the ballot box.

Likewise, Plaintiffs point to a footnote in *United States v. O'Brien*, 391 U.S. 367 (1968) for the proposition that "statements of legislators may be relevant in 'cases where the very nature of the constitutional question requires an inquiry into legislative purpose.'"  Opp. at 13 (quoting *O'Brien*, 391 U.S. at 383 n.30).  That footnote, however, followed the Court's admonition that "[i]nquiries into congressional motives or purposes are a hazardous matter."  *O'Brien*, 391 U.S. at 383.  Nevertheless, the Court recognized that it is permissible to look at the statements of legislators "*in a very limited and well-defined class of cases* where the very nature of the constitutional question requires an inquiry into legislative purpose. The principal class of cases is readily apparent—those in which statutes have been challenged as bills of attainder."  *Id.* at 383 n.30 (emphasis added).

Plaintiffs also have taken language from *Michigan State A. Philip Randolph Inst.*, out of context.  The court did not broadly acknowledge, as Plaintiffs claim, that "'testimony and other communications reflecting a legislator's stated motivation might be the most direct form of evidence of discriminatory intent.'"  Opp. at 13 (citing *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *5).  What the court actually acknowledged was that "while testimony and other communications reflecting a legislator's stated motivation might be the most direct form of

evidence of discriminatory intent, it is not necessary to sustain a claim under the Equal Protection Clause or Voting Rights Act." *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *5.

Plaintiffs reject out of hand all of the other decisions the Non-Parties cite, devoting a single paragraph to addressing at least four pages of cases cited in the Non-Parties' moving papers, describing them as "older district-court decisions" and ignoring that each of them is a dormant Commerce Clause case in which the Court concluded inquiry into legislative motive should not be had.  Plaintiffs say nothing about *All. of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30 (1st Cir. 2005), in which the First Circuit recognized that when the challenged statute identifies its purpose and that purpose is not discriminatory, other statements about the legislation's purpose are not relevant because, at most, those other statements could show that a "potential discriminatory purpose was lurking in the background." *Id.* at 39.  And while this Court expressly rejected the notion that statements of individual legislators are relevant in a dormant Commerce Clause claim in *Apel v. Murphy*, 70 F.R.D. 651 (D.R.I. 1976), a decision that remains good law and has not been overruled, Plaintiffs dismiss that case as a "44-year-old decision" that is "irreconcilable with more recent decisions of the Supreme Court and First Circuit," without ever pointing the Court to a single decision that is contrary to or inconsistent with the holding in *Apel*.  Opp. at 14.  Plaintiffs give the decision in *Government Suppliers Consolidating Services, Inc. v. Bayh*, 113 F.R.D. 531 (S.D. Ind. 1990) even less treatment, stating only that "[t]he same goes for [it]."  Opp. at 14.

Finally, Plaintiffs attempt to distinguish *Miles-un-Ltd*. on the basis that the plaintiffs in that case did not seek to depose lawmakers for the purpose of demonstrating discriminatory intent.  Opp. at 14.  This is a misreading of *Miles-un-Ltd*.  The plaintiffs in that case expressly

"stated that [the] depositions are necessary in order to flush-out, from defendants, the issue of whether the enactment and enforcement of the moped reduction ordinance is nothing more [than] the continuation of a consistent custom, policy, practice and usage of the town to restrict, ban or make commercially impractical the rental of mopeds on Block Island." *Miles-un-Ltd.*, 917 F. Supp. at 101.  If there remains any question about whether the plaintiffs in *Miles-un-Ltd.* claimed that the ordinance was enacted with a discriminatory intent, other decisions issued by the court answer that question. *See, e.g.*, *Miles-un-Ltd., Inc. v. Town of New Shoreham*, No. 95-356-JM, Order, at 7, 11 (July 29, 1996), *available at* http://www.nhd.uscourts.gov/sites/default/files/opinions/96/96JM008.pdf (last visited August 30, 2020) (detailing plaintiffs' claim that the ordinance is a "pretext and a sham" and discriminates against interstate commerce and ruling that "[t]he ordinance . . . does not amount to a clearly discriminatory regulation by conferring a benefit on in-state business at the expense of out-of-state businesses").

Thus, for all the reasons set forth in the Non-Parties' moving papers, this Court should be guided by its prior decision in *Apel*, as well as the decisions in *Government Suppliers Consolidating Services* and *Miles-un-Ltd.*, all of which concluded that inquiry into legislative motives is not relevant in dormant Commerce Clause cases such as this.  Moreover, even if such evidence had some minimal relevancy, such relevancy would not be enough to invade these privileges.

