UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                        )
AMERICAN TRUCKING ASSOCIATIONS,         )
INC.; CUMBERLAND FARMS, INC.;           )
M&M TRANSPORT SERVICES, INC.; and       )
NEW ENGLAND MOTOR FREIGHT, INC.,        )
                                        )
        Plaintiffs,                     )
                                        )
             v.                         )   C.A. No. 18-378-WES
                                        )
PETER ALVITI, JR., in his official      )
capacity as Director of the Rhode       )
Island Department of Transportation;    )
and RHODE ISLAND TURNPIKE AND           )
BRIDGE AUTHORITY,                       )
                                        )
        Defendants.                     )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction, ECF No. 38. While it is a close call in several respects, for the reasons explained herein, Plaintiffs' Motion is DENIED and the matter will proceed to trial on the schedule currently in place.

I.  Background

In 2016, the Rhode Island General Assembly passed "The Rhode Island Bridge Replacement, Reconstruction, and Maintenance Fund Act of 2016", R.I. General Laws § 42-13.1-1 et seq. ("RhodeWorks"), permitting tolling on certain Rhode Island roads. Along with the

passage of RhodeWorks, the General Assembly made several legislative findings regarding the state of Rhode Island's bridges.  See id. § 42-13.1-2.  In particular, the General Assembly found twenty-three percent (23%) of Rhode Island's bridges to be structurally deficient and that "tractor trailers cause in excess of seventy percent (70%) of the damage to the state's transportation infrastructure, including Rhode Island bridges, on an annual basis".  Id.  Furthermore, the General Assembly determined that "a funding gap" existed between "the revenue needed to maintain all bridges in structurally sound and good condition and the annual amounts generated by current dedicated revenue sources".  Id.

To redress this funding gap, RhodeWorks vested the Rhode Island Department of Transportation ("RIDOT") with the authority to implement and collect tolls "for the privilege of traveling on Rhode Island bridges to provide for replacement, reconstruction, maintenance, and operation of Rhode Island bridges."  Id. § 42-13.1-4.  This statutory scheme permits tolling of "large commercial trucks only" and expressly prohibits collection of tolls on all other vehicles.  Id.

The RhodeWorks tolling system imposes some limits, sometimes referred to by the parties as toll "caps".  Pursuant to R.I. General Laws § 43-13.1-4(c) and (d), the daily maximum toll charge per individual truck subject to tolling is forty dollars ($40.00),

and those trucks making a "border-to-border through trip on Route 95" between Connecticut and Massachusetts are charged a maximum of twenty dollars ($20.00).  Additionally, an individual truck is subject to only one toll in each direction for a singular toll facility.  Id. § 43-13.1-4(b). The toll revenue is "used to pay the costs associated with the operation and maintenance of the toll facility," "the replacement, reconstruction, maintenance, and operation of Rhode Island bridges on the National Highway System[,]" or "any other use permitted under 23 U.S.C. § 129." R.I. Gen. Laws § 42-13.1-9.

Tolling under RhodeWorks began in June of 2018.  Compl. ¶¶ 61-62, ECF No. 1.  According to the Motion for Preliminary Injunction, a total of twelve tolling locations will be constructed on major highways across the state, and at least six of these locations on I-95 had become active as of March 2020.  Pls.' Mot. Prelim. Inj. and Mem. of Law in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' Mot.") 6, ECF No. 38.

On July 10, 2018, Plaintiffs, various trucking and transport companies,[1] filed a Complaint challenging the constitutionality of the toll scheme set forth in the RhodeWorks Act.[2]  See Compl. ¶ 1.

---

[1] The parties stipulated to dismissal of all claims of Plaintiff New England Motor Freight, Inc.; that plaintiff is no longer involved in the action.  See Joint Stipulation of Dismissal, ECF No. 94.

