UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN TRUCKING | : | |
| ASSOCIATIONS, INC.; CUMBERLAND | : | |
| FARMS, INC.; M&M TRANSPORT | : | |
| SERVICES, INC.; and NEW ENGLAND | : | |
| MOTOR FREIGHT, INC., | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | C.A. No.:  1:18-cv-00378-WES-PAS |
| | : | |
| PETER ALVITI, JR., in his official | : | |
| capacity as Director of the Rhode Island | : | |
| Department of Transportation; Rhode | : | |
| Island Turnpike and Bridge Authority | : | |
| *Defendants.* | : | |

**MOTION FOR CERTIFICATION OF ORDER**
**FOR INTERLOCUTORY APPEAL**

Non-Party Governor Gina M. Raimondo, Non-Party Speaker Nicholas Mattiello and

Non-Party Representative Stephen Ucci (collectively, the "Non-Parties") and Defendants Peter

Alviti, Jr., in his capacity as Director of the Department of Transportation ("RIDOT") and the

Rhode Island Turnpike and Bridge Authority (together with RIDOT, the "Defendants," and

together with the Non-Parties, the "Moving Parties") hereby move this Court to amend its

Opinion and Order (Doc. 129) to include a certification under 28 U.S.C. § 1292(b)[1] so that the

Moving Parties may seek interlocutory appellate review of the following controlling questions:

1.     Whether the legislative privilege is absolute when a facially neutral statute is

challenged under the dormant Commerce Clause.

---

[1] The Moving Parties also reserve their right to appeal under 28 U.S.C. § 1291 and to seek a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.  *See In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) and *In re Grand Jury Subpoena*, 909 F.3d 26 (1st Cir. 2018).

2.      Whether the legislative and deliberative process privileges may be invaded in a dormant Commerce Clause case for the purpose of establishing whether a facially neutral statute was enacted with a discriminatory purpose.

## **INTRODUCTION**

This Court's ruling that the Plaintiffs may invade the legislative and deliberative process privileges in a dormant Commerce Clause challenge to a facially neutral statute is unprecedented.  The Court's Opinion and Order impermissibly invades the legislative privilege, which is designed to enable and encourage officials performing legislative functions to discharge their duties and devote their best efforts and full attention to the public good, and the deliberative process privilege, which protects the decision-making process to safeguard the quality and integrity of governmental decisions.  Recognizing that these privileges exist, but concluding that those privileges should be "breached," the Court's Opinion and Order (1) permits Plaintiffs to take the depositions of the Governor, the State's chief executive officer and commander-in-chief, the Speaker and Representative Ucci, as well as that of RIDOT's consultant, CDM Smith, Inc. ("CDM Smith") on privileged matters, and (2) requires each of them to search for and produce pre-enactment, pre-decisional and privileged documents, work product and communications.

The Court's Opinion and Order is premised on two erroneous conclusions of law:  (1) that the legislative privilege is qualified even when a facially neutral statute is challenged under the dormant Commerce Clause and (2) that the legislative and deliberative process privileges may be invaded in a dormant Commerce Clause case for the purpose of establishing whether a facially neutral statute was enacted with a discriminatory purpose.  At a minimum, there is substantial ground for difference of opinion as to these two controlling questions of law.

As detailed more fully herein, permitting the Court's Opinion and Order to stand without interlocutory appellate review would be wrong for several reasons.  It would be wrong as a doctrinal matter because the legislative privilege is absolute in a dormant Commerce Clause challenge to a facially neutral statute and, as such, the Moving Parties and CDM Smith should not be required to produce documents protected by the legislative privilege or to testify as to matters protected by the privilege.  It also would be wrong as a doctrinal matter because neither the legislative privilege nor the deliberative process privilege may be invaded in a dormant Commerce Clause case for the purpose of establishing whether a facially neutral statute was enacted with a discriminatory purpose.  More practically, permitting the Court's Opinion and Order to stand without interlocutory appellate review will severely prejudice the Moving Parties' rights.  Indeed, once the privileges are invaded and Plaintiffs are given access to privileged documents and information there will be no going back.  That bell cannot be unrung.  Permitting the Court's Order and Opinion to stand also would be wrong as a policy matter because it would set a precedent that will have a dangerous chilling effect on the free flow of communication to and within the General Assembly, within RIDOT and as between RIDOT and its consultants such as CDM Smith.  It also would set a precedent that will have an equally dangerous and chilling effect on the free flow of communications from legislators and other state officials to their constituents and the public.  Finally, permitting the Court's Opinion and Order to stand also would be wrong as a matter of judicial economy because it would require Defendants to call at trial some or all of the 38 senators and the 75 representatives who voted on the RhodeWorks Act

so that an accurate and complete picture of the intent of the legislature as a whole may be presented.[2]

