UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
AMERICAN TRUCKING ASSOCIATIONS,    )
INC.; CUMBERLAND FARMS, INC.;      )
M&M TRANSPORT SERVICES, INC.; and  )
NEW ENGLAND MOTOR FREIGHT, INC.,   )
                                   )
     Plaintiffs,                   )
                                   )
         v.                        )   C.A. No. 18-378 WES
                                   )
PETER ALVITI, JR., in his official )
capacity as Director of the Rhode  )
Island Department of Transportation;)
and RHODE ISLAND TURNPIKE AND      )
BRIDGE AUTHORITY,                  )
                                   )
     Defendants.                   )
_____)

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL**

I.   Background[1]

In their quest to prove a discriminatory motive behind "The Rhode Island Bridge Replacement, Reconstruction, and Maintenance Fund Act of 2016", R.I. Gen. Laws § 42-13.1-1 to -17 ("RhodeWorks"), Plaintiffs issued subpoenas seeking documents and testimony from Governor Gina M. Raimondo, Speaker Nicholas Mattiello, Representative Stephen R. Ucci, and a company named CDM Smith.  See Subpoenas, ECF Nos. 75-78, 80-81, 110-11.  Defendants and the government officials who received subpoenas filed Motions

---

[1] This case is described in greater detail in the Court's September 10, 2020 Memorandum and Order, ECF No. 105, and its October 23, 2020 Opinion and Order, ECF No. 129.

to Quash, ECF Nos. 85, 87, 89, and 120, based on legislative privilege, deliberative process privilege, and undue burden. This Court denied the Motions. See October 23, 2020 Op. and Order ("Opinion"), ECF No. 129.

In the Motions to Quash, the State argued that state legislative privilege is absolute in dormant Commerce Clause cases. See, e.g., Governor's Mot. to Quash 13-18, ECF No. 85. This Court disagreed, concluding that "the cases applying a qualified privilege represent the better, and controlling, legal rule." Opinion 15-16 (quoting Kay v. City of Rancho Palos Verdes, No. CV 02-03922 MMM RZ, 2003 WL 25294710, at *14 (C.D. Cal. Oct. 10, 2003)). Furthermore, the State contended that neither the legislative privilege nor the deliberative process privilege can be breached under these circumstances because the motivations of the Governor, Speaker, and Representative are irrelevant to the dormant Commerce Clause inquiry. See, e.g., Governor's Mot. to Quash 25-32. Again, the Court held otherwise, stating in part:

> "circumstantial evidence of an allegedly discriminatory purpose" is relevant in dormant Commerce Clause cases if the party offering it "show[s] the relationship between the proffered evidence and the challenged statute." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 39 (1st Cir. 2005); see Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 270 (1984) (citations omitted) ("A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose . . . or discriminatory effect[.]").

Opinion 19 (footnote omitted).

The State continues to press these arguments in the instant Motion for Certification of Order for Interlocutory Appeal, ECF No. 131.[2]  The State seeks certification of two overlapping questions for interlocutory appeal:  (1) "Whether the legislative privilege is absolute when a facially neutral statute is challenged under the dormant Commerce Clause[,]" and (2) "[w]hether the legislative and deliberative process privileges may be invaded in a dormant Commerce Clause case for the purpose of establishing whether a facially neutral statute was enacted with a discriminatory purpose."  Mot. for Certification of Order for Interlocutory Appeal ("Mot. for Cert.") 1-2, ECF No. 131.  For the reasons that follow, the Motion is DENIED.

II. Discussion

"[I]nterlocutory certification of this sort 'should be used sparingly and only in exceptional circumstances . . . .'" In re San Juan Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1998) (citation and quotations omitted); see also Camacho v. P.R. Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004) (such appeals are "hen's-teeth rare"); In re Air Crash at Georgetown, Guyana, 33 F. Supp. 3d 139, 155 (E.D.N.Y. 2014) ("Even where all three criteria are satisfied, district courts have unfettered discretion to deny certification if other factors counsel against it." (citation and quotations omitted)).  The Court may certify an order

---

[2] The State has also filed a Notice of Appeal, ECF No. 145.

for interlocutory appeal if the Court is "of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). The Court concludes that none of the factors is met.

