UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

AMERICAN TRUCKING ASSOCIATIONS,      :
INC.; CUMBERLAND FARM, INC.;          :
M&M TRANSPORT SERVICES, INC.;         :
NEW ENGLAND MOTOR FREIGHT, INC.,      :
                                      :
        Plaintiffs,                   :
                                      :
    v.                                :        C.A. No. 18-378-WES
                                      :
PETER ALVITI, JR., in his Official Capacity as  :
Director of the Rhode Island Department of      :
Transportation; RHODE ISLAND TURNPIKE   :
AND BRIDGE AUTHORITY,                 :
                                      :
        Defendants.                   :

**REPORT AND RECOMMENDATION REGARDING
ATTORNEY'S FEES AND COSTS**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This intensely litigated dormant Commerce Clause case challenging Rhode Island's

RhodeWorks, a tolling program to pay for bridge construction and maintenance by imposing tolls

only on large commercial trucks, has been a roller coaster ride for the parties. At the District

Court, Plaintiffs American Trucking Associations, Inc., Cumberland Farm, Inc., M&M Transport

Services, Inc., and New England Motor Freight, Inc., (collectively "ATA") prevailed on all issues

following a bench trial. Am. Trucking Associations, Inc. v. Alviti, 630 F. Supp. 3d 357, 399-400

(D.R.I. 2022) ("Because RhodeWorks fails to fairly apportion its tolls among bridge users based

on a fair approximation of their use of the bridges, was enacted with a discriminatory purpose,

and is discriminatory in effect, the statute's tolling regime is unconstitutional under the dormant

Commerce Clause."). ATA's victory was largely snatched away, however, when the First Circuit

sustained much of the appeal brought by Defendants Peter Alviti, Jr., in his official capacity as

Director of the Rhode Island Department of Transportation, and the Rhode Island Turnpike and Bridge Authority (collectively, the "State"). <u>Am. Trucking Associations, Inc. v. Rhode Island Tpk. & Bridge Auth.</u>, 123 F.4th 27, 53 (1st Cir. 2024) ("judgment of the district court is *affirmed in part* and *reversed in part*" and "the case is remanded for the entry of judgment in accord with this opinion").

In <u>Am. Trucking Associations, Inc.</u>, the First Circuit rejected as error the District Court's analysis of RhodeWorks' tolling of large trucks, exempting small trucks and cars from the tolling regime. 123 F.4th at 42, 50-51. The First Circuit affirmed the District Court only with respect to its holding that ATA had proven that one aspect of RhodeWorks – two of three tolling "caps" – had actual discriminatory effect on interstate commerce and violated the dormant Commerce Clause. <u>Id.</u> at 42-45. However, the First Circuit rejected ATA's vigorous argument that this discriminatory effect tainted all of RhodeWorks; instead, it held that, "although RhodeWorks caps are unconstitutional, they are severable." <u>Id.</u> at 53. As its holding, the First Circuit's decision provides that "RhodeWorks may go into effect (absent the caps) without offending the dormant Commence Clause." <u>Id.</u> at 53. With that mixed result (though tipping strongly in favor of the State), pursuant to Fed. R. App. P. 39(a)(4), the First Circuit ruled that "[e]ach party shall bear its own costs." <u>Am. Trucking Associations, Inc.</u>, 123 F.4th at 53.

Now pending before the Court are the motions[1] of both parties (ECF Nos. 261, 266), each asking the Court to declare it to be the prevailing party and to award it all of its applied-for attorney's fees and costs. Specifically, relying on 42 U.S.C. § 1988, ATA claims that it is the

---

[1] The timing of the motions for fees and costs was set by the District Court. <u>Am. Trucking Associations, Inc.</u>, 630 F. Supp. 3d at 400.

only prevailing party and should be awarded a total of $21,086,280.20,[2] which consists of $20,071,291.10 in attorney's fees (including almost $2 million for work done by ATA's in-house counsel) and $1,014,999.14 in costs.[3]  For its part, the State asks the Court to declare that it is the only prevailing party and to tax costs in its favor based on its Bill of Costs in the amount of $199,281.15, with post-judgment interest in accordance with 28 U.S.C. § 1961(a).  ECF Nos. 262-63.  Pursuant to § 1988, in reliance on the proposition that ATA's claim was frivolous because it lacked an evidentiary foundation, the State also asks for an award of all of its reasonable attorney's fees ($7,610,974) and its non-taxable costs (those associated with production of electronically stored information – $789,795.19)[4] in the total amount of $8,400,769.19.  ECF Nos. 261, 263-64.  And both ATA and the State have asked the Court to allow each of them to return to the Court to supplement their respective fees/costs applications by seeking an award of the fees/costs incurred in prosecuting the instant fees/costs motions.

The fee/costs motions have been referred to me.  Consistent with mandate of Fed. R. Civ. P. 54(d)(2)(D) and the agreement of the parties, I am addressing them by report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1).

# I.    Standard of Review and Applicable Law

## A.    Prevailing Party

### i.    Who/What is Prevailing Party

---

[2] This figure, which comes from ATA's brief, ECF No. 266 at 8, is off by $10.04 from the total as reflected in ATA's submissions; the actual total is $21,086,290.24, calculated in reliance on the underlying totals in the Tager and Pianka Declarations, ECF Nos. 268, 271.

[3] ATA seeks an award of its taxable and nontaxable costs only pursuant to § 1988 based on Fed. R. Civ. P. 54(d)(2); it has not filed a Bill of Costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).

[4] This is reduced from the State's original request because the State withdrew its request for expert witness fees in its reply brief.  ECF No. 281 at 8 n.7.

In federal cases, parties are ordinarily required to "bear their own attorney's fees absent explicit fee-shifting authority." Suárez-Torres v. Panadería Y Repostería España, Inc., 988 F.3d 542, 551 (1st Cir. 2021) (internal quotation marks omitted). Whether the Court is considering an award of taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) or attorney's fees and costs pursuant to Fed R. Civ. P. 54(d)(2), such as by reference to 42 U.S.C. § 1988, the starting point is to define who is the "prevailing party." See generally Northstar Healthcare Consulting, LLC v. Magellan Health, Inc., Civil Action No. 1:17-CV-1071-ODE, 2020 WL 10486261, at *1 (N.D. Ga. June 11, 2020). As established by the Supreme Court in the seminal decision, Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598 (2001), a party can be considered a prevailing party if it can show a "'material alteration of the legal relationship of the parties'" and a "judicial *imprimatur* on the change." Id. at 604-05 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, (1989)). If a party "accomplish[ed] what [they] sought to achieve by the lawsuit," but the outcome does not meet both elements of the Buckhannon test, it is not a prevailing party. Garavanian v. JetBlue Airways Corp., 149 F.4th 95, 98-100 (1st Cir. 2025) (quoting Buckhannon, 532 U.S. at 605), petition for hearing and rehearing en banc docketed, No. 24-1843 (1st Cir. Sept. 4, 2025).

What a plaintiff achieved from a case may be derived by examination of its complaint by comparison with the ultimate judicial determination; if the complaint evinces an objective that was not furthered by the resolution of the suit, "it would be anomalous to permit the plaintiff to recast his claim once the outcome is known in order to assume the appearance of a victor." Cady v. City of Chicago, 43 F.3d 326, 329-331 (7th Cir. 1994). Thus, if the comparison of the relief requested by a plaintiff in the complaint with what it achieved in litigation does not reflect judicial *imprimatur* on an asserted claim, such a plaintiff's post-judgment emphasis on the

vindication of important federal rights to support a fee application may be disregarded as "a post-hoc attempt to re-characterize [the] claims." Anheuser-Busch, Inc. v. Schnorf, No. 10-cv-1601, 2012 WL 1068765, at *7 (N.D. Ill. Mar. 29, 2012) (internal quotation marks omitted) (in commerce clause case, plaintiffs' lack of success in achieving goal stated in complaint results in holding that "reasonable fee is zero"). Similarly, if the filing of the complaint results in an outcome consistent with what a plaintiff sought, but the favorable result does not flow from a judicial determination issued in the case, that plaintiff is not a prevailing party. Garavanian, 149 F.4th at 98-102 (antitrust consumer plaintiffs deemed not to be "prevailing party" because favorable outcome they sought – an injunction of a proposed merger – issued in parallel case later brought by government, after which plaintiffs' earlier-filed case was dismissed as moot).