### B.    Plaintiffs Already Have Access to Legislative Materials.

Plaintiffs argue that they need access to documents and testimony beyond the "official legislative sources," which the First Circuit has held are the strongest "statements of intent."  *All. of Auto. Mfrs.*, 430 F.3d at 39.  In doing so, Plaintiffs again resort to reliance on redistricting

cases.  Opp. at 16-17 (citing *Harris*, 993 F. Supp. 2d at 1070-71 (redistricting); *Favors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012) (redistricting); *Bethune-Hill*, 114 F. Supp. 3d at 341 (redistricting)).

As noted above, in *Harris*, the plaintiffs sought access to records of a redistricting commission, not legislative documents, thus it is of no import.  993 F. Supp. 2d at 1069-71. Moreover, all three cases are distinguishable because, as explained above, courts consider evidence of legislative intent in redistricting cases.  Again, this is a dormant Commerce Clause case, and in dormant Commerce Clause cases, the First Circuit has held that a court may "look to 'the statute as a whole,' including statutory text, context, and legislative history."  *Family Winemakers of California v. Jenkins*, 592 F.3d 1, 13 (1st Cir. 2010) (quoting *All. of Auto. Mfrs.*, 430 F.3d at 39).  Such context includes statements made by legislators during floor debates (in those jurisdictions where such statements are part of the legislative record).  *Id*. at 7 n.4.  It does not include the evidence sought here.

### C.   The Seriousness of the Constitutional Claim is Insufficient to Overcome the Privilege.

Landing on one of the few issues that is not in dispute, the parties agree that a dormant Commerce Clause claim, like all constitutional claims, is serious.  However, as even the cases Plaintiffs cite recognize, that seriousness is insufficient to overcome the privilege.  *See Dewine*, 2020 WL 4679015, at *5 (citing *ACORN v. Cty. of Nassau*, No. CV-05-2301 (JFB) (WDW), 2007 WL 2815810, at *3 (E.D.N.Y. Sept. 25, 2007) ("[N]either plaintiffs' submissions nor the court's own research has identified a single case in which the seriousness of the litigation overrode the assertion of legislative privilege as to testimony regarding a legislator's motivations.")).

**D.     The Non-Parties Did Not Have a Direct Role in the Allegedly Unlawful Conduct.**

Plaintiffs again default to reliance on redistricting cases for their assertion that the purported "direct role" of the Non-Parties in the enactment of the RhodeWorks Act is sufficient to overcome the privilege.  Opp. at 18 (citing *Bethune-Hill*, 114 F. Supp. 3d at 341 (redistricting); *Favors*, 285 F.R.D. at 220 (redistricting); and *Comm. for a Fair and Balanced Map*, 2011 WL 4837508, at *8 (redistricting)).  As explained above, however, redistricting cases are notably different because they concern the efforts of individual legislators to create "electoral districts in a way that provides a self-serving electoral benefit to the political party drawing the lines."  J. Pierce Lamberson, Note, Drawing the Line on Legislative Privilege: Interpreting State Speech or Debate Clauses in Redistricting Litigation, 95 Wash. U. L. Rev. 203, 210-11 (2017).  In such cases, legislators have a direct role in the allegedly unlawful conduct.  *See Citizens Union of City of New York*, 269 F. Supp. 3d at 169 (distinguishing redistricting cases from other claims that a law was enacted with a discriminatory purpose because in redistricting cases legislators are accused of self-dealing in connection with their legislative acts).

Outside the redistricting context, where a law is challenged as having been enacted with a discriminatory purpose, courts have held that "voting for a law or signing a bill does not render [an official's] role 'direct.'"  *Id.*  This is because "voting is an everyday function of lawmakers, and signing bills into law is an ordinary function of a governor."  *Id*.

Here, Speaker Mattiello and Rep. Ucci are just two of the dozens of legislators who voted for the RhodeWorks Act.  They cannot be said to have had a "direct role" in the allegedly unlawful conduct, nor do any statements they purportedly made about the Act make their role any more direct or evidence the intent of the House, let alone the General Assembly, as a whole.

21

Likewise, the Governor's act of signing the bill does not make her role "direct."  *See*

*Citizens Union of City of New York*, 269 F. Supp. 3d at 169 ("voting for a law or signing a bill

does not render [an official's] role 'direct.'").  Regardless of the extent of the Governor's or her

administration's involvement with the RhodeWorks Act, her public statements are a matter of

record and, beyond that, her communications and thought processes are protected by privilege

and so too are those of her administration.  *See Citizens Union of City of New York*, 269 F. Supp.

3d at 147 (It is impossible to "credibly divine what factual information actually influenced the

Governor's decisionmaking process simply by looking to the communications and work product

of [her] staff.").