[2] The initial complaint was brought against Peter Alviti, in his capacity as director of RIDOT.  See Compl. ¶ 19.  The Court

Specifically, Plaintiffs allege that the tolling program set forth in RhodeWorks violates the Commerce Clause of the United States Constitution because it discriminates against interstate commerce and out-of-state truckers in both intent and effect; the tolls do not reflect a fair approximation of the use of the tolled facility; and the tolls are excessive in relation to the benefits conferred. Id. ¶¶ 3-10.

Defendants initially filed a Motion to Dismiss based on jurisdiction, which motion this Court granted.   See generally Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 21; Mar. 19, 2019 Opinion and Order, ECF No. 33.  Following Plaintiffs' successful appeal to the United States Court of Appeals for the First Circuit, the case returned to this Court.   See Mandate, ECF No. 37.   Shortly thereafter, Plaintiffs filed the pending Motion for a Preliminary Injunction.   In turn, Defendants filed an objection to Plaintiffs' motion, as well as a Motion for Judgment on the Pleadings.   See Defs.' Opp'n to Pls.' Mot. Prelim. Inj. ("Defs.' Opp'n"), ECF No. 48; Defs.' Mot. J. on Pleadings, ECF No. 41.   The Court held a hearing on both motions on May 28, 2020.   The parties submitted supplemental memoranda on various issues following that hearing.   In an Order issued on July 20,

---

later permitted the Rhode Island Turnpike and Bridge Authority ("RITBA") to intervene as a defendant in the case.   See Aug. 17, 2018 Text Order (granting RITBA's Motion to Intervene).

2020, the Court denied Defendants' Motion for Judgment on the Pleadings, and also made several preliminary rulings regarding evidentiary issues; and after further consideration with counsel, the Court set a schedule for expedited discovery and trial. See July 20, 2020 Order, ECF No. 72.  The Court now takes up the merits of Plaintiffs' Motion for Preliminary Injunction.

## II.  Legal Standard

To successfully obtain a preliminary injunction, a plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (citation omitted).  "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits can be held; it protects the 'last uncontested status which preceded the pending controversy.'" Gardner v. Larkin, No. 19-139 JJM, 2019 WL 6337686, at *3 (D.R.I. Nov. 27, 2019) (quoting Cohen v. Brown Univ., 809 F. Supp. 978, 999 (D.R.I. 1992). Moreover, "[a] preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." Peoples Federal Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (citation omitted).

III. Discussion

    A. Likelihood of Success on the Merits

    Because "[t]he likelihood of success on the merits is the critical factor in the preliminary injunction analysis," the Court begins its discussion there.  See Schofield v. Clark, 686 F. Supp. 2d 124, 126 (D. Mass 2010) (citation omitted).  Broadly, Plaintiffs allege one constitutional infirmity: violation of the Commerce Clause of the United States Constitution.[3]  See U.S. Const. art I, § 8, cl. 3.  The Commerce Clause grants power to Congress to regulate interstate commerce and has also been recognized through the so-called "dormant" Commerce Clause to "prohibit[] state laws that unduly restrict interstate commerce."  Tenn. Wine and Spirits Retailers Ass'n v. Thomas, 139 S. Ct. 2449, 2459 (2019).  "This dormant Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interest by burdening out-of-state competitors."  Cohen v. R.I. Turnpike and Bridge Auth., 775 F. Supp. 2d 439, 443 (D.R.I. 2011)(quoting Doran v. Mass. Turnpike Auth., 348 F.3d 315, 318 (1st Cir. 2003)).  The parties agree that the applicable test is set forth in

---

    [3] The Court is mindful in evaluating the likelihood of success on the merits that state statutes are presumed to be constitutional.  See Alliance of Auto. Mfs. v. Gwadosky, 304 F. Supp. 2d 104, 110 (D. Me. 2004); see also Davies Warehouse Co. v. Bowles, 321 U.S. 144, 153 (1944) ("State statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared.").