## LEGAL STANDARD

A district court may certify for interlocutory review an order that (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and when (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *Camacho v. P.R. Ports Auth*., 369 F.3d 570, 573 (1st Cir. 2004); *see also In re San Juan Dupont Plaza Hotel Fire Litig*., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (agreeing to hear certified interlocutory appeal involving work product doctrine); *Lincoln-Dodge, Inc. v. Sullivan*, No. 06-cv-70, 2009 WL 578541, at *1-2 (D.R.I. Mar. 4, 2009) (Smith, J.) (certifying interlocutory appeal); *Cabot v. Lewis*, C.A. No. 13-11903-FDS, 2015 U.S. Dist. LEXIS 89257, at *2-3 (D. Mass. July 8, 2015) (certifying interlocutory appeal of decision related to psychotherapist-patient privilege).  Under Federal Rule of Appellate Procedure 5(a), a district court may amend its order to add the certification. Fed. R. App. P. 5(a)(3).

## ARGUMENT

I.      **The Preconditions for § 1292(b) Interlocutory Review Are Met.**

The United States Supreme Court has recognized that the preconditions for § 1292(b) review – "'a controlling question of law,' the prompt resolution of which 'may materially

---

[2] Defendants in no way concede that the intent of any individual legislator bears on the intent of the legislature as a whole and continue to maintain, as they have in this case (and as supported by law), that the text of the statute is the only evidence of the legislature's intent.  However, if this Court's Opinion and Order is permitted to stand, Defendants will be left with no option other than to seek discovery from other members of the General Assembly, not merely the two members that Plaintiffs hand picked after reading newspaper articles.

advance the ultimate termination of the litigation' – *are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence*." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110 (2009) (emphasis added).  Thus, the Supreme Court instructed, "district courts should not hesitate to certify an interlocutory appeal in such cases." *Id.*

Courts in this circuit and elsewhere have certified important questions of privilege.  *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1010 n.1  (agreeing to hear certified interlocutory appeal involving work product doctrine); *Cabot*, 2015 U.S. Dist. LEXIS 89257, at *2-3 (certifying interlocutory appeal of decision related to psychotherapist-patient privilege); *see also Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 722 (5th Cir. 1980), opinion supplemented at 628 F.2d 932, certiorari denied, 450 U.S. 1041 (question of law concerning scope of permissible discovery); *United States v. Real Prop. & Improvements Located at 2441 Mission St.*, No. C 13-2062 SI, 2014 U.S. Dist. LEXIS 47135, at *1-2 (N.D. Cal. Apr. 4, 2014) (issuing order certifying an interlocutory appeal pursuant to § 1292(b) from a ruling that the Fifth Amendment privilege did not apply); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 148584, at *7-8 (C.D. Cal. May 17, 2010) (issuing order certifying an interlocutory appeal pursuant to § 1292(b) from a ruling concerning the waiver of a privilege).

As demonstrated more fully herein, the Court's ruling on the legislative and deliberative process privileges is of special consequence here.  Consistent with the Supreme Court's admonition, this Court should not hesitate to certify an interlocutory appeal in this case.

### A.  The Opinion and Order Involves Controlling Questions of Law.

An order involves a controlling question of law when it is "'serious to the conduct of the litigation, either practically or legally.'"  *Atrion Networking Corp. v. Marble Play, LLC*, 31 F.