1.  Controlling Question of Law

"In the context of motions for interlocutory certification, the term 'controlling' means 'serious to the conduct of the litigation, either practically or legally.' . . . But, 'a legal question cannot be termed "controlling" if litigation would be conducted in much the same manner regardless of the disposition of the question upon appeal.'" Atrion Networking Corp. v. Marble Play, LLC, 31 F. Supp. 3d 357, 359 (D.R.I. 2014) (quoting Bank of N.Y. v. Hoyt, 108 F.R.D. 184, 188 (D.R.I. 1985)). Of relevance is whether the legal question will significantly affect "the scope of evidence in a complex case, . . . the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which [this case] will engender." Hoyt, 108 F.R.D. at 189.

Here, compliance with the subpoenas at issue would not be particularly time-consuming. Indeed, the State has represented that if the Court's Opinion and Order denying the Motions to Quash stands, the State will need just two weeks to produce the documents

4

previously withheld.  See Joint Mot. for the Entry of the Proposed Am. Joint Schedule, Ex. A, at 2, ECF No. 135-1.  Thus, interlocutory appeal would not save time for the Court; nor would it save much time or expense for the State.  Moreover, the Court previously declined to issue a preliminary injunction sought by Plaintiffs, so Plaintiffs have been paying, and would continue to pay tolls during the pendency of an interlocutory appeal.  See Sept. 10, 2020 Mem. and Order, ECF No. 105 (denying preliminary injunction).  Because the tolls are ongoing, the Court has placed this case on an accelerated trial calendar, which would be interrupted and substantially delayed by interlocutory appeal.

While the issues at summary judgment or trial might be altered somewhat by evidence obtained through these subpoenas, the general shape and scope of the case will not.  Nonetheless, the State makes the hollow threat that "permitting the Court's Opinion and Order to stand . . . would require Defendants to call at trial some or all of the 38 senators and the 75 representatives who voted on the RhodeWorks Act."  Mot. for Cert. 3.  But there can be no real question that the motivations of the Governor, Speaker, and Representative have import beyond those of other legislators.  As the Court has stated, "[c]ommon sense dictates that the intent of [individuals who spearheaded the legislation] has greater relevance than that of other legislative actors."  Opinion 21.

Furthermore, the mere fact that privilege is at stake does not render the issues controlling. The Supreme Court has stated that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 109 (2009). Though "an order to disclose privileged information intrudes on the confidentiality of attorney-client communications[,] deferring review until final judgment does not meaningfully reduce the ex ante incentives for full and frank consultations between clients and counsel." Id.; see also United States v. Woodbury, 263 F.2d 784, 788 (9th Cir. 1959) ("[T]he claim of privilege here asserted is collateral to the basic issues of this case, and cannot be regarded as presenting a 'controlling question of law' as those words are used in the statute."). The same is true here; disclosure of documents and testimony that lie within the scope of the legislative or deliberative process privileges will remain rare. Government officials will continue to benefit from privilege protections regardless of what occurs in this case. In sum, the questions here are not controlling.

2. Substantial Ground for Difference of Opinion

"[I]t can be concluded that there is a 'substantial ground for difference of opinion' about an issue when the matter involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" Philip Morris Inc. v. Harshbarger, 957

6

F. Supp. 327, 330 (D. Mass. 1997) (quoting McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).

Here, the State raises two legal issues. The first is whether the state legislative privilege is absolute in dormant Commerce Clause cases. See Mot. for Cert. 1. It is not. "[M]ost courts to address the issue have determined that the privilege is qualified in all cases, requiring a 'balancing of the legitimate interests on both sides.'" Opinion 14 (quoting McDonough v. City of Portland, No. 2:15-CV-153-JDL, 2015 WL 12683663, at *2 (D. Me. Dec. 31, 2015)); see also Opinion 14 n.7 (collecting cases). Cases stating otherwise are in the minority and often suggest the privilege is a qualified one "in approach, if not by name." Opinion 13 n.6 (citing Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I., 917 F. Supp. 91, 100 (D.N.H. 1996)). Moreover, for the reasons previously given by this Court, the in-circuit case relied upon by the State is unconvincing. See Opinion 12 ("[Miles-Un-Ltd.] dealt with privilege, but the court's discussion inexplicably focused on the question of immunity."). While the State's argument for an absolute privilege is not frivolous, neither is it substantial; it is, at best, a minority view supported by rickety case law.