Whether a party is a prevailing party is a question of law. San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, Case No. 18cv967-GPC(MSB), 2023 WL 7597630, at *4 (S.D. Cal. Nov. 14, 2023), appeal dismissed, No. 23-4145, 2024 WL 2930981 (9th Cir. Mar. 21, 2024). The term "prevailing party" has the "same legal meaning across various civil rights fee-shifting statutes" and applicable rules. Royal Palm Props., LLC v. Pink Palm Props., LLC, 38 F.4th 1372, 1376-77 (11th Cir. 2022); see Aronov v. Napolitano, 562 F.3d 84, 88-89 (1st Cir. 2009) ("the . . . reasoning in Buckhannon is presumed to apply generally to all fee-shifting statutes that use the prevailing party terminology") (internal quotation marks omitted). With nuances discussed *infra*, the fee applicant bears the burden to establish its entitlement to fees and the proper amount of any such award. Priv. Jet Servs. Grp., LLC v. Tauck, Inc., Case No. 20-cv-1015-SM, 2025 WL 2305878, at *2 (D.N.H. Aug. 11, 2025).

ii.    Prevailing Party – Taxable Costs/Rule 54(d)(1)

For awarding taxable costs based on the filing of a Bill of Costs pursuant to Fed. R. Civ. P. 54(d)(1), the Rule provides that costs falling into the specified taxable cost categories (but not attorney's fees and nontaxable costs) "*should* be allowed to the prevailing party." Id. (emphasis added); see 28 U.S.C. § 1920 (listing categories of taxable costs). Fed. R. Civ. P. 54(d)(1) creates a presumption favoring recovery of taxable costs by the party determined to be the prevailing party. Marx v. Gen. Revenue Corp., 568 U.S. 371, 377 (2013); Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 28 (1st Cir. 2014). Given this presumption, the burden falls on the non-prevailing party to proffer an explanation that would overcome the presumption. Essex Home Mortg. Servicing Corp. v. Century Mortg. Co., CIV. A. 92-40171-NMG, 1995 WL 301418, at *1 (D. Mass. May 12, 1995). This presumption creates a "long shadow" that favors an award of costs to the prevailing party. Walsh v. Paccar, Inc., Civil Action No. 04-10304-MBB, 2007 WL 9797532, at *1 (D. Mass. July 25, 2007) (internal quotation marks omitted). In light of this presumption, a prevailing defendant seeking taxable costs is not required to show that the claim on which it prevailed was frivolous, as it does to recover attorney's fees. See, e.g., Cosgrove v. Sears, Roebuck & Co., 191 F.3d 98, 101 (2d Cir. 1999) (per curiam) (heightened standard for award of attorney's fees for prevailing defendant does not apply to cost assessment); Maner v. C'nty. of Stanislaus, No. 1:14-cv-01014-DAD-MJS, 2016 WL 8730741, at *3-4 (E.D. Cal. Oct. 28, 2016) (Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412 (1978), standard applies to award of attorney's fees, but not to award of bill of costs); DeAguila v. Bright House Networks LLC, No. 8:10-cv-1058-T-30EAJ, 2012 WL 365317, at *2 (M.D. Fla. Feb. 2, 2012) (claim not frivolous, prevailing defendant awarded taxable costs but not attorney's fees).

For purposes of a Bill of Costs, "[t]he plain language of Rule 54[(d)(1)] unequivocally restricts the number of prevailing parties to one." Royal Palm Props., 38 F.4th at 1378. When

the case outcome is mixed (that is, when each party prevailed in connection with one or more claims), the district court retains the discretion to award taxable costs to the party that the court finds substantially prevailed in the case as a whole or the court may order the litigants to bear their own costs.  Ira Green, Inc., 775 F.3d at 28; see Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V., 247 F. Supp. 3d 76, 115 (D.D.C. 2017) ("In light of the mixed judgment, the Court will deny costs to both parties."), aff'd, 743 F. App'x 457 (D.C. Cir. 2018). "Determining who is the prevailing party for the purpose of taxing costs is not a purely arithmetic exercise. . . .  Substance ought to triumph over form, and a mixed result does not preclude the trial court from awarding costs to the party whom it reasonably determines carried the day."  Ira Green, Inc., 775 F.3d at 28-29.

It is well settled, and the parties do not dispute, that "[p]ost-judgment interest under 28 U.S.C. § 1961[(a)] on a money judgment is obligatory and also accrues on awards of . . . costs." Casco, Inc. v. John Deere Constr. & Forestry Co., 596 F. Supp. 3d 359, 386 (D.P.R. 2022).

iii.    Prevailing Party – Attorney's Fees and Costs/Rule 54(d)(2)

Fed. R. Civ. P. 54(d)(2) addresses the award of attorney's fees and related costs based on the operative statute entitling the movant to such an award.  In a civil rights case like this one, that means that the Court must be guided by 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act, which provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  Spruill v. Alexander, C.A. No. 09-292S, 2011 WL 2413837, at *1 (D.R.I. Mar. 31, 2011) (internal quotation marks omitted), adopted, 2011 WL 2363520 (D.R.I. June 10, 2011).  For a civil rights case, when the plaintiff is the prevailing party, it is to be awarded § 1988 fees/costs in all but special circumstances that would render the award unjust.  Christiansburg Garment Co., 434 U.S.

at 417; see Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293-95 (1st Cir. 2001) (mindful that "awards in favor of prevailing civil rights plaintiffs are virtually obligatory," fees should be awarded to plaintiffs who achieved declaration of unconstitutionality as to one regulation, even though many of their other claims failed).  By contrast, a more stringent standard applies to prevailing defendants.  In a civil rights case, a defendant may be awarded attorney's fees and non-taxable costs only if the court finds that the plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Christiansburg Garment Co., 434 U.S. at 421; see Cottrell v. Mann, Civil Action No. 24-cv-11926-DJC, 2025 WL 1951964, at *9 (D. Mass. July 15, 2025) (it is only a "rare civil rights case in which the award of attorney's fees to [a defendant] is warranted") (internal quotation marks omitted), appeal docketed, No. 25-1800 (1st Cir. Aug. 18, 2025).

        In a civil rights case with a mixed result, courts have struggled with how to determine who is the prevailing party entitled to a fee award.  The easy case is when the plaintiff has prevailed on claims unrelated to those on which the defendant prevailed – in that case, the Supreme Court has made clear that such a plaintiff is a prevailing party, provided that "congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."  Texas State Tchrs. Ass'n, 489 U.S. at 789 (internal quotation marks omitted).  Thus, a plaintiff who achieves a favorable-to-it judicial imprimatur on just one narrow issue that materially alters the legal relationship of the parties, even if not a predominant claim, is still a prevailing party, although the fee it may be awarded should be reduced to reflect the lack of success.  Lackey v. Stinnie, 604 U.S. 192, 202 (2025); see Priv. Jet Servs. Grp., 2025 WL 2305878, at *1 (where plaintiff recovered only small fraction

of total damages it sought, it is prevailing party but reimbursement of all attorney's fees "is not a realistic request"); Kinetic Sys., Inc. v. IPS-Integrated Project Servs., LLC, Case No. 20-cv-1125-SM, 2025 WL 904453, at *6 (D.N.H. Mar. 24, 2025) (declining to award attorney's fees for work performed on unsuccessful claims and reducing overall fee award to reflect plaintiff's limited success).