### E.     Public Policy Reasons Strongly Counsel Against Production.

As to the final balancing factor, Plaintiffs claim there is no risk that public disclosure of

the information sought would chill future full and frank policy discussions because the Non-

Parties have spoken publicly about their motives or the rationale underlying the RhodeWorks

legislation. Opp. at 19.  Plaintiffs' argument makes several assumptions.  First, Plaintiffs assume

that the press reports are accurate and complete.  Second, Plaintiffs assume that everything that

can be gleaned from subpoenaed documents and everything that they would expect to learn

during depositions of the Non-Parties is already part of the public record.  If that were the case,

there would be no need for the subpoenaed information (the second factor in the balancing test),

and there surely would be no need to burden the Non-Parties with producing the documents and

information already available to Plaintiffs.  As is clear from the categories of documents

requested in the subpoenas, that is not the situation here.

Finally, Plaintiffs maintain that the threat to legislative independence is minimal or

nonexistent because the Non-Parties are not defendants.  Opp. at 19.  Again, the cases upon

which Plaintiffs rely are inapplicable. *Owen v. Independence*, 445 U.S. 622 (1980) did not

concern the legislative privilege or the balancing test at issue.  445 U.S. at 656.  *Gillock* is a

criminal case, *Bethune-Hill* and *Baldus v. Brennan*, No. 11-CV-562, 2011 WL 6122542 (E.D.

Wisc. Dec. 8, 2011) are redistricting cases and *United States v. Irvin*, 127 F.R.D 169 (C.D. Cal.

1989) is a voting rights case.  *Gillock*, 445 U.S. at 372; *Bethune-Hill*, 114 F. Supp. 3d at 342;

*Baldus*, 2011 WL 6122542, at *2; *Irvin*, 127 F.R.D at 174.  Here, the threat to legislative

independence is real.  The Governor and the part-time General Assembly rely heavily on the

work of staffers.  As numerous courts have recognized, intruding on the legislative privilege

threatens legislative independence and has the potential to stifle the free flow of information

between and among staffers and governmental officials.  *See Citizens Union of City of New York*,

269 F. Supp. 3d at 168; *see also Nkihtaqmikon v. Impson*, 251 F.R.D. 64, 66 (D. Me. 2008).

For all of these reasons, even if the legislative privilege is qualified, the circumstances of

this case do not warrant invading the privilege.

### III.   The Non-Parties Have Sufficiently Demonstrated that the Subpoenas Would Subject them to an Undue Burden.

Plaintiffs claim that they know better than the Governor (and her Executive Counsel who

provided a supporting declaration) whether the subpoenas would subject the Governor to an

undue burden.  Opp. at 21 ("[T]he State is incorrect when it maintains that seeking documentary

evidence or deposition testimony from the Governor would subject her to an undue burden.").

While Plaintiffs profess not to "denigrate the significance of the Governor's

responsibilities in addressing the COVID-19 pandemic and current difficult economic

circumstances," they nonetheless insist that the Governor can and must sit for a deposition in this

case and that her staff, which is already taxed with addressing every aspect of the State's

COVID-19 response, can and must be burdened with collecting and reviewing the potentially

mountainous documents Plaintiffs seek.  Opp. at 20-21.  Plaintiffs do not explain why requiring

the State's chief executive and commander-in-chief to prepare for and sit for potentially a 7-hour

deposition in the middle of a global pandemic would not be unduly burdensome.  Opp. at 20-21,

22.  Nor do Plaintiffs explain why requiring the Governor's staff to comb through years of files,

collect and review potentially responsive documents would not be unduly burdensome, other

than to say that they do not expect the Governor will be assembling responsive documents

herself.  Opp. at 20-21.

　　　Rather, Plaintiffs fall back on their assertion that "it is the Governor's personal state of

mind that is central here," a position unsupported by the law, as demonstrated above.  Plaintiffs

also question the Governor's position that the information and documents Plaintiffs seek are

either protected by privilege or are available from other sources, claiming that the Governor

"does not identify any other source that could speak to the Governor's intent."  Opp. at 22.  In

making this argument, Plaintiffs confuse the issues.  Information and documents concerning the

Governor's intent are necessarily protected by the legislative and deliberative process privileges

for all the reasons explained in the Governor's moving papers and above.  To the extent

Plaintiffs seek any information or documents not covered by privilege, those documents are

likely within the possession of the RIDOT, a party to this case, as set forth in detail in the table

appended as Exhibit A to the Governor's moving papers.