Northwest Airlines, Inc. v. County of Kent, MI, 510 U.S. 355, 369 (1994).   Consequently, the highway tolls at issue here are constitutionally permissible under the Commerce Clause if they "(1) [are] based on some fair approximation of use of the facilities, (2) [are] not excessive in relation to the benefits conferred, and (3) do[] not discriminate against interstate commerce."   Id. at 369.

Plaintiffs argue that the tolls violate each part of the Northwest Airlines test.[4]   The Court takes each issue in turn.

### 1. Discrimination Against Interstate Commerce

"[T]he presence of discrimination would swiftly dispose of the case"; thus, the Court takes up this argument first.[5]   See Cohen, 775 F. Supp. 2d at 446.   Plaintiffs contend that the RhodeWorks tolls discriminate against interstate commerce in both purpose and effect.   Pls.' Mot. 9.

### a. Discriminatory Purpose

As to discriminatory purpose/intent, Plaintiffs argue that this case is "rare" in that state officials "were candid about

---

[4] For reasons more fully explained in the Court's July 20, 2020 Order, only the discrimination and fair approximation elements of the Northwest Airlines test are at issue.   See July 20, 2020 Order 3-6.

[5] Where a statute is found to be discriminatory under the Commerce Clause, the burden shifts to the state to show that there is a "legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives."   Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 9 (1st Cir. 2010).

their intent to place the bulk of the burden for maintaining Rhode
Island's bridges on out-of-state entities while sparing local
users of those facilities from that burden[.]"  Pls.' Mot. 9.  As
evidence, Plaintiffs primarily point to several public statements
made by top Rhode Island officials purporting to demonstrate this
intent.[6]  Id. at 10-12.  Additionally, Plaintiffs contend that
Rhode Island officials were aware, based on a state study, that
the tolls would disproportionately impact out-of-state truckers,
and they chose to institute this tolling scheme because of that
effect.  Id. at 11-12.  Finally, Plaintiffs say that exempting

---

[6] Plaintiffs' Complaint references statements made by Governor
Gina Raimondo, House Speaker Nicholas Mattiello, Representative
Stephen Ucci, RIDOT Director Alviti, and the Governor's
spokespersons; these quotes are primarily extracted from newspaper
articles or other print media.  See Compl. ¶¶ 79-81, 87-88, 92.
For example, Plaintiffs offer the following quote from Governor
Raimondo as evidence of discriminatory purpose: "The reason I
prefer the tolling proposal is because the majority of the burden
is on out-of-state truckers and out-of-state companies who are
using—and I would say abusing—our roads."  See Compl. ¶ 80 (quoting
Patrick Anderson & Katherine Gregg, Raimondo: Plan shifts burden
off R.I., Providence Journal, Oct. 29, 2015); see also id. ¶ 80
(quoting Mary MacDonald, Improved business climate positions R.I.
for growth, Providence Business News, Dec. 23, 2015 (citing Speaker
Mattiello: "a lot of the burden for the repair of our bridges,
overpasses and infrastructure is passed on to out-of-state
truckers"; "[a] lot of the cost gets shifted to out-of-state
truckers")); id. ¶ 83 (quoting Jim Hummel, Taking a Toll, The
Hummel Report, Mar. 19, 2018 (citing Director Alviti as stating
"the majority of tolls that are going to be paid here are from out
of state trucks")); id. ¶ 87 (quoting Patrick Anderson, R.I. House
passes Raimondo's truck-toll plan, The Providence Journal, Feb.
11, 2016, (citing Rep. Stephen Ucci: "The tolling relies on 60
percent revenue from out of state trucks who would have never paid
to come through this state")).

"single-unit commercial trucks" from tolling demonstrates a discriminatory purpose.[7] Id. at 13.