Supp. 3d 357, 359 (D.R.I. 2014) (Smith, J.) (quoting *Bank of N.Y. v. Hoyt*, 108 F.R.D. 184, 190

(D.R.I. 1985)); *accord Ruiz v. Rhode Island,* No. 16-507 WES, 2018 U.S. Dist. LEXIS 128710,

at *5 (D.R.I. Aug. 1, 2018) (Smith, J.); *United States v. R.I. Dep't of Corr.*, No. 14-78-S, 2015

U.S. Dist. LEXIS 125946, at *3 (D.R.I. Sept. 21, 2015) (Smith, J.).  An order may involve a

controlling question of law when appellate review of the issue will impact discovery.  *R.I. Dep't*

*of Corr.*, 2015 U.S. Dist. LEXIS 125946, at *3.

Thus, as the Supreme Court held in *Mohawk*, when a privilege ruling involves a new

legal question or is of special consequence, the order most likely involves a controlling question

of law.  *Mohawk Indus.*, 558 U.S. at 110; *accord In re Ohio Execution Protocol Litig*., No. 15-

0305, 2016 U.S. App. LEXIS 23716, at *5 (6th Cir. Feb. 22, 2016) ("*Mohawk* supports the

conclusion that discovery orders qualify for interlocutory review if the § 1292(b) factors are

met").  Consistent with that holding, courts in this circuit and elsewhere have concluded that

certain questions concerning the application of privileges are controlling questions of law.  *In re*

*Lupron Mktg. & Sales Practices Litig*., 313 F. Supp. 2d 8, 9 (D. Mass. 2004) (concluding, on this

prong, that a determination as to whether a party may invoke certain privileges is serious to the

conduct of the litigation); *see also In re Windstream Commc'ns., LLC*, No. 18-0305, 2018 U.S.

App. LEXIS 21997, at *2 (6th Cir. Aug. 7, 2018) (concluding that the application of Fed. R.

Evid. 502 to a claim of privilege is a controlling question of law).

Here, the questions of law at issue are serious to the conduct of the litigation both

practically and legally.  Appellate review of those questions has the potential to dramatically

impact discovery and the disposition of this case.  For example, if the Court's Opinion and Order

stands, the Non-Parties will be required to open the inner offices of government and engage in a

searching review for documents and communications that might suggest that some state official,

6

individual legislator, staffer, agency employee or anyone else for that matter had some improper or discriminatory purpose in mind during the deliberative and legislative processes leading up to the enactment of the RhodeWorks Act.  That process, of course, will be burdensome and time consuming.  In addition, the Non-Parties and CDM Smith will be required to sit for depositions and, while the Court's Opinion and Order initially describes the limit of those depositions as "narrowly focused," matters related to documents obtained by Plaintiffs and specifically related to RhodeWorks is anything but narrow.  Moreover, as counsel for the Moving Parties argued during the hearing on the Motions to Quash, Defendants cannot sit idly by while Plaintiffs seek to unearth the intent of the legislature as a whole from two hand-picked members of the General Assembly without conducting similar discovery as to other members of the General Assembly.

If, however, interlocutory review is permitted and the Court's Opinion and Order is reversed, the trajectory of the litigation would look dramatically different.  As explained more fully in Section I(C) herein, this Court's decision denying Plaintiffs' Motion for Preliminary Injunction presages that without access to the privileged documents Plaintiffs cannot sufficiently overcome the legislative findings and demonstrate, beyond a reasonable doubt, that the RhodeWorks Act is unconstitutional because it was enacted with a discriminatory purpose. Thus, the Opinion and Order involves controlling questions of law and appellate review of those questions has the potential to dramatically impact the course of discovery and the disposition of this case.

### B.  There Are Substantial Grounds for a Difference of Opinion on the Controlling Legal Questions.

Substantial grounds for a difference of opinion exist when an issue involves "'one or more difficult and pivotal questions of law not settled by controlling authority.'"  *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at1010 n.1 (quoting *McGillicuddy v. Clements*, 746

F.2d 76, 76 n.1 (1st Cir. 1984)).  Substantial grounds for difference of opinion regarding the

correctness of a decision exist when:

> (1) the question is difficult, novel and either a question on which
> there is little precedent or one whose correct resolution is not
> substantially guided by previous decision; (2) the question is
> difficult and of first impression; (3) a difference of opinions exists
> within the controlling circuit; or (4) the circuits are split on the
> question.