The second legal issue for which the State seeks interlocutory review is whether the legislative and deliberative process privileges can ever be overcome for the purpose of ascertaining

the motives of individual legislators or executive branch officials.  See Mot. for Cert. 2.  The State concedes that the deliberative process privilege is qualified.  See Governor's Mot. to Quash 18 (citing Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995)).  And, as discussed, the state legislative privilege is qualified as well.  Thus, these questions necessarily involve fact-specific balancing inquiries.  But the State makes no argument that the manner in which the Court applied the balancing test deserves interlocutory review; rather, the State argues that a balancing test should not have been applied at all.  See Mot. for Cert. 2-3.  This boils down to the contention that individual legislators' motives are irrelevant.

    The State relies primarily on Apel v. Murphy, 70 F.R.D. 651 (D.R.I. 1976), in which this Court held that legislative intent is irrelevant to the dormant Commerce Clause.  See id. at 655; Mot. for Cert. 10-11.  But, as noted in the Opinion and Order, that holding is inconsistent with more recent Supreme Court and First Circuit precedent.  See Opinion 19 n.11.  "A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose . . . or discriminatory effect[.]"  Bacchus Imports, 468 U.S. at 270 (citations omitted).  The State points to two cases for the proposition Apel nonetheless remains good law.  See Mot. for Cert. 10-11.  In the first case, the court doubted whether the Supreme Court really meant what it

8

said. See Gov't Suppliers Consolidating Servs., Inc. v. Bayh, 133 F.R.D. 531, 538 (S.D. Ind. 1990) ("While recent Supreme Court opinions have clearly contained discussions of lawmakers' motives, no collection of Justices has yet grounded a majority opinion on the conclusion that the secret motive of the lawmakers was illegitimate."). This question – at least within the First Circuit – is no longer up for debate. See All. of Auto. Mfrs., 430 F.3d at 39 ("[C]ircumstantial evidence of an allegedly discriminatory purpose" is relevant if the party offering it "show[s] the relationship between the proffered evidence and the challenged statute."). The second case directly contradicts the State's argument: "Discovery into motive may be permissible when the alleged constitutional violation turns on an unconstitutional motive, that is, where the government's motive is what makes the action unconstitutional." Harris v. City of Wichita, Sedgwick Cty, Kan., No. 94-3357, 1996 WL 7963, at *3 (10th Cir. Jan. 3, 1996) (citation and quotations omitted).

This Court concludes that there is not substantial ground for difference of opinion regarding the legal questions identified by the State.

3. Materially Advance Ultimate Termination of Litigation

"Certification is . . . appropriate only in the narrow class of cases in which 'an intermediate appeal may avoid protracted litigation.'" Fed. Hous. Fin. Agency v. UBS Americas, Inc., 858

9

F. Supp. 2d 306, 337 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013) (quoting Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866 (2d Cir. 1996)). "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." SEC v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000). For the same reasons that the legal questions here are not controlling, neither would early appeal advance the ultimate termination of the litigation. Moreover, the discovery process may run into significant challenges if compliance with the subpoenas is delayed by an appeal. As of January 4, 2021, neither Speaker Mattiello nor Representative Ucci will be members of the Rhode Island legislature. See Dan McGowan & Edward Fitzpatrick, With Votes Still to Count, Mattiello Concedes in House District 15 Race, Boston Globe (Nov. 4, 2020), https://www.bostonglobe.com/2020/11/04/metro/with-votes-still-count-mattiello-concedes-house-district-15-race/; Jacob Marrocco, Ucci Opens Up on Decision Not to Run for Reelection, Johnston Sunrise (July 2, 2020), https://cranstononline.com/stories/ucci-opens-up-on-decision-not-to-run-for-reelection,154282. And while at the time of this writing the Governor has declared she is not going to join President-elect Biden's administration as Secretary of Health and Human Services, her statement was careful to allow

for other potential positions for which she has been rumored to be a possible candidate.  See Adam Cancryn & Alice Miranda Ollstein, Raimondo Says She Won't Be Biden's Health Secretary, Politico (Dec. 3, 2020), https://www.politico.com/news/2020/12/03/raimondo-biden-hhs-secretary-442672.  If anything, interlocutory appeal may hinder the discovery process necessary to the ultimate termination of litigation.

III. Conclusion

For the reasons given herein, Defendants' Motion for Certification of Order for Interlocutory Appeal, ECF No. 131, is DENIED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
District Judge
Date:  December 7, 2020