If the ultimate outcome of a mixed-result case sustains one of a claimant's arguments but that favorable result affords the claimant none of the benefits it sought in initiating the litigation, that plaintiff may be deemed not to be a prevailing party. For example, in Am. Ass'n of Political Consultants, Inc. v. Wilkinson, 518 F. Supp. 3d 881 (E.D.N.C. 2021), the plaintiffs had sought to invalidate an autodialing ban based, inter alia, on the argument that a government-debt exception embedded in the statute rendered it facially unconstitutional. Id. at 884. On appeal, the Supreme Court agreed that the government-debt exception was unconstitutional but rejected plaintiffs' arguments against severance to cure the statute of its unconstitutional taint. Id. at 887-888. While these plaintiffs prevailed in having the government-debt exception declared unconstitutional, severance left the autodialing ban intact. Id. Because, despite protracted litigation in the course of which these plaintiffs "won" some issues (e.g., standing and the challenge to the government-debt exception), they were still unable to make the desired robocalls; therefore, the court held that they were not prevailing parties. Id. at 886-89; see Texas State Tchrs. Ass'n, 489 U.S. at 792 (plaintiff that achieves only a technical victory on issue of minimal significance is not a prevailing party); Granite State Outdoor Advert., Inc. v. City of St. Pete Beach, Florida, 322 F. Supp. 2d 1335, 1342-44 (M.D. Fla. 2004) (assuming plaintiff successfully challenged constitutionality of one section of ordinance, because it would achieve no benefit because that section was severable, plaintiff was not prevailing party and not entitled

9

to attorney's fees).  And if both parties obtain "significant victories in judicial decisions in each of their favors," the court may exercise its discretion to conclude that neither is a prevailing party and to make no award to either party.  San Diego Cnty. Credit Union, 2023 WL 7597630, at *7. As one court expressed it, "[w]here the parties achieve a dead heat, we don't see how either can be declared the "'prevailing party.'"  E. Iowa Plastics, Inc. v. PI, Inc., 832 F.3d 899, 907 (8th Cir. 2016).

It is well settled that, in general, the prevailing party entitled to attorney's fees and nontaxable costs pursuant to Fed. R. Civ. P. 54(d)(2)/§ 1988 is the same as the prevailing party entitled to taxable costs pursuant to Fed. R. Civ. P. 54(d)(1)/28 U.S.C. § 1920.  Nat'l Org. for Marriage v. McKee, 42 F. Supp. 3d 225, 228-29 (D. Me. 2013) (citing dicta in Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101-02 (2d Cir. 2006) (per curiam)).  However, in Nat'l Org. for Marriage, facing facts that called for a finding that both plaintiffs and defendants had prevailed, albeit on different issues, the Maine district court noted that there are lower court decisions deviating from this principal.  Id. at 229-30 (analyzing cases).  To resolve the case before it, the District of Maine court turned to the Supreme Court and focused particularly on Hensley v. Eckerhart, 461 U.S. 424 (1983), in which the Supreme Court noted the possibility that a plaintiff might prevail on one contention in a suit while also asserting an unrelated frivolous claim with the result that a court could properly award fees to both parties – to the plaintiff, to reflect the fees incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees paid in defending against the frivolous one.  Id. at 434-35.  Thus, as Nat'l Org. for Marriage holds, in Hensley, confirmed in Fox v. Vice, 563 U.S. 826, 835 (2011), the Supreme Court recognizes the availability of attorney's fees/costs to both parties in the same case.  Nat'l Org. for Marriage, 42 F. Supp. 3d at 230.  Accordingly, in Nat'l Org. for Marriage, the court

10

awarded plaintiffs a reduced § 1988 attorney's fee based on their limited success on one issue and awarded defendants all their requested taxable costs (none of which arose from the issue on which plaintiffs prevailed) because they had prevailed on virtually every other issue in the case. Id. at 226-31 (citing Fox and Hensley).

      B.    <u>Awarding Reasonable Attorney's Fees and Costs</u>

Once the Court has determined that a party prevailed and that an award of attorney's fees and/or costs (taxable and/or nontaxable) is appropriate, the Court next must set the amount of the award. For taxable costs under 28 U.S.C. § 1920, this exercise is relatively straightforward in that only the costs listed in § 1920 may be taxed. <u>Si Onxy, LLC v. Hamamatsu Photonics K.K.</u>, 540 F. Supp. 3d 85, 88 (D. Mass. 2021). For attorney's fees under § 1988, the Court's work is far more challenging in that the award must be limited to fees (and related costs) that are "reasonable," based on the hours "productively" expended multiplied by the prevailing rate in the community. <u>Lipsett v. Blanco</u>, 975 F.2d 934, 937 (1st Cir. 1992). "[T]he district court must be guided . . . by the lodestar method . . . to evaluate the reasonableness of attorney's fees." <u>NuVasive, Inc. v. Day</u>, 77 F.4th 23, 32 (1st Cir. 2023). A court making a fee award also has the discretion to adjust the lodestar up or down based on various factors, including "the amount involved and the results obtained." <u>Diaz v. Jiten Hotel Mgmt., Inc.</u>, 741 F.3d 170, 171-74, 177 nn.1, 2, 7 (1st Cir. 2013) (listing adjustment factors enumerated in <u>Hensley</u>, 461 U.S. at 430 n.3).

To assess the hours productively expended by a prevailing party that has prevailed on only some of its claims, "no fee may be awarded for services on the unsuccessful claim." <u>Texas State Tchrs. Ass'n</u>, 489 U.S. at 789-90 (internal quotation marks omitted). When the successful and unsuccessful claims involved discrete facts and law, the allocation of the award should not be arduous, particularly where the prevailing party's fee application is appropriately limited to

hours reasonably related to the success on the prevailing claim.  See Gay Officers Action League, 247 F.3d at 296 (disproportionality of award in relation to claimant's degree of success is not critical when prevailing plaintiff limits its fee petition "to the solitary claim on which they prevailed completely"); cf. Priv. Jet Servs. Grp., LLC, 2025 WL 2305878, at *3 (ordering party that prevailed on one claim to resubmit fee application based only on fees/costs reasonably expended on that claim).  However, when the successful claims arise out of a common core of facts and involve related legal theories with the claims that failed, so that the work cannot readily be allocated, the calculation of reasonable attorney's fees is more complex.  Nevertheless, even if successful claims are hopelessly intertwined with unsuccessful claims, the court must remain mindful of the Supreme Court's mandate in Hensley that a fee applicant must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," as well as that the application should reflect that the "particularly crucial" factor is "the degree of success obtained."  Hensley, 461 U.S. at 434, 436.  If a plaintiff's fee application fails to reflect this principle, the court may exercise its discretion to reduce or deny a fee award. Lewis v. Kendrick, 944 F.2d 949, 957-58 (1st Cir. 1991) (fee award reversed because counsel made no good faith effort to exclude from fee request "hours that are excessive, redundant, or otherwise unnecessary") (internal quotation marks omitted).  In setting a fee award in such mixed-result cases, it is long settled that the "trial courts need not, and indeed should not, become green-eyeshade accountants"; "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  Nat'l Org. for Marriage, 42 F. Supp. 3d at 227 n.3 (internal quotation marks omitted).  "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  Id. (internal quotation marks omitted).

In addition to performing the <u>Hensley</u> examination whether the hours proposed to calculate the lodestar reflect work that is reasonable in light of the prevailing party's degree of success, the Court must also examine whether the staffing of the case was reasonable.  <u>See generally Lipsett</u>, 975 F.2d at 938.  If a prevailing party seeks fees for two, three, four or more lawyers at a deposition, in a courtroom or at a conference, when fewer plainly would do, the excess "may obviously be discounted."  <u>Lipsett</u>, 975 F.2d at 938 (internal quotation marks omitted); <u>see</u> <u>United Nuclear Corp. v. Cannon</u>, 564 F. Supp. 581, 590 (D.R.I. 1983) (district courts must "zealously guard against any propensity to over-staff litigation").

For determining the reasonableness of the rates used to calculate the lodestar, the Court's analysis begins with focus on what are the prevailing rates in the community for comparably qualified attorneys.  <u>Lipsett</u>, 975 F.2d at 937.  However, when the stakes are both "higher and broader than it might otherwise appear without context," the selection of a national law firm instead of a less expensive local firm may be deemed reasonable.  <u>Lake Wright Hospitality, LLC v. Holiday Hosp. Franchising, Inc.</u>, Civil Action No. 2:07cv530, 2009 WL 4841017, at *10 (E.D. Va. Oct. 23, 2009).  Further, when a case is pending over a protracted period, if justified by the degree of success, the court may upwardly enhance the lodestar by awarding fees at the attorney's current rate at the time of the award as a rough offset for the lack of interest on fees that are long delayed in payment.  <u>See generally</u> <u>Nat'l Org. for Marriage</u>, 42 F. Supp. 3d at 227; <u>Cohen v. Brown Univ.</u>, No. 99-485-B, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001) (use of current billing rates is reasonable and adequately compensates plaintiffs for the effect of delay).