　　　Plaintiffs do not counter Speaker Mattiello and Rep. Ucci's claims of undue burden,

relegating their discussion of those claims to a footnote and describing their roles in responding

to the State's COVID-19 pandemic as "boilerplate."  Opp. at 22.[6]  Nevertheless, the basis for

---

[6] It is unclear from Plaintiffs' Opposition whether Plaintiffs continue to request depositions of
Speaker Mattiello and Rep. Ucci.  Plaintiffs have not withdrawn those subpoenas, but after
addressing the need for the Governor's deposition, Plaintiffs note: "Insofar as other officials are

Speaker Mattiello and Rep. Ucci's claims of undue burden are fully set forth in detail (and not in boilerplate) in the declarations of the Chief Legal Counsel to the Speaker (Doc. 88 and 90).

For their final entreaty, Plaintiffs unapologetically request that the State stipulate to a preliminary injunction to avoid the burden that otherwise would befall the Non-Parties if they were required to take their attention and that of their staffs away from the global COVID-19 pandemic to search for, collect, and review documents responsive to Plaintiffs' subpoenas and prepare and sit for depositions.  The law does not require the State to succumb to such strong-arm tactics or forego its rights in litigation to avoid the undue burden that would befall the Non-Parties.  Rule 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure protects against that. Pursuant to that rule, this Court should quash the subpoenas on the basis that they impose an undue burden on the Non-Parties.

## IV.   Plaintiffs Do Not Contest the Governor's Assertion of the Deliberative Process Privilege.

The Governor moved to quash the subpoenas on the basis of the legislative privilege and the deliberative process privilege and on the basis that they impose an undue burden on her. Plaintiffs' Opposition addresses the Non-Parties' legislative privilege and undue burden arguments but it does not address the Governor's arguments regarding application of the deliberative process privilege other than to note that Plaintiffs "do not dispute that materials of this sort potentially could be protected by those [legislative and deliberative process] privileges." Opp. at 1.  The words "deliberative process privilege" appear only three other times in Plaintiffs'

---

familiar with and have possession of the relevant documents, it may be that it would be sufficient for the State to provide such documents through those sources."  Opp. at 21.  If Plaintiffs are withdrawing their subpoenas for deposition testimony to Speaker Mattiello and Rep. Ucci, Defendants request that Plaintiffs communicate that withdrawal in writing to avoid the need to further burden the Court with arguments related to the undue burden that would be occasioned by requiring their depositions.

briefing, two of which are within quotes from the Non-Parties' moving papers and the third of which is a quote from a decision addressing privileges generally.  Opp. at 2, 20, 22.  By contrast, the Governor's moving papers reference the deliberative process privilege 61 times.[7]  The Governor takes this to mean that the Plaintiffs do not contest her assertion of the deliberative process privilege but, in any event, relies on the arguments made in her moving papers as to the application of the deliberative process privilege.

<u>**CONCLUSION**</u>

For these reasons, the Non-Parties respectfully request that the Court grant Non-Party Governor Gina M. Raimondo's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 85); Non-Party Speaker Nicholas Mattiello's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 87); and Non-Party Representative Stephen R. Ucci's Motion to Quash Subpoena Duces Tecum and Subpoena for Deposition Testimony (Doc. No. 89).

---

[7] While Plaintiffs assert that the Non-Parties' motions are "substantially duplicative of one another," the Non-Parties' motions are not substantially duplicative, especially as it relates to the deliberative process privilege.  Neither Speaker Mattiello nor Rep. Ucci invoke the deliberative process privilege, an executive branch privilege.

NON-PARTY GOVERNOR GINA M. RAIMONDO
NON-PARTY SPEAKER NICHOLAS MATTIELLO
NON-PARTY REPRESENTATIVE STEPHEN R. UCCI

By their attorneys,

| | |
|---|---|
| PETER F. NERONHA<br>ATTORNEY GENERAL | /s/ John A. Tarantino<br>John A. Tarantino (#2586)<br>jtarantino@apslaw.com |
| /s/ Michael W. Field | Patricia K. Rocha (#2793) |
| Michael W. Field, (#5809) | procha@aplslaw.com |
| Keith David Hoffmann (#9874) | R. Bart Totten (#5095) |
| Assistant Attorney General | btotten@apslaw.com |
| 150 South Main Street | Nicole J. Benjamin (#7540) |
| Providence, Rhode Island 02903 | nbenjamin@apslaw.com |
| (401) 274-4400, Extension 2380 | ADLER POLLOCK & SHEEHAN PC |
| Fax:  (401) 222-3016 | One Citizens Plaza, 8th Floor |
| mfield@riag.ri.gov | Providence, Rhode Island 02903 |
| khoffmann@riag.ri.gov | (401) 274-7200 |
| | Fax (401) 351-4607 |

## **CERTIFICATION**

I, the undersigned, hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF System to counsel of record on this 31st day of August 2020.

/s/ John A. Tarantino

27

1021723.v1