In response, Defendants argue that the legislative findings set forth in the RhodeWorks Act rebut Plaintiffs' claim that the statute was enacted with discriminatory intent. Defs.' Opp'n 26-27. Rather, Defendants contend, the legislative findings and the text of the statute are facially neutral — "[a]ll large commercial trucks are treated the same." Id. at 27-28. Second, Defendants argue that the Court may not consider statements made by Rhode Island officials because they are hearsay and that it must limit its consideration to the text of the statute, legislative findings, and legislative history. Id. at 26-29. In any event, Defendants say, even if the Court were to consider these statements, Plaintiffs cannot meet their burden to overcome a presumption of constitutionality necessary to demonstrate a likelihood of success on the merits. Id. at 26, 31.

To determine whether a law is motivated by an intent to discriminate against interstate commerce, the Court looks to "the statute as a whole, including statutory text, context, and legislative history, but [] also consider[s] whether the statute

---

[7] As proof of Plaintiffs' latter two arguments, Plaintiffs again primarily point to statements made by Rhode Island officials. See Pls.' Mot. 12 (citing Speaker Mattiello, Rep. Ucci, and Director Alviti, Compl. ¶¶ 87-88); id. at 12-13 (citing Gov. Raimondo, Compl. ¶ 91-93).

was closely tailored to achieve the legislative purpose the state asserted." Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 13 (1st Cir. 2010) (internal citations omitted). "Where . . . a party presents circumstantial evidence of an allegedly discriminatory purpose in support of a dormant Commerce Clause argument, it is that party's responsibility to show the relationship between the proffered evidence and the challenged statute." Alliance of Auto Mfrs. v. Gwadosky, 430 F.3d 30, 39 (1st Cir. 2005).

After considering all evidence proffered in support of the discriminatory purpose argument, perhaps a close call, the Court finds that Plaintiffs have not met their burden. First, the statute enjoys a presumption of constitutionality; second, it is not clear from the statutory text or context that the General Assembly intended to discriminate against out-of-state truckers. Indeed, the text of the statute and legislative findings are silent with respect to any distinction between in-state and out-of-state commercial trucks. See R.I. Gen. Laws § 42-13.1-2.

The circumstantial evidence Plaintiffs offer for proof of discriminatory purpose — primarily, statements made by Rhode Island officials - falls short.[8] These statements, as set forth

_____

[8] The Court has addressed the potential hearsay implications of these statements should Plaintiffs seek to admit them at trial. See July 20, 2020 Order 8-12. Notwithstanding that discussion, the Court may consider the statements here, in the context of a motion for preliminary injunction. Asseo v. Pan American Grain Co., 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay

in the Complaint, are largely selective and presented without context. And when considered against the text of the statute and legislative findings, this circumstantial evidence is not enough to meet Plaintiffs' burden of demonstrating a likelihood of success at this juncture. To be clear, this holding in no way presages the final outcome of Plaintiffs' claim at trial. With the benefit of factual development and/or testimony at trial, Plaintiffs may well be able to show that the RhodeWorks Act was enacted with an intent to discriminate against interstate commerce.[9] On this record, however, the Court cannot conclude that Plaintiffs have shown a likelihood of success on the merits sufficient to be granted this extraordinary relief.[10]

---

materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding.").

[9] At this point, it remains unclear whether and in what form evidence related to the officials' statements will be introduced at trial. Defendants have asserted claims of legislative and executive privilege as to three Rhode Island officials—Governor Raimondo, Speaker Mattiello, and Representative Ucci—which are pending before the Court; the Court addressed the evidentiary issues in detail in its July 20, 2020 Order.

[10] Given that Plaintiffs have not met their burden of demonstrating a likelihood of success on the merits of discriminatory purpose, the Court need not decide at this stage whether intent alone is sufficient to establish a dormant Commerce Clause claim. See Alliance of Auto Mfs., 430 F.3d at 36 n.3 ("[T]here is some reason to question whether a showing of discriminatory purpose alone will invariably suffice to support a finding of constitutional invalidity under the dormant Commerce

b. Discriminatory Effect

Plaintiffs' argument as to discriminatory effect is two-fold. First, they say that the RhodeWorks tolling structure utilizes toll caps which function as a flat fee that "necessarily will have a discriminatory effect on out-of-state and interstate travelers." Pls.' Mot. 14; see Pls.' Aug. 17, 2020 Letter to Court 6-7, ECF No. 95. Second, Plaintiffs assert that the State's own data demonstrates that the toll cap structure would impact out-of-state truckers disproportionately. Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' Reply") 18, ECF No. 55; Pls.' Aug. 17, 2020 Letter 7.