*In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).  Here, this Court's Opinion and Order

itself highlights the substantial grounds for a difference of opinion as to the privileges.

**1.  There are substantial grounds for a difference of opinion on the first controlling question of law.**

As to the first controlling question of law – whether the legislative privilege is absolute

when a facially neutral statute is challenged under the dormant Commerce Clause – this Court

recognized that since the decision in *United States v. Gillock*, 445 U.S. 360 (1980), "the Supreme

Court has offered scant guidance as to the contours of the state legislative privilege."  Opinion

and Order at 9.  This Court's Opinion and Order further recognized that lower courts have

divided on this question, following "one of two paths."  *Id*.  The Opinion and Order proceeded to

detail the first path, which concludes that apart from certain discrete categories of cases,

legislative privilege is absolute, and the second path, which concludes that the state legislative

privilege is inherently qualified and require a case-specific balancing of interests.  *Id*.  After

identifying these conflicting approaches, this Court ultimately chose the second path and

determined that the legislative privilege is qualified even when a facially neutral statute is

challenged under the dormant Commerce Clause because "'cases applying a qualified privilege

represent the better, and controlling, legal rule.'"  *Id*. at 15-16 (quoting *Kay v. City of Rancho

Palos Verde*, No. CV 02-03922 MM RZ, 2003 WL 25294710, at *12-14 (C.D. Cal. Oct. 10,

8

2003)).  Notably, *Kay* was not a dormant Commerce Clause case.  *See Kay*, 2003 WL 25294710, at *1-2.  The claims at issue in *Kay* were that an ordinance was an unlawful bill of attainder and violated the ex post facto, due process and equal protection clauses. *Id.* at *2.  Thus, while *Kay* concluded that the qualified privilege represents the better and controlling legal rule, it reached no such conclusion relative to dormant Commerce Clause cases.  *Id.* at *14.  Even more significantly, however, *Kay* recognized that "the federal courts have not adopted a consistent approach to application of the legislative privilege in civil suits."  *Id.*

In concluding that the legislative privilege is qualified in this dormant Commerce Clause case, this Court recognized that *Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I.*, another case decided by a court in this Circuit, had reached a different conclusion in a dormant Commerce Clause case, but this Court dismissed that case on the basis that it "inexplicably focused on the question of [legislative] immunity."  Opinion and Order at 12 (citing *Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I.*, 917 F. Supp. 91 (D.N.H. 1996)).  However, other courts have read the *Miles-Un-Ltd., Inc.* decision as the Moving Parties have – as treating the legislative privilege as absolute.  *See, e.g.*, *Kay*, 2003 WL 25294710, at *12 (categorizing *Miles-Un-Ltd., Inc.* as a case adopting an "absolutist approach" to the legislative privilege); *Mich. State A. Philip Randolph Inst. v. Johnson*, No. 16-cv-11844, 2018 U.S. Dist. LEXIS 87623, at *12 (E.D. Mich. Jan. 4, 2018) (describing *Miles-Un-Ltd., Inc.* as adopting an absolute legislative privilege); *Hobart v. Stafford*, 784 F. Supp. 2d 732, 764 (S.D. Tex. 2011) (recognizing that *Miles-Un-Ltd., Inc.* "applied an absolute evidentiary privilege").

Finally, the Court's conclusion on this first question of law cannot be reconciled with the many cases that have concluded that the legislative privilege is absolute except in federal criminal cases brought against legislators and in redistricting and voting rights cases.  *See*

*Greater Birmingham Ministries v. Merrill,* No. 2:15-cv-02193-LSC, 2017 U.S. Dist. LEXIS

233149, (N.D. Ala. Mar. 13, 2017)*; Lee v. Va. State Bd. of Elections*, Civil Action No.

3:15CV357 (HEH-RCY), 2015 U.S. Dist. LEXIS 171682, at *10-11 (E.D. Va. Dec. 23, 2015);

*Clayland Farm Enters. v. Talbot Cty*., No. GLR-14-03412, 2018 U.S. Dist. LEXIS 169159 (D.

Md. Oct. 1, 2018); *Pulte Home Corp. v. Montgomery Cty.*, No. GJH-14-3955, 2017 U.S. Dist.

LEXIS 82935 (D. Md. 2017).