A court may award a fee for the hours worked by a salaried in-house counsel.  Such an award is appropriate, however, only when the in-house counsel performed tasks that ordinarily would be performed by outside counsel, "*i.e.,* when in-house counsel has litigated the case

[him]self *instead of* retaining outside counsel"; fees should not be awarded for in-house counsel's time attending conferences, depositions, and court hearings as a corporative representative.  Lake Wright Hospitality, LLC, 2009 WL 4841017, at *10; see Hum. Rts. Def. Ctr. v. Ishee, No. 5:21-CV-00469-FL, 2023 WL 8361740, at *10 (E.D.N.C. Dec. 1, 2023) ("court may deny in-house counsel's fees associated with regular discussions about the status of the case, reviewing filings, or attending conferences and hearings"); Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 264 F. Supp. 2d 753, 777 (S.D. Ind. 2003) ("fee awards for inside counsel are not appropriate where outside counsel have handled the front-line litigation work").

In arriving at a reasonable hourly rate, the Court may rely on its own knowledge of fees in the relevant area.  Rhode Island Medical Society v. Whitehouse, 323 F. Supp. 2d 283, 292 (D.R.I. June 23, 2004).  A court need not accept the rates offered by the prevailing party. DiFronzo v. City of Somerville, 786 F. Supp. 3d 327, 332 (D. Mass. 2025).

## II.     Analysis and Recommendations

### A.     Prevailing Party

ATA's single count complaint sought a declaration that the entirety of RhodeWorks violates the Commerce Clause and an injunction against its enforcement.  ECF No. 1 ¶¶ 1-2. Essential to ATA's challenge to RhodeWorks was its argument that RhodeWorks was designed to and did impose discriminatory and disproportionate burdens on the largest trucks operating in interstate commerce.  Id. ¶ 3.  As a secondary argument, the complaint also targeted the toll "caps"[5] as a feature of RhodeWorks that limited the burden of the tolling regime on local and intrastate travelers with the consequence that the tolls fell disproportionately on interstate

---

[5] In referring to "caps," I intend only the two found to violate the dormant Commerce Clause, not the third cap that was found to be irrelevant.  Am. Trucking Associations, Inc., 123 F.4th at 42.

truckers.  Id. ¶ 6.  The complaint alleged that the discriminatory effect of the caps was used politically by State officials to curry legislative support for the entire RhodeWorks regime.  Id. ¶¶ 89, 109.  The complaint's claim for relief focused on the alleged unconstitutionality of all of RhodeWorks with no separate request for relief related to the caps.  Id. ¶¶ 135-147.

The parties' post-trial briefs and the District Court's bench decision permit the Court to focus on the evidence supportive of ATA's success in invalidating the caps.  Thus, ATA principally relied on a portion of the testimony of its expert, Dr. Jonathan Peters,[6] as well as on the State's concession that the caps had at least some discriminatory effect.  ECF No. 228 at 51-59; see Am. Trucking Associations, Inc., 630 F. Supp. 3d at 395-97.  ATA argued that the discriminatory effect of the caps "confirm[ed]" the logic of its position that all of RhodeWorks was unconstitutional.  ECF No. 228 at 50.  The State relied on the testimony of Dr. Kenneth Small and Dr. Vijay Saraf to argue that the caps are neutral and resulted in limiting the tolls imposed on both interstate and intrastate traffic.  ECF No. 229 at 74-79.  The State also argued that, if the District Court were to find that the caps violate the dormant Commerce Clause, it must sever the cap provisions from RhodeWorks.  ECF No. 230 at 49-50.  Because the District Court condemned the entirety of RhodeWorks, as ATA argued it should, the District Court did not address severance of the caps.  See Am. Trucking Associations, Inc., 630 F. Supp. 3d 357.

---

[6] In addition to his testimony in successful support of ATA's prevailing constitutional challenge to the caps, Dr. Peters also opined regarding the small truck exemption.  Am. Trucking Associations, Inc., 630 F. Supp. 3d at 398.  The District Court rejected this portion of Dr. Peters' testimony as "mostly speculative" and the First Circuit relied on this rejection of Dr. Peters' testimony when it reversed the holding that the small truck exemption violated the dormant Commerce Clause.  Am. Trucking Associations, Inc., 123 F.4th at 39 ("[c]onjecture . . . cannot take the place of proof in a dormant Commerce Clause analysis") (internal quotation marks omitted) (alternations in original).  Another portion of Dr. Peters' opinion was excluded when the Court partially sustained the State's Daubert challenge.  See Text Order of May 20, 2022 (granting motion to exclude Peters' opinion on intent or motives of the state actors).  There would be a Hensley proportionality problem with a fee award to ATA based on all the time spent to present Dr. Peters as a testifying expert.

On appeal, ATA argued that RhodeWorks' focus on large trucks, with its small truck exemption, is discriminatory in purpose, was discriminatory in effect, and fails the Commerce Clause's "fair approximation" test. <u>Am. Trucking Associations, Inc. v. Rhode Island Turnpike and Bridge Authority</u>, Nos. 22-1795, 221796, Brief of Plaintiffs-Appellees at 13-14 (1st Cir. May 26, 2023). ATA also asserted that the caps were politically essential to the enactment of RhodeWorks and without them, it would not have passed. <u>Id.</u> at 55. ATA addressed the State's severance argument: "we submit that all of RhodeWorks is unconstitutional on both discrimination and fair-approximation grounds, so there is nothing from which the caps could be severed." <u>Id.</u> at 54. Therefore, it urged the First Circuit to find severance improper. <u>Id.</u> The First Circuit rejected all of ATA's arguments except for the unconstitutionality of the caps. Regarding the pivotal severance argument, it found nothing in the record "that would allow us confidently to discern an answer to th[e] question" "whether the legislature would have forgone RhodeWorks and its revenues altogether without the caps." <u>Am. Trucking Associations, Inc.</u>, 123 F.4th at 52. To the contrary, the First Circuit held that the purpose of RhodeWorks was to generate revenue to maintain Rhode Island's transportation infrastructure and that it is "clear that severing the RhodeWorks caps would not destroy[] legislative purpose and intent." <u>Id.</u> (internal quotation marks omitted) (alteration in original).

Applying the law as explicated above to this decidedly mixed result, I find that the State prevailed by sustaining RhodeWorks and its unique[7] focus on larger trucks to generate revenues; that is, the State's legal effort both altered the legal relationship between the parties in that

---

[7] In its appellate brief, ATA asserts that RhodeWorks was unique ("highly idiosyncratic features") in that Rhode Island was the only state using a truck-only tolling system and the only state tolling large tractor-trailers and exempting smaller trucks and other vehicles. <u>Am. Trucking Associations, Inc.</u>, Nos. 22-1795, 22-1796, Brief of Plaintiffs-Appellees at 11 (1st Cir. May 26, 2023). ATA also argued that the use of the caps to limit the impact of the tolls on local vehicles was unique. <u>Id.</u>

RhodeWorks is declared to be constitutional and may go back into effect and in that the State achieved that favorable result through judicial *imprimatur*. To that extent, the State is a prevailing party. <u>Buckhannon</u>, 532 U.S. at 604-05. ATA lost in that the First Circuit rejected its arguments that RhodeWorks was discriminatory in purpose, discriminatory in effect and failed the fair approximation test; importantly, the declaration and injunction it sought in its complaint to stop RhodeWorks was reversed. <u>Am. Trucking Associations, Inc.</u>, 123 F.4th 27. ATA also lost in that the First Circuit rejected its argument that the caps were so intertwined with why RhodeWorks was passed by the legislature that they should not be severed. <u>Id.</u> at 51-53.