Defendants counter that the RhodeWorks Act sets forth a system of "frequency-based transponder discounts", not flat charges, which are "no different than the frequency-based tolling programs that federal courts. . . have upheld as constitutional."  Defs.' Opp'n 33.  Additionally, Defendants contend that Plaintiffs' evidence of discriminatory impact is "nothing more than . . . speculative hypothesis".[11]  Defs.' Opp'n 42.

_____

Clause.") This issue will be addressed as the case gets closer to trial.

[11] Defendants also suggest that Plaintiffs are precluded from arguing that the tolls are "flat taxes" and not a fair approximation of use based on the doctrine of judicial estoppel. Defs.' Opp'n 19.  Defendants argue that Plaintiffs' current position is inconsistent with its arguments before this Court and the First Circuit that the tolls were not taxes in conjunction with Defendants' Motion to Dismiss. Id. at 20.  However, the Court agrees with Plaintiffs that the arguments related to Defendants'

Plaintiffs principally rely on two cases to support their argument that the structure of the RhodeWorks tolls necessarily discriminates against out-of-state trucks: American Trucking Associations, Inc. v. Scheiner, 483 U.S. 266 (1987), and Trailer Marine Transport Corp. v. Rivera Vazquez, 977 F.2d 1 (1st Cir. 1992).  In Scheiner, the Supreme Court invalidated Pennsylvania statutes which imposed flat fees in the form of annual marker and axle taxes.  Scheiner, 483 U.S. at 273-75, 284, 286.  Initially, Pennsylvania charged vehicles not registered in the state an annual $25 marker fee, while vehicles registered in state were exempt from the charge because it was deemed a part of the registration fee.  Id. at 273-74.  Later, Pennsylvania changed the fee from $25 to $5, and imposed an axle tax on trucks, tractor trailers, and combination vehicles.  Id. at 274.  At the same time, registration fees for Pennsylvania trucks were reduced in the amount of the newly imposed axle tax.  Id. at 274-75.  The Supreme Court held that the taxes did not pass the "internal consistency test" and that "[i]n practical effect, since [the flat taxes] impose a cost per mile on appellants' trucks that is approximately five times as

---

Motion to Dismiss concerned whether the tolls were taxes as that term is defined under the Tax Injunction Act, and not whether such tolls were constitutional under the Commerce Clause.  Pls.' Reply 10.  Therefore, judicial estoppel does not preclude Plaintiffs from asserting either argument.

heavy as the cost per mile borne by local trucks, the taxes are plainly discriminatory." Id. at 286.

In Trailer Marine, the United States Court of Appeals for the First Circuit invalidated a Puerto Rican statute that imposed a $35 annual fee for all vehicles and trailers and a discounted $15 fee for trailers staying in Puerto Rico for 30 days or less, fees that were used for an accident compensation fund. 977 F.2d at 10-11. The First Circuit observed that a "transient trailer pays almost half the ordinary flat fee, effectively paying five or six times as much per accident" as the trailer based in Puerto Rico year-round. Id. at 10. The First Circuit noted that Scheiner was controlling in such a situation, and ultimately found that the cost was "borne disproportionately by out-of-state transient trailers." Id. at 11.

Defendants argue that this caselaw is inapposite, and instead point the Court to Doran v. Massachusetts Turnpike Authority, 348 F.3d 315 (1st Cir. 2003), where the First Circuit upheld a Massachusetts program providing per-use discounts on tolls for users who purchased a certain transponder from the Massachusetts Transportation Authority. Doran, 348 F.3d at 317, 321. In that case, the First Circuit distinguished the tolls at issue from the flat taxes in Scheiner, noting that they were imposed on a per-use basis, that interstate travelers pay the same tolls as

residents, and that a traveler may take advantage of the discount program regardless of residence.  Id. at 320, 321.