   **2.   There are substantial grounds for a difference of opinion on the second
          controlling question of law.**

   The second controlling question of law is whether the legislative and deliberative process

privileges may be invaded in a dormant Commerce Clause case for the purpose of establishing

whether a facially neutral statute was enacted with a discriminatory purpose.  This Court

answered that question in the affirmative.  In doing so, this Court recognized that its conclusion

that documents and communications bearing on the intent or motivation of individual legislators

and the Governor, and their staff persons and consultants, are relevant "arguably conflicts with"

this Court's prior decision in *Apel v. Murphy*, 70 F.R.D. 651 (D.R.I. 1976).  Opinion and Order

at 19.  This Court concluded, however, that the decision in *Apel* "is inconsistent with" the United

States Supreme Court's decision in *Bacchus Imports v. Dias*, 468 U.S. 263, 270 (1984) and the

First Circuit's decision in *Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 39 (1st Cir. 2005).

Opinion and Order at 19 n.11.

   Notably, however, cases decided after *Bacchus* continued to apply *Apel* to conclude that

evidence of discriminatory motive of lawmakers is irrelevant to a dormant Commerce Clause

claim.  *See, e.g.*, *Gov't Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 539 (S.D.

Ind. 1990); *see also Harris v. City of Wichita*, No. 94-3357, 1996 U.S. App. LEXIS 209, at *7

(10th Cir. Jan. 3, 1996) (relying on *Apel* for the proposition that ordinarily, the subjective

motivation of governing bodies is irrelevant to the validity of their enactments).  Thus, at a minimum, there is a split of authority among the district courts as to whether *Apel* remains good law and, if it does, absent interlocutory appellate review, there will be a split of authority even within this Court on whether evidence of a discriminatory motive of lawmakers is relevant to a dormant Commerce Clause claim.

Moreover, this Court read the First Circuit's decision in *Alliance of Auto. Mfrs.,* in a way different from the Moving Parties and other courts.  There, the First Circuit recognized that when the challenged statute identifies its purpose and that purpose is not discriminatory, other statements about the legislation's purpose are not relevant because, at most, those other statements could show that a "potential discriminatory purpose was lurking in the background." *All. of Auto. Mfrs.*, 430 F.3d at 39.

Consequently, at a minimum, there are substantial grounds for a difference of opinion on each of the foregoing questions of law; and, therefore, certification under § 1292(b) is appropriate.

### C.  Interlocutory Review Will Materially Advance the Resolution of the Litigation.

"'The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law.'" *Philip Morris, Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (quoting 16 Charles Alan Wright, et al., Federal Practice and Procedure § 3930 at 432 (2d ed. 1996)).  The question is whether "[t]he contours of the trial will be much the same regardless of the disposition of the . . . issue." *Hoyt*, 108 F.R.D. at 189.  When a privilege ruling involves a new legal question or is of special consequence, this prong is likely satisfied.  *Mohawk Indus.*, 558 U.S. at 110; *accord In re Ohio Execution Protocol Litig.*, 2016 U.S. App. LEXIS 23716, at *5.  Courts often have found

that a decision on a discovery issue is one that may materially advance the resolution of the litigation.  19 Moore's Federal Practice – Civil § 203.31 (2020); *see, e.g., Cabot*, 2015 U.S. Dist. LEXIS 89257, at *5-6 (concluding that a decision on whether the psychotherapist-patient privilege had been waived would materially advance the ultimate termination of the litigation). This is especially so when the privileged documents "contain information that is at the heart of [the] litigation."  *Nowak v. Lexington Ins. Co.*, No. 05-21682-CIV-MORE, 2006 U.S. Dist. LEXIS 92386, at *2 (S.D. Fla. July 12, 2006).  After all, absent interlocutory review, post-judgment appeal of the Court's order that the privileges have been breached would be of little value as "'it might be impossible to undue the effects of disclosure'" to the adverse parties. *Coleman v. Sterling,* No. 09-CV-1594 W (BGS), 2012 U.S. Dist. LEXIS 199099, at *1-2 (S.D. Cal. Feb. 21, 2012) (certifying question of waiver of the attorney client privilege under § 1292(b) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 717-18 (9th Cir. 2003) (en banc)).