However, as the cases make plain, it does not follow that ATA is not also a prevailing party. That is, ATA prevailed to the limited extent that it established by judicial *imprimatur* that Rhode Island cannot discriminate against its members – owners and operators of large commercial trucks traveling in interstate commerce – by embedding in its tolling regime a seemingly neutral cap that is discriminatory in effect because local tractor-trailers disproportionally benefit from the cap in non-trivial amounts. <u>Id.</u> at 42-45. I do not accept the State's argument that ATA did not prevail on this issue because RhodeWorks without the caps would not benefit but rather would increase the burden on ATA's members in that large trucks traveling in interstate commerce (like local large trucks) would pay uncapped tolls. <u>See generally</u> ECF No. 276 at 15. As the Circuit's decision emphasizes, the injury from the caps derives from the reality that their discriminatory effect "directly bear[s] on competition between in-state and out-of-state tractor-trailers." <u>Am. Trucking Associations, Inc.</u>, 123 F.4th at 44. Therefore, while ATA's success is far from the sweeping rejection of the entirety of RhodeWorks that ATA sought in its complaint, I find that it still qualifies as a claim on which ATA is a paradigmatic prevailing party. Further, given the First Circuit's finding that the caps are

severable from the rest of RhodeWorks, I find that ATA's dormant Commerce Clause challenge to the caps amounts to a "distinctly different claim[] for relief" of the sort that could have been raised in a separate lawsuit, Hensley, 461 U.S. at 434; it is as to that potentially stand-alone claim that ATA is the prevailing party.  See Am. Ass'n of Political Consultants, Inc., 518 F. Supp. 3d at 886-69 (severance of invalid provision of statute left claimant without any benefit).

I pause briefly to explain why I do not credit ATA's argument that, despite its limited success, the Court should award fees as if it prevailed on all issues based on the political benefits to its members resulting from the pursuit of this case.  ATA relies on the declaration of its in-house attorney (Attorney Richard Pianka) for the proposition that ATA's *political* success has been significant in that it vindicated "the principle that states cannot insulate themselves from ordinary political accountability in their highway-revenue programs by favoring their own constituents through discriminatory measures[,]" in that Rhode Island was able to "buy off local opposition" as a result of the unconstitutional caps.  ECF No. 271 ¶¶ 26-28.  To illustrate this political benefit, Attorney Pianka avers that, based on the legal concerns ATA raised in this case regarding truck-only tolls (a legal argument that ATA lost in the First Circuit), Connecticut abandoned plans to copy RhodeWorks.  ECF No. 271 ¶¶10-13.

The problem is that this political success is not the subject of the judicial *imprimatur*. That is, the First Circuit rejected the legal/factual argument that a tolling regime focused on large trucks is unconstitutional and that the caps establish discriminatory intent of the overall tolling regime and therefore could not be severed.  Am. Trucking Associations, Inc., 123 F.4th at 51-52. Put differently, ATA's belief that it achieved a "decision [that] has created significant political headwinds to implementing a cap-free toll program," ECF No. 284 ¶ 7, a result that it can use politically to benefit its members, is more analogous to the result that flowed from the filing of

the antitrust action by consumer plaintiffs in <u>Garavanian</u>, who succeeded in stopping the merger their complaint sought to enjoin although the injunction issued in the government's subsequently filed case and their own case was dismissed as moot. <u>Garavanian</u>, 149 F.4th at 97-98. Thus, as in <u>Garavanian</u>, the political benefit achieved by ATA may well be a collateral consequence of the litigation it initiated, but that benefit is not sufficiently linked to the judicial *imprimatur* that issued in this case to qualify ATA as the prevailing party on all issues for purposes of awarding fees. <u>See</u> <u>id.</u> at 100-01.

Based on this analysis, the Court finds itself with a dilemma similar to the one faced by the court in <u>Nat'l Organization for Marriage</u>: when plaintiffs are prevailing parties based on success on a narrow issue entitling them to appropriately limited fees and costs, "[c]an the defendants then receive, simultaneously, a costs award under Rule 54(d) as a 'prevailing party'?" 42 F. Supp. 3d at 228. After a survey of the cases, with particular focus on the Supreme Court's guidance in <u>Hensley</u> and <u>Fox</u>, <u>Nat'l Organization for Marriage</u> holds that the answer is yes. <u>Nat'l Organization for Marriage</u>, 42 F. Supp. 3d at 228-31. Finding this analysis persuasive, I recommend that this Court do the same: hold that the State is the prevailing party for most of the issues presented – that is, the State fended off ATA's attempt to enjoin all of RhodeWorks, resulting in the holding that RhodeWorks and its imposition of tolls on large trucks (exempting smaller trucks and other vehicles), is compliant with the Commerce Clause, as well as the pivotal holding that the discriminatory caps are severable. Also based on the approach adopted in <u>Nat'l Organization for Marriage</u>, I recommend that the Court hold that ATA is the prevailing party entitled to a fee award on one narrow (though far from *de minimis*) issue –the condemnation of the severable caps as unconstitutional.

    **B.**    **State's Entitlement to Taxable Costs and § 1988 Attorney's Fees and Nontaxable Costs**

As the prevailing party on most of the matters in issue, the State is presumptively entitled to be awarded its Bill of Costs (seeking $199,281.15, ECF No. 262) unless ATA overcomes the presumption.[8]  Essex Home Mortg. Servicing Corp., 1995 WL 301418, at *1.  ATA's principal argument against the State's Bill of Costs – that the State failed to establish that ATA's claims were frivolous – is legally unfounded.  The burden of showing frivolousness is imposed on a defendant only for § 1988 fee awards; it does not apply to a Bill of Costs.  See Cosgrove, 191 F.3d at 101-02; Maner, 2016 WL 8730741, at *3-4 DeAguila, 2012 WL 365317, at *2.  Nor should the Court accept ATA's other contention – that is, ATA, not the State, is the predominant prevailing party in that it won the "central elements" of its case.  ECF No. 275 at 17.  That argument fails because it is an inaccurate post-hoc recharacterization of the ultimate judicial disposition of ATA's claims as stated in this case.  See Anheuser-Busch, Inc., 2012 WL 1068765 at *7.

More persuasively, ATA contends that the State "cannot possibly be entitled to *all* of their costs."  ECF No. 275 at 17.  However, ATA has not supported this argument with a challenge targeting any of the specific costs listed in the State's well-supported Bill.  Therefore, the Court could readily award all of the listed costs.  Nevertheless, guided by Nat'l Organization for Marriage, I decline to recommend a taxable cost award for the two State experts who testified in opposition to the single issue on which ATA prevailed – principally Dr. Saraf but also Dr. Small in part.[9]  Put differently, as in Nat'l Organization for Marriage, I find that the Court should limit

---

[8] As noted *supra*, only one prevailing party may be awarded taxable costs pursuant to Fed. R. Civ. P. 54(d)(1). Because I find that the State "reasonably . . . carried the day," Ira Green, Inc., 775 F.3d at 28-29, the unitary prevailing party entitled to taxable costs is the State.  This determination is uncontroversial in this case because ATA has not filed a Bill of Costs and does not seek recovery pursuant to Fed. R. Civ. P. 54(d)(1).

[9] Based on the State's Post-Trial Brief (ECF No. 229) the Court is able to confirm that Dr. Small principally testified about the overall impact and purpose of RhodeWorks, including how it met the "fair approximation" test, all issues on which the State prevailed.  A portion of his testimony related to the caps.  For purposes of estimated allocation

the State to the recovery of those costs that are unrelated to ATA's successful claim. 42 F. Supp. 3d at 230-31. Based on this approach I recommend that the Court award the State taxable costs in the total amount of $186,156.03. I also recommend that the Court order that the State shall recover interest on the taxable costs from the date of the award until paid in full at the federal statutory rate. See Fryer v. A.S.A.P. Fire & Safety Corp., 750 F. Supp. 2d 331, 341-42 (D. Mass. 2020), aff'd, 658 F.3d 85 (1st Cir. 2011).

The Court need not linger long on the State's § 1988 application for attorney's fees and costs. A complaint asserting a claim that was entirely sustained in the District Court is simply not the "rare civil rights case in which the award of attorney's fees to [defendants] is warranted." Cottrell, 2025 WL 1951964, at *9 (internal quotation marks omitted). I do not credit the State's argument that, because ATA's loss in the First Circuit resulted from its failure to present nonspeculative evidence[10] of RhodeWorks' discriminatory effect (except for the caps), ATA's non-prevailing claims are frivolous or without foundation as contemplated by Christiansburg Garment Co., 434 U.S. at 421. Finding that the State cannot clear the bar created by the Supreme Court in Christiansburg Garment Co., I recommend that the Court deny the State's motion for an award of § 1988 attorney's fees and nontaxable costs.