The RhodeWorks Act toll scheme does not clearly mirror the facts of any of these cases; it falls somewhere between.  And while the Plaintiffs argue that the "caps make the tolls function, in significant respects, like a flat fee[,]" see Pls.' Aug. 17, 2020 Letter 6, this issue remains for trial where evidence of concrete tolling data will show its practical effect.  At trial, with the benefit of that evidence, the Court will be better suited to determine whether the tolls operate in a similar manner to the fees held to be unconstitutional in Schiener and Trailer Marine.  But the Court cannot say at this stage, as Plaintiffs suggest, that a discriminatory effect is "inevitable", see Pls.' Mot. 15, based on those cases.

More critically, the record lacks sufficient data demonstrating the actual effect of the tolling on interstate commerce.  A plaintiff challenging a statute for discriminatory effect under the dormant Commerce Clause "is required to submit some probative evidence of adverse impact." Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 36 (1st Cir. 2007).  Plaintiffs primary evidence on this point is a 2015 study commissioned by the State which suggested that without the installation of caps, out-of-state trucks would pay 55% of the tolls, compared to 60% of the tolls with toll caps in place.  See Compl. ¶ 85.  But this study

15

was commissioned before enactment of RhodeWorks, and nearly three years before the first toll gantry went live.  See id.  Plaintiffs suggest that "there is no reason to believe that the study's projections do not paint an accurate picture of RhodeWorks' current and likely future effect[,]" Pls.' Aug. 17, 2020 Letter 7, but the Court sees it differently.  While these projections may be accurate and may be borne out by the actual data which will be presented at trial, the margins are thin and the Court cannot say the evidence presented demonstrates a likelihood of success based upon these projections alone.  See id.; see also Alliance of Auto Mfrs., 430 F.3d at 40-41 (finding on summary judgment that a proponent of a dormant Commerce Clause claim must offer evidence that is "significantly probative" and not based on "speculation and surmise").  Consequently, Plaintiffs cannot meet their burden as to discriminatory effect on the current record.

    2. Fair Approximation

    Under the dormant Commerce Clause, the tolls at issue must be "based on some fair approximation of use of the facilities".  Nw. Airlines, 510 U.S. at 369.  It is not necessary that the toll "exactly equals the costs of maintenance or the benefits conferred; all that is required is that the tolls reflect a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed."  Cohen, 775 F. Supp. 2d at 449-50 (citations omitted).

Plaintiffs contend that the RhodeWorks toll caps "eliminate the connection between the amount paid and the use of the tolled facility" because "trucks that accumulate vastly different daily mileage on Rhode Island roads will pay identical aggregate tolls." Pls.' Mot. 18.  Furthermore, Plaintiffs argue, the overwhelming majority of vehicles traveling over R.I. bridges do not pay tolls, and a very small subset — commercial trucks — are left to pay the entire cost of repairing bridges.  Id. at 19.  As evidence, Plaintiffs reference a 2017 RIDOT study which estimated that of the vehicles that passed through the proposed toll locations, "more than 1,666,000 [are] automobiles . . . 55,100 [are] single unit trucks . . .[and] 44,211 [are] tractor trailers."  Id. at 19 (citing Compl. ¶¶ 46-49).  Additionally, Plaintiffs argue that there is no justification for imposing tolls solely on large trucks based on the theory that these trucks cause a disproportionate share of wear and tear.  Id. at 19-21.  On this point, Plaintiffs direct the Court to a United States Department of Transportation study cited in the Complaint, which Plaintiffs say demonstrates that combination trucks account for approximately twenty percent of the wear and tear on bridges, while passenger vehicles account for more than two-thirds of maintenance costs.  See id. at 19; Compl. ¶¶ 115.  Plaintiffs also contend that "additional factors contribute to the deterioration of bridges, including weather[.]" Pls.' Reply 27.