Here, this Court has already recognized the significance of the privileged information to the advancement and/or termination of the litigation.  In ruling on Plaintiffs' Motion for Preliminary Injunction, this Court already determined that if Plaintiffs were limited to reliance on publicly reported statements purportedly made by the Moving Parties, their claim of discrimination would fail.  Memorandum and Order (Doc. 105).  In the Court's opinion, quotes that "are largely selective and presented without context," *id*. at 10-11, "fall[] short" of what would be necessary to prove an intent to discriminate.  *Id*. at 10.  Thus, the Court concluded that "when considered against the text of the statute and legislative findings, this circumstantial evidence is not enough to meet Plaintiffs' burden of demonstrating a likelihood of success at this juncture."  *Id*. at 11.  If such circumstantial evidence were insufficient at the preliminary

injunction stage, where evidentiary standards are considerably relaxed, it would be woefully inadequate at trial.

Recognizing this deficiency, Plaintiffs have served subpoenas on the Governor, the Speaker and Representative Ucci seeking privileged documents and testimony on privileged matters. Defendants have argued that even then, such testimony and documents would not and cannot bear on whether the legislature, as a whole, enacted the RhodeWorks Act with a discriminatory purpose. But, this Court determined in its Opinion and Order that the legislative and deliberative process privileges may be "breached" so that Plaintiffs may attempt to develop evidentiary support for their claim that the RhodeWorks Act was enacted with a discriminatory intent. Opinion and Order at 6-29. Review of this Court's determination that the privileges should be breached will have a profound effect on the litigation. If, on appeal, the First Circuit determines that the Non-Parties' invocation of the privileges is proper, Plaintiffs will be left with the publicly available newspaper articles and the purported statements therein. Even if either or both of them are ultimately admissible at trial, this Court has already determined that both of them are insufficient for Plaintiffs to prevail on their claim of discriminatory intent. If, however, the First Circuit upholds this Court's denial of the Motions to Quash, its ruling will considerably shape the remainder of discovery and the trial of this case. As noted above, denial of the Motions to Quash also will force open the door for Defendants to call at trial some, if not all, of the 38 senators and the 75 representatives who voted on the RhodeWorks Act. Thus, for all of these reasons, an appeal will materially advance the ultimate resolution of the litigation.

## **CONCLUSION**

For these reasons, the Defendants and the Non-Parties respectfully request that the Court

certify its October 23, 2020 Opinion and Order for interlocutory appeal under 28 U.S.C. §

1292(b).

NON-PARTY GOVERNOR GINA M. RAIMONDO
NON-PARTY SPEAKER NICHOLAS MATTIELLO
NON-PARTY REPRESENTATIVE STEPHEN R. UCCI
By their attorneys,

PETER F. NERONHA
ATTORNEY GENERAL

/s/ Michael W. Field
Michael W. Field, (#5809)
Keith David Hoffmann (#9874)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400, Extension 2380
Fax:  (401) 222-3016
mfield@riag.ri.gov
khoffmann@riag.ri.gov


PETER ALVITI, JR., in his official
capacity as Director of the Rhode Island
Department of Transportation
By His Attorney,

PETER F. NERONHA
ATTORNEY GENERAL

/s/ Michael W. Field
Michael W. Field, (#5809)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400, Extension 2380
Fax:  (401) 222-3016
mfield@riag.ri.gov

/s/ John A. Tarantino
John A. Tarantino (#2586)
jtarantino@apslaw.com
Patricia K. Rocha (#2793)
procha@aplslaw.com
R. Bart Totten (#5095)
btotten@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN PC
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 274-7200
Fax (401) 351-4607


RHODE ISLAND TURNPIKE
AND BRIDGE AUTHORITY
By its attorneys,

/s/ John A. Tarantino
John A. Tarantino (#2586)
jtarantino@apslaw.com
Patricia K. Rocha (#2793)
procha@aplslaw.com
R. Bart Totten (#5095)
btotten@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN PC
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 274-7200
Fax (401) 351-4607

## <u>CERTIFICATION</u>

I, the undersigned, hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF System to counsel of record on this 27th day of October 2020.

<u>/s/ John A. Tarantino</u>

1034193.v1