### C.    ATA's Entitlement to § 1988 Attorney's Fees and Costs

---

(mindful that the Court has no argument from ATA for guidance), the Court estimates that 10% of Dr. Small's costs should be deleted because it may be allocated to the caps, the only issue on which the State did not prevail. By contrast with Dr. Small, all of Dr. Saraf's testimony was in opposition to ATA's attack on the caps. The State's helpful presentation allows the Court to readily ascertain that the total taxable costs for Dr. Small is $9,612.66 ($2,329.53/witness fee; $3,225.25/transcript; $17.10/exhibits; $1,711.25/video; $2,289.53/trial attendance; $40/attendance fee) and for Dr. Saraf is $12,163.86 ($3,090.41/witness; $4,006.24/transcripts; $61.80/exhibits; $1,915/video; $3,010.41/trial attendance; $80/attendance fee). ECF No. 262 at 3; ECF No. 263 at 19, 22, 31-38. Therefore, the State's requested taxable costs ($199,281.15) should be reduced by subtracting $961.26 for Dr. Small and $12,163.86 for Dr. Saraf. This yields a cost award of $186,156.03.

[10] That is, I find that ATA's arguments were supported by a substantial factual/legal foundation, including the testimony of Dr. Peters and the extensive evidence presented on fair approximation. The First Circuit's finding that this was insufficient support for the conclusion that RhodeWorks is unconstitutional does not nullify the foundation that was presented to the Court nor does it render ATA's claims frivolous.

For its limited success, ATA seeks a whopping § 1988 fee/cost award of $21,086,290.24, which consists of $20,071,291.10 in attorney's fees and $1,014,999.14 in costs. In derogation of the mandate of Hensley and progeny, ATA's fee/cost application ignores the disproportionality problem of such an award in light of its limited success and asks the Court to award it 100% of its fees and costs, inflated by aggressive staffing patterns and by an upward enhancer to already high rates applicable to some of the time ostensibly based on the delay in payment because of the six-plus years that this litigation has been pending. In its motion, ATA argues that such an award is required because "the successful and unsuccessful claims are interrelated based on a common nucleus of fact. . . . [in that a]ll of ATA's claims were addressed to a single protectionist tolling regime and ATA's arguments . . . [of] burden [on] interstate commerce were related and mutually reinforcing." ECF No. 266 at 9. During the hearing before me, ATA doubled down; despite the reality that it lost this precise argument when the First Circuit held that the caps were not "indispensable," but rather were severable, Am. Trucking Associations, Inc., 123 F.4th at 52, ATA declined to assist the Court by proposing a methodology for allocation. For its part, noting ATA's failure to provide the Court with documentation sufficient to exclude time spent on unsuccessful claims, citing Pontarelli v. State, 781 F. Supp. 114, 120 (D.R.I. 1992), the State urges the Court to award ATA nothing. ECF No. 276 at 43-44. Alternatively, the State suggests that 13.5%[11] of the reasonable and necessary hours at appropriate rates would fairly compensate ATA for its success in procuring a declaration that the caps are unconstitutional. Id. at 55. The

---

[11] This percentage is derived from a comparison of the total tolling revenue with the savings resulting from the caps, based on a one-month sample (June 2021). See ECF No. 276 at 55 n.25. I do not adopt this approach because I find that it understates ATA's degree of success.

State also urges the Court not to award ATA its requested travel costs ($79,256.70) and its claimed costs associated with electronic research ($260,237.69). Id. at 55-56.

        1.     ATA's Fees

The Court finds ATA's fee application is excessive and unreasonable in four distinct ways.

First, ATA's motion ignores the limited nature of its success, leaving the Court to fend for itself (or to be guided by the State's argument) in developing a methodology to set a proportional award. To perform this task, the Court has particularly focused on the parties' briefing in the District Court and on appeal, based on which I find that the reasonable time and expenses associated with presenting the portion of the testimony of Dr. Peters that laid out the discriminatory effect of the caps and with defending the portion of the opinion of Dr. Small and the opinion of Dr. Saraf that related to the caps should be compensable. Relatedly, guided by the Supreme Court's holding in Texas State Tcher. Ass'n, 489 U.S. at 789, I have tried to consider what portion of the total of the reasonable fees and costs expended would have been required to prosecute a separate lawsuit challenging the constitutionality of just the caps under the dormant Commerce Clause. In that regard, as ATA argued to the District Court, I find significant that, at trial, the discriminatory effect of the caps was not as hotly contested as other issues in that the State essentially conceded that the caps had at least some discriminatory effect, ECF No. 228 at 51 n.9, and focused on its alternative argument that the caps should be severed if found to be unconstitutional, ECF No. 230 at 49-50. See Nat'l Organization of Marriage, 42 F. Supp. 3d at 226-28 (court notes that issue on which plaintiffs prevailed was "barely argued," and relatively straightforward; because plaintiffs' discounted request still outstretched their limited success, based on the "realit[y] of litigating [a] constitutional claim in federal court," court sets

reasonable amount at number chosen by court that falls between plaintiffs' reduced request and

amount suggested by defendant).

At bottom, there were five major issues litigated by the parties in this case: (1) whether

RhodeWorks violates the dormant Commerce Clause based on discriminatory intent, which issue

required, *inter alia*, an interlocutory appeal for determination of the scope of legislative

privilege, Am. Trucking Associations, Inc. v. Alviti, 14 F.4th 76 (1st Cir. 2021); (2) whether

RhodeWorks tolling regime's focus on large trucks violates the dormant Commerce Clause based

on discriminatory effect; (3) whether RhodeWorks tolling regime's focus on large trucks violates

the dormant Commerce Clause because it fails to comport with the fair approximation test; (4)

whether the caps violate the dormant Commerce Clause based on discriminatory effect; and (5) if

so, whether the caps should be severed leaving the RhodeWorks tolling regime otherwise intact.

ATA won one of the five; the State prevailed on the other four. Am. Trucking Associations, 123

F.4th 27. Based on the foregoing, in reliance on Hensley's requirement of proportionality to the

results obtained, I recommend that the Court exercise its discretion to award ATA 20% of its

reasonable (as reduced per the analysis *infra*) attorney's fees. I note that this percentage is well

above the 13.5% suggested by the State.

Second, the Court finds that ATA's requested rates for its principal law firm (Mayer

Brown) are excessive. As laid out in the fee application, the hourly rates sought for work done

by Mayer Brown, a national firm with a global practice,[12] range from a low of $400/hour for

certain attorneys in 2018 to a peak of $2,305/hour for work done by an attorney in 2023. ECF

---

[12] The Court notes that the finding that the Mayer Brown rates are excessive in light of ATA's limited success does
not arise from any question or concern regarding the outstanding caliber, legal acumen and impressive experience of
the Mayer Brown attorneys (nor that of any of the other attorneys for both sides who worked on this case). Nor does
the State suggest that the lodestar should be adjusted downward based on a challenge to the experience and ability of
the Mayer Brown lawyers.

No. 268-4.  For most of the attorneys who staffed this case, ATA seeks a lodestar calculated based on hourly rates that largely exceed $1,000/hour.  Id. at 2-5.  Further, for 2023/2024, the rates appeared to materially rise from those applicable earlier in the case,[13] although the 2023/2024 rates are less concerning because the number of hours in 2023/2024 is relatively low.

In addition to the declaration (ECF No. 267) of its fee expert (Attorney Kenneth Moscaret), in reliance on the Tager Declaration (ECF No. 268 ¶ 56), ATA asks the Court to find these rates reasonable by consideration of the 2022 determination in the Central District of California that Mayer Brown's rates appeared to be in line with those "prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation."  United State ex rel. Island Indus. v. Vandewater Int'l Inc., 2:17-cv-04393-RGK-KS, 2022 WL 2232215, at * 2 (C.D. Cal. May 13, 2022) (internal quotation marks omitted).  The force of this finding is mitigated, however, by that court's observation that the rates in issue were not disputed.  Id.  The State asks the Court to consider that the national Mayer Brown rates used by ATA for the lodestar calculation contrast sharply with the local hourly rates charged by the attorneys for the State – $350 for lead trial counsel, $300 for the attorney who was "second chair" at trial but performed substantial work throughout the pendency of the case and $150 for associate attorneys.  ECF No. 265 at 4.  However, this comparison is not useful because I find that it was not unreasonable for ATA to choose a national law firm of Mayer Brown's caliber for this legally complex case.  Rhode Island Medical Society, 323 F. Supp. 2d at 292 ("as the First Circuit has noted, out-of-town rates are appropriate if the complexities of a particular case require the particular expertise of non-local counsel") (internal quotation marks omitted).