In response, Defendants argue that Plaintiffs' contention as to this issue is fundamentally flawed because commercial trucks do not bear the entire cost of maintaining Rhode Island's bridges; rather, tolls are one of several funding sources the state uses for this purpose.[12]  Defs.' Opp'n 45-46.  Furthermore, Defendants cite two RhodeWorks legislative findings - that "just one, fully-loaded five-axle (5) tractor trailer has the same impact on the interstate as nine thousand six hundred (9,600) automobiles" and that "tractor trailers cause in excess of seventy percent (70%) of the damage to the state's transportation infrastructure" — and argue that Plaintiffs' evidence is insufficient to rebut these findings.  Id. at 51 (citing R.I. Gen. Laws § 42-13.1-2(8)).

In a non-highway tolling context, the First Circuit has described the fair approximation inquiry as "essentially a question of allocation" where a court "ask[s] whether the government is charging each individual entity a fee that is reasonably proportional to the entity's use, and whether the government has reasonably drawn a line between those it is charging and those it is not."  Industria y Distribucion de Alimentos v. Trailer Bridge, 797 F.3d 141, 145 (1st Cir. 2015).  A toll which differentiates among users may still be constitutionally

---

[12] For example, Defendants point to FY 2018, during which they say that the State spent over $201 million on "bridge-related activities" but collected just over $7 million in toll revenue. See Defs.' Aug. 6, 2020 Letter 10, ECF No. 91.

permissible so long as it "'reflects rational distinctions among different classes'. . . so that each user, on the whole, pays some approximation of his or her fair share of the state's cost for maintaining [b]ridge[s]". Selevan v. New York Thruway Auth., 584 F.3d 82, 98 (2d Cir. 2009) (quoting Evansville-Vanderburgh Airport Auth. Dist. V. Delta Airlines, Inc., 405 U.S. 707, 718 (1972)).

This inquiry is largely "fact-dependent". See id. (holding that the fair approximation question was "too fact-dependent to be decided upon examination of the pleadings"). Indeed, in its Supplemental Brief, Defendants suggest that evidence relevant to this determination could include: "the number and size of different classes of vehicles using the tolled facilities"; "data [] showing the number of tolled versus non[-]tolled vehicles at each gantry"; "analysis of the impact or damage caused by tolled versus non[-]tolled vehicles for bridges at issue"; and "analysis of all other revenue sources contributing to the maintenance, repair and replacement of bridges at issue".[13]  Defs.' Suppl. Mem. Following June 18, 2020 Chambers Conference 6-7, ECF No. 68.

---

[13] Defendants also suggest that "cost data showing costs incurred on an annual basis to maintain, repair and replace the bridges at issue" and "analysis of toll revenue generated from the collection of tolls at each of the tolled facilities" could be relevant to this determination at trial. See Defs.' Suppl. Mem. Following June 18, 2020 Chambers Conference, 6-7.

Although the parties offer some data as to the number of vehicles traversing Rhode Island roads and studies as to the impact of commercial trucks on bridges, the evidence in the record as it stands is insufficient to make a determination as to whether the tolls fairly approximate the use of the facilities. Consequently, the Court cannot say that Plaintiffs have demonstrated a likelihood of success on the merits as to this issue.

B. Irreparable Harm, Balance of the Equities, & Public Interest

In addition to demonstrating a likelihood of success on the merits, a party moving for a preliminary injunction must demonstrate irreparable harm, that the equities tips in favor of the movant, and that a preliminary injunction is in the public interest. NuVasive, Inc., 954 F.3d at 443. While these remaining three requirements likely cut in favor of Plaintiffs, "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (quoting New Comm Wireless Servs.,

Inc. v. SpiritCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (brackets omitted).

IV.  Conclusion

    For the reasons stated herein, Plaintiffs' Motion for a Preliminary Injunction, ECF No. 38, is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: September 10, 2020

21