---

[13] For example, the rate of the lead trial attorney, Attorney Ronald Goeke increased to $1,415 in 2023, from $1,099.03 in 2020.  ECF No. 268-4 at 2-3.

However, my personal knowledge of rates of national law firms during the period in issue,[14]
Rhode Island Medical Society, 323 F. Supp. 2d at 292, also suggests that the State is at least
partly right – that is, Mayer Brown's national hourly rates as billed to ATA during the period
from 2018 to 2024 appear to be somewhat aggressive, if not unusually high.  See ECF No. 276 at
40-41; ECF No. 282 at 25-26 (parties' presentation of disputed facts regarding rates of peer law
firm, Kirkland).

A far more material problem with the rates is an aspect of the methodology that ATA
proposes for establishing the lodestar.  Thus, ATA applies a rate "enhancer" that impacts almost
40% of the hours presented for the fee award, which is described in the Tager and Moscaret
Declarations (ECF Nos. 267, 268).  As described, by agreement with ATA, Mayer Brown
attorneys were compensated pursuant to an alternative fee arrangement, ECF No. 267 ¶ 37-48,
by which ATA was billed as the work was performed at usual hourly rates for certain work with
task limits, fixed fees for certain tasks, discounts and other devices to restrict ongoing expenses.
ATA seeks an award of these fees at the rates actually billed at then-current rates during 2018
through 2024.  ECF No. 266 at 34; ECF No. 268 ¶¶ 20-21, 34-36.  For the remainder of the time
worked, the so-called "unbilled" time (that is, time for which no bill was submitted because it
exceeded what could be billed under the alternative fee arrangement), which covers almost 40%
of the time presented, ATA now seeks a fee award with the rates enhanced to 2025 rates to
compensate it for the delay in payment.  See ECF No. 273 ¶ 16 n.3 ("significant portion of the
timekeeper entries in this case are currently unbilled to ATA").

---

[14] My relevant experience includes work I did in connection with ongoing monitoring of the rates and staffing of a
group of national law firms representing plaintiffs in a set of extremely complex antitrust cases consolidated in the
District of Rhode as described in In re Loestrin 24 Fe Antitrust Litig., MDL No. 2472, Master File No. 1:13-md-
2472-WES-PAS, 2020 WL 4035125, at *3 (D.R.I. July 17, 2020), adopted, 2020 WL 5203323 (D.R.I. Sept. 1,
2020).  In Loestrin , the work that I reviewed was performed by attorneys with billing rates including the period
2018-2020, which is part of the period that is in issue in this case.

The dramatic impact on the lodestar of this approach may be described by focusing on the attorney who recorded the most hours – second-year (in 2018) associate Colleen Campbell. See ECF No. 268 ¶ 23.  At the beginning of the case, Attorney Campbell's 2018 billing rate was $539.27/hour; it increased annually to $845 in 2022; the actual rate was applied to a total of 1,974.10 hours billed yielding fees of $1,441,004.  ECF No. 268-4 at 2.  However, Attorney Campbell also worked a total of 773.3 hours designated as "unbilled" time; for this work, which was never billed, ATA seeks a fee award at a whopping $1,275/hour[15] for additional fees totaling $985,957.50.  Id.  That is, ATA seeks an enhancement that bears no relationship to the interest lost due to delay in payment.  Based on this analysis, the Court finds that this enhancer results in rates that far exceed what conceivably might be justified by the delay in payment; therefore, I find that the application of this enhancer does not yield reasonable rates in the circumstances of this case.

Based on the foregoing and mindful of ATA's limited success in this case, I find that this is not a circumstance where an upward adjustment to the lodestar by use of this enhancer is appropriate.[16]  Further, I find that it would require a "green-eyeshade accountant[]," Nat'l Org.

---

[15] This is a hypothetical rate – Attorney Campbell left the firm; as a result, her work was never billed to any client at the $1,275 rate.  ECF No. 282 at 26 & n.6.  Shockingly to this judicial officer, by applying this enhancement to its applied-for fees, ATA asks the Court to award fees for work done in 2018 by a *second-year associate* at a hypothetical rate of $1,275 per hour.  Similarly, for the year of the trial (2022), when most of Attorney Campbell's time was "unbilled," ATA seeks a fee award for 666.9 hours not at her actual (and rather high) rate of $845, but rather at the hypothetical rate of $1,275.

[16] The Court observes that ATA relies on the declaration of Attorney Moscaret (ECF No. 267) to support the reasonableness of the enhancer based on the alternative fee arrangement, which put the attorneys partially at risk.  This declaration references cases relying on attorney risk as a reason to increase the lodestar in an appropriate circumstance, such as where a constitutional case ends with judicial *imprimatur* in favor of a prevailing party on all issues.  Id. ¶ 29 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (one of Johnson factors is whether fee agreement with client is contingent)).  That did not happen in this case.  Because ATA prevailed only on one issue and did not achieve the remedy it sought when it brought the case, the Court does not find persuasive the Moscaret argument that the lodestar should be increased because the fee arrangement partially put the law firm at risk.

for Marriage, 42 F. Supp. 3d at 227 n.3 (internal quotation marks omitted), to recalculate ATA's requested fees to eliminate the impact of the enhancer, as well as to adjust rate-by-rate in light of the Court's finding that even the "billed" rates appear to be somewhat high in the context of this case. Yet with a clear success, albeit on a single issue that the First Circuit found to be severable, I do not find that this case is one where no award should be made.[17] Based on the foregoing, I recommend that the Court exercise its discretion by reducing the lodestar sought for work performed by Mayer Brown by 15% to offset the impact of the excessive rates (that is, subtract $2,644,693.05 from the Mayer Brown total, $17,631,287, to yield $14,986,593.95).[18]

Third, ATA's fee application is disproportionally swollen by its principal law firm's staffing practices, pursuant to which Mayer Brown sent two, three or more attorneys to depositions, hearings/conferences and trial and now seeks to include all of them in the lodestar.

Before focusing on the foundation for this finding, I explain first what I have not relied on – this finding is not a critique of the sheer amount of work done by ATA in light of the complexity and importance of the case. This observation is necessary because, throughout the briefing of the fee application, ATA devotes considerable energy justifying the number of hours it spent on this case by blaming the State for its "scorched-earth approach to the litigation," and its inappropriate use of an "extraordinarily ferocious 'Stalingrad defense'" for the case. ECF Nos. 266 at 8; 282 at 17; see ECF No. 271 ¶¶ 43-44 (Pianka Declaration labels State standing

---

[17] See, e.g., Skender v. Eden Isle Corp., 33 F.4th 515, 522-23 (8th Cir. 2022) (holding that district court did not abuse its discretion in awarding one dollar in fees where plaintiff submitted excessive fee request without making any good faith effort to exclude hours that were excessive, redundant or otherwise unnecessary); Young v. Smith, 905 F.3d 229, 236 (3d Cir. 2018) ("We now formally join our sister circuit courts of appeals and hold that under 42 U.S.C. § 1988(b), a court may deny a request for attorney's fees in toto where the request is so outrageously excessive that it shocks the conscience of the court."); Lewis, 944 F.2d at 958 ("inexcusable reaching for fees" is grounds for complete denial even to prevailing party).

[18] This reduction does not impact the attorney's fees sought by local counsel, Higgins Cavanagh, or by the discovery vendor, Haystack.

challenge as "stunt").  I do not endorse this argument.  That is, just as ATA considered the economic stakes of this case to its members to be "enormous," ECF No. 272 ¶ 10, I find that the State was defending the critical interest of the people of Rhode Island in finding a methodology to maintain its public transportation system, particularly the safety of its bridges, in light of their use given Rhode Island's location in the middle of the Northeast corridor.  See Am. Trucking Associations, Inc., 123 F.4th at 51 (Court of Appeals finds that RhodeWorks enacted to maintain Rhode Island's transportation infrastructure); Am. Trucking Associations, Inc., 630 F. Supp. 3d at 362-364 (District Court noting that "I-95 North/South corridor . . . effectively bisects the state" and "[m]ore than 250,000 cars and trucks speed through the state on I-95 every day"; with many bridges in poor condition, Rhode Island set out to generate revenue to address these serious public concerns by tolling on bridges along major interstate and state highway corridors).  Put differently, both sides litigated this important and complex case with impressive and appropriate intensity.  I reject and do not rely on the argument that ATA's fee award should be enhanced based on improper "scorched earth" litigation tactics by the State.

Turning back to staffing patterns, ATA concedes that it consistently staffed the case with multiple attorneys and defends the practice by arguing that the State had a similar number of attorneys in attendance (for example) at depositions.  ECF No. 284 ¶ 4.  This argument is quickly undermined by review of the State's fee application, which confirms that the State's staffing for which a fee award is sought is far lower and appears to be reasonable.  See e.g. ECF Nos. 263-65.  The point is illustrated by focus on the deposition that is at the bullseye of ATA's limited success in this case, that of its expert Dr. Peters – ATA seeks fees for the attendance of four attorneys at this deposition, while the State (which was the party asking questions) seeks fees only for two attorneys, one with a billing rate of $300 and one with a billing rate of $150.

Further, ATA has provided the Court with no guidance for how to address this staffing issue. Nevertheless, rather than no fees at all as the State urges, I recommend that the portion of the lodestar reflecting fees sought for work performed by Mayer Brown be reduced by an additional 15% of the fee amount requested to correct for excessive staffing (that is, subtract $2,644,693.05 from $14,986,593.95, to yield $12,341,900.90 as the reduced lodestar for Mayer Brown time).[19]

Fourth, ATA asks the Court to award it almost $2 million for the work done by its in-house counsel, Attorney Pianka; the lodestar for this portion of the fee application is based on a hypothetical hourly rate of $1,500 for 1,270.9 hours of work. See ECF Nos. 266 at 36-37; 271 ¶ 51. Troublingly, Attorney Pianka's function in the case appears to be not just that of quintessential in-house counsel, supervising and overseeing the work and attending court sessions and trial as the client representative,[20] but also that of a testifying witness. That is, ATA's fee application initially included the time Attorney Pianka spent preparing for testimony and testifying, until the State pointed out this anomaly.[21] I find that Attorney Pianka's contribution may have been significant but is not compensable. See generally Eli Lilly & Co., 264 F. Supp. 2d at 777. Accordingly, I recommend that the Court exercise its discretion to

---

[19] This reduction does not impact the attorney's fees sought by local counsel, Higgins Cavanagh, or by the discovery vendor, Haystack.

[20] Tellingly, as the State points out and ATA does not dispute, Attorney Pianka attended numerous depositions, court hearings and conferences, as well as trial, yet (apart from testifying) never spoke. ECF No. 276 at 35-36; see ECF No. 279 ¶¶ 19-25. While Attorney Pianka's declaration represents that he was a primary drafter of "several filings," ECF No. 271 ¶ 47, the Court does not find this proffer sufficient to justify the judicial resources required for a deep dive into Attorney Pianka's extensive (22 pages) time records to isolate the instances when he arguably was functioning as a front-line litigator to determine whether some small portion of his time might be compensable.

[21] After the State highlighted this inappropriate aspect of ATA's fee application, ECF No. 276 at 54, Attorney Pianka noted his "sincere[] regret" for the inclusion of this time and amended the application by asking the Court to delete it from the lodestar. ECF No. 284 ¶ 6. Because I find that none of Attorney Pianka's time is reasonably reimbursable, in the interest of simplicity, I simply subtracted all of his portion of the lodestar from ATA's original request.

reduce the fee lodestar by $1,906,350 to eliminate entirely compensation for ATA's in-house counsel.

To summarize, ATA requests attorney's fees in the total amount of $20,071,291.10 for work done by its in-house counsel, the Mayer Brown attorneys/paralegals, its local counsel (Higgins Cavanagh) and attorneys working for its discovery vendor, Haystack. I find that this request is excessive and unreasonable. It should be reduced by subtracting $1,906,350 (work performed by the in-house counsel) and by subtracting a total of $5,289,386.10 from the Mayer Brown fee total to eliminate 15% for excessive rates and 15% for excessive staffing. This yields a fee lodestar of $12,875,555. To this reduced lodestar, I further recommend that the Court apply the percentage (20%) to be awarded in recognition of ATA's limited success in the case as described *supra*. This computes to an attorney's fee award for ATA of $2,575,111.

2.    ATA's Costs

ATA requests a cost award of $1,014,999.14. Of this amount, the State challenges the travel costs for ATA's out-of-town lawyers. ECF No. 276 at 56. Because I find the decision to engage a national law firm to be reasonable, I reject this argument. See Schand v. McMahon, 487 F. Supp. 3d 71, 83 (D. Mass. 2020), appeal dismissed, Nos. 20-1994, 20-1995, 2020 WL 9258755, 2020 WL 9348176 (1st Cir. Dec. 30, 2020).

More substantively, the State also challenges the charge for $260,237.67, based on the cost of electronic research. ECF No. 276 at 56. In this Circuit, computer-assisted research may be reimbursed so long as the research cost is in fact paid by the firm to a third-party provider and is customarily charged by the firm to its clients as a separate disbursement. InvesSys, Inc. v. McGraw-Hill Companies, Ltd., 369 F.3d 16, 22-23 (1st Cir. 2004). Here, however, ATA has not proffered the requisite foundation to support that the research costs are customarily (or were

31

actually) charged by the firm to a client like ATA.  See ECF No. 268 ¶¶ 59-61.  Therefore, with a party that prevailed on a single issue, I recommend that the Court exclude the cost of electronic research from the cost award.  Based on the foregoing, I recommend that the Court award ATA 20% of its costs adjusted by subtracting $260,237.67 for electronic research.  The percentage (20%) to be awarded is in recognition of ATA's limited success in the case as described *supra*. This computes to a cost award for ATA of $150,952.29.

       **D.**     **Further Proceedings for Fees on Fees**

      Mindful that a court must be wary of a case "where the lawyers' monetary interests often comprise a tail that wags the dog," In re Fid./Micron Sec. Litig., 167 F.3d 735, 736 (1st Cir. 1999), I do not recommend that the Court entertain further proceedings to allow the parties to make additional submissions for the calculation of the fees and costs expended to prosecute their respective fee applications.  La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 336 (5th Cir. 1995) (per curiam) (refusing to award fees for litigating cost/fees when the prevailing party "recovered only part of the costs and fees it requested" "fell within the district court's proper exercise of its discretion").  This recommendation is based on the judicial resources already expended, much of which was due to ATA's failure to provide the Court with an application based on reasonable fees reduced to reflect its limited success, as well as on the reality that the State is limited to recovery only of taxable costs.

**III.**    <u>**Conclusion**</u>

      Based on the foregoing, I recommend that the Court grant in part and deny in part both of the referred motions (ECF Nos. 261, 266).

      As the prevailing party with respect to most of the matters in issue, pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1), I recommend that the State's motion (ECF No. 261) be

granted to the extent that it should be awarded its taxable Bill of Costs in the amount of $186,156.03, reduced to eliminate taxable costs arising from the claim (the caps) on which ATA prevailed.  I also recommend that the Court award post-judgment interest to the State on this amount in accordance with 28 U.S.C. § 1961(a).  Because ATA's claims were not frivolous or without foundation in law or fact, I recommend that the Court deny the State's motion to the extent that it seeks fees and nontaxable costs pursuant to 42 U.S.C. 1988 and Fed. R. Civ. P. 54(d)(2).

Based on its status as a single-issue prevailing party, I recommend that ATA's motion (ECF No. 266) for reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2) be granted to the extent that it should be awarded attorney's fees of $2,575,111 and costs of $150,952.29, for a total award of $2,726,063.29.  To the extent that ATA's motion seeks more, I recommend that it be denied.

Finally, I recommend that both motions be denied to the extent that they seek further proceedings to litigate whether and to what extent either or both may be entitled to fees and costs for the work performed to prosecute these fee/cost motions.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 2